**THE LAW OFFICE OF**
**ALEXANDRA KAZARIAN**
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 290-2478
FACSIMILE (213) 232-3255
**ALEXANDRA KAZARIAN SBN 244494**

*Attorney for Defendant*
ALEX AND ANI, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MILAN HASSID, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALEX AND ANI, LLC., a Rhode Island corporation; DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:25-cv-00679-FMO-JC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>Date: April 24, 2025<br>Time: 10:00 a.m.<br>Ctrm: 6D<br>Judge: Hon. Fernando M. Olguin |

**TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on April 24, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6D, before the Honorable Fernando M. Olguin of the above-entitled Court located at the First Street Courthouse, 350 West First Street, Los Angeles, CA 90012, Defendant Alex and Ani, LLC ("AA" or "Defendant"), by and through its attorneys of record, will and hereby do move for an order dismissing Plaintiff Milan Hassid's ("Plaintiff" or "Hassid") claims in the Class Action Complaint ("Complaint") (ECF No. 1) pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

AA's motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and records on file in this action, and such other evidence and argument as may be presented to the Court at or before the hearing on the motion.

DATED: March 21, 2025

**THE LAW OFFICE OF**
**ALEXANDRA KAZARIAN**

By: *<u>/s/ Alexandra Kazarian</u>*
ALEXANDRA KAZARIAN
ATTORNEY FOR DEFENDANT
ALEX AND ANI, LLC

# TABLE OF CONTENTS


I.INTRODUCTION.......... ..........................................................................1

II. BACKGROUND..........................................................................................1

A. Plaintiff's Allegations................................................................................1

B. California's Trap and Trace Law (Cal. Penal Code §§ 638.50–638.53)…2

III. LEGAL STANDARDS..............................................................................3

IV. ARGUMENT.............................................................................................4

A. Plaintiff lacks Article III standing because she suffers no concrete injury 4

1. Plaintiff does not allege a particularized injury…........................5

2. Plaintiff does not allege a traditionally recognized injury…………….6

B. The Complaint fails to demonstrate personal jurisdiction………………..8

C. The Complaint fails to state a claim……………………………………11

1. The Act is not applicable to commercial websites like AA's….…..11

2. Plaintiff's theory is contrary to the rule of lenity. …………………..15

3. The Complaint fails to allege a trap-and-trace claim………...……19

4. Plaintiff has not alleged injury as required by CIPA………………...21

5. The Act expressly authorizes AA to collect visitor information……22

V. CONCLUSION……………………….................................................... 23

# TABLE OF AUTHORITIES

**Cases** **Page**


Ashcroft v. Iqbal,
556 U.S. 662 (2009)....................................................................4
Augustine v. Great Wolf Resorts, Inc.,
No. 23-cv-00281, 2024 WL 3450967 (S.D. Cal. July 18, 2024)......13
Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ....................................................................4
Byars v. Sterling Jewelers, Inc.,
No. 22-cv-01456, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023).....5, 7, 8
Caraway Home Inc.,
655 F. Supp. 3d 966 (C.D. Cal. 2023)…………….. ……………… 9
Casillas v. Cypress Ins. Co.,
770 F. App'x 329 (9th Cir. 2019).....................................................14
Chandler v. State Farm Mut. Auto. Ins. Co.,
598 F.3d 1115 (9th Cir. 2010)..........................................................3
Cook v. GameStop, Inc.,
689 F.Supp.3d 58 (W.D. Pa. 2023) ..................................................5
Crowley v. Cybersource Corp.,
166 F. Supp. 2d 1263 (N.D. Cal. 2001)............................................14
Daimler AG v. Bauman,
571 U.S. 117 (2014) .......................................................................8
Dyer v. Nw. Airlines Corps.,
334 F. Supp. 2d 1196 (D.N.D. 2004)................................................14
Esparza v. Kohl's, Inc.,
723 F. Supp. 3d 934 (S.D. Cal. 2024)..................................................7
Gonzales v. Uber Techs., Inc.,
305 F. Supp. 3d 1078 (N.D. Cal. 2018)............................................13
Heiting v. Marriott Int'l, Inc.,
No. 23-cv-10822, 2024 WL 3751276 (C.D. Cal. Aug. 5, 2024).......8, 10
Heiting v. Taro Pharms. USA, Inc.,
709 F. Supp. 3d 1007 (C.D. Cal. 2023)............................................12
Hernandez v. Hillsides, Inc.,
47 Cal. 4th 272 (2009)...............................................................,..........6
In re Application of U.S. for an Ord.,
396 F. Supp. 2d 45 (D. Mass. 2005) ................................................14

In re DoubleClick Inc. Priv. Litig.,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ..............................................18

In re U.S. for an Ord. Pursuant to 18 U.S.C. § 2705(b),
289 F. Supp. 3d 201 (D.D.C. 2018) ..................................................14

In re Vizio, Inc., Consumer Priv. Litig.,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ..............................................7

I.C. v. Zynga, Inc.,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) ............................................ 6

Lanier, United States v.,
520 U.S. 259 (1997) ..........................................................................15

Leocal v. Ashcroft, 543 U.S. 1 (2004) .......................... .............................15

Lightoller v. Jetblue Airways Corp.,
No. 23-cv-361, 2023 WL 3963823 (S.D. Cal. June 12, 2023)…….5, 7, 8

Lopez v. Apple, Inc.,
519 F. Supp. 3d 672 (N.D. Cal. 2021) ................................................15

Martin v. Outdoor Network LLC,
No. 23-cv-09807, 2024 WL 661173 (C.D. Cal. Jan. 31, 2024) ...........10

Martinez v. Aero Caribbean,
764 F.3d 1062 (9th Cir. 2014) ........................... ...............................8

Meisler v. Chrzanowski,
No. 12-cv-00487, 2013 WL 5375524 (D. Nev. Sept. 24, 2013)… ….20

MGA Ent., Inc. v. Cabo Concepts Ltd.,
No. CV 20-10170, 2021 WL 4733784 (C.D. Cal. June 7, 2021) ...…..10

Mikulsky v. Noom, Inc.,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ........................... .....................5

Moody v. C2 Educ. Sys. Inc.,
No. 24-cv-04249, 2024 WL 3561367 (C.D. Cal. July 25, 2024)........ 22

Nosal, United States v.,
676 F.3d 854 (9th Cir. 2012) .......................... .............................15, 18

Ohio Domestic Violence Network v. Pub. Utilities Comm'n,
638 N.E.2d 1012 (Ohio 1994) ........................... ............................... 22

Pakootas v. Teck Cominco Metals, Ltd.,
905 F.3d 565 (9th Cir. 2018) ........................... ..................................9

Ranza v. Nike,
793 F.3d 1059 (9th Cir. 2015) ........................... ................................ 8

Schwarzenegger v. Fred Martin Motor Co.,
374 F.3d 797 (9th Cir. 2004) ........................... ................................ 3, 8

Southern Bell Tel. & Tel. Co. v. Hamm,
409 S.E.2d 775 (S.C. 1991) ........................... ................................... 22

Spokeo, Inc. v. Robins,
578 U.S. 330 (2016) ........................... ............................................. 3, 4

Sullivan v. Oracle Corp.,
254 P.3d 237 (Cal. 2011) .......................... ........................................ 10

Taus v. Loftus,
40 Cal. 4th 683 (2007) ........................... .........................................6, 7

TransUnion LLC v. Ramirez,
594 U.S. 413 (2021) .......................... ..............................................4, 6

Vita v. New Eng. Baptist Hosp.,
243 N.E.3d 1185 (Mass. 2024) ........................... .............................. 13

Wis. Prof. Police Ass'n v. Pub. Serv. Comm'n of Wis.,
555 N.W.2d 179 (Wis. Ct. App. 1996) .......................... ................15, 22

**STATUTES AND RULES**

Cal. Penal Code § 637.2……………………….................................passim

Cal. Penal Code §§ 638.50–638.53 ..................... ............................... passim

Cal. Penal Code § 638.51..................... ..............................................passim

Cal. Penal Code § 638.50(c) ..................... ......................................... passim

Cal. Penal Code § 1546(e) ..................... ............................................... 14

Cal. Civ. Code § 1798.100 et seq. ...................... ......................................17

Fed. R. Civ. P. 12(b)(1) ...............................................................................3

Fed. R. Civ. P. 12(b)(2) ...............................................................................3

Fed. R. Civ. P. 12(b)(6) ................................. ........................................ 4

**OTHER AUTHORITIES**

Assembly Comm. on Public Safety, Analysis of Assembly Bill No. 929 (Cal. 2015–2016 Reg. Sess.) ..................................... ........................................11

People v. Sephora USA, Inc., Complaint, No. CGC-22-601380
(Cal. Super. Ct. Aug. 23, 2022) ............................................................17–18

Riley K. Temple & Michael Regan, Recent Developments Relating to Caller ID, 18 W. St. U. L. Rev. 549 (1990–1991) ..................................... .........3

## I. INTRODUCTION

Plaintiff's Complaint attempts to transform a commonplace website analytics practice into a violation of a California criminal statute never intended for such use. Plaintiff alleges that Defendant installed the "TikTok pixel" on its jewelry retail website and claims this constitutes use of a "trap and trace device" in violation of Cal. Penal Code § 638.51. This creative theory fails for multiple independent reasons. ***First***, Plaintiff has not pled any concrete or particularized harm from the alleged data collection and therefore lacks Article III standing to invoke federal jurisdiction. ***Second***, the California "Trap and Trace" law, by its plain terms and context, applies to telephone calling information (like Caller ID), not to internet cookies or pixels on websites. The statute was enacted as part of CIPA to address law enforcement surveillance of phone communications in the pre-digital era, not ordinary commercial web traffic data. ***Third***, even if the statute could be stretched to cover internet activity, the Complaint seeks an impermissible extraterritorial application of California law. The alleged "installation" and "use" of the TikTok pixel occurred on servers located outside California (where Defendant is based), and the presumption against extraterritoriality bars applying Cal. Penal Code § 638.51 to such out-of-state conduct.

## II. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff is a citizen of California, residing in the Central District. Compl. ¶ 4. Defendant AA operates an e-commerce website that sells jewelry and is incorporated in

Rhode Island, *id.* ¶ 5. Plaintiff alleges that at some point AA "install[ed]" TikTok tracking code (the "TikTok pixel" or "TikTok Software") on its website, which collects certain information about visitors for advertising and analytics purposes. Id. ¶ 32. Plaintiff visited AA's website on September 16, 2024, after the TikTok pixel was in place. Id. ¶ 9. The crux of the Complaint is that the TikTok pixel "captures" data such as a visitor's phone number, email, or other identifying routing information, and that this constitutes a "trap and trace device" under California law. Id. ¶¶ 10, 13, 32. Plaintiff asserts that using the pixel without first obtaining a court order (and without visitors' consent) violates Cal. Penal Code § 638.51(a). Id. ¶¶ 30, 33. Plaintiff seeks statutory damages under CIPA's private right of action provision, Cal. Penal Code § 637.2. Id. ¶ 34.

**B. California's Trap and Trace Law (Cal. Penal Code §§ 638.50–638.53)**

Section 638.51(a) provides that "a person may not install or use a pen register or a trap and trace device without first obtaining a court order," subject to certain exceptions. The statute is part of the California Pen Register and Trap and Trace Act ("CalPRTTs"), added to CIPA in 2022 to parallel federal law. A "trap and trace device" is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." § 638.50(c). In simpler terms, a trap-and-trace device captures who is calling or where a communication is coming from – analogous to a Caller

ID device that identifies the originating phone number of incoming calls. *See* Riley K. Temple & Michael Regan, Recent Developments Relating to Caller ID, 18 W. St. U. L. Rev. 549 (1990-1991) ("Caller ID service is made possible by the use of a 'trap and trace' device."). By contrast, it does not record the substance of the communication itself. *See* Cal. Penal Code § 638.50(c). The Act was designed to regulate classic telephone surveillance tools: pen registers (outgoing call trackers) and trap-and-trace devices (incoming call trackers) used by law enforcement and others. Nothing in the statutory text or legislative history indicates an intent to police routine data collection on websites, which is governed by other privacy laws if at all. Indeed, the California Consumer Privacy Act (CCPA) addresses website data practices, whereas Plaintiff's theory attempts to stretch CIPA's trap-and-trace provision far beyond its intended reach.

Notably, in the past months, Plaintiff's counsel, Tauler Smith LLP, has filed dozens of functionally identical suits in the Central District alone, alleging trap-and-trace violations based on the same technology at issue here. The majority will reach settlement before a decision on a motion to dismiss.

## III. LEGAL STANDARDS

**Rule 12(b)(1).** The Court must dismiss a complaint pursuant to Rule 12(b)(1) if the allegations are insufficient on their face to invoke federal jurisdiction. A district court lacks jurisdiction when plaintiff fails to establish standing to sue pursuant to Article III of Constitution. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiff has the

burden of establishing Article III standing to assert the claims. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

**Rule 12(b)(2).** "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The Court must dismiss claims against a non-resident defendant when the plaintiff fails to make a prima facie showing that the Court has personal jurisdiction over that defendant. *Id.*

**Rule 12(b)(6).** To survive a 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## IV. ARGUMENT

### A. Plaintiff lacks Article III standing because she suffers no concrete injury.

To establish Article III jurisdiction, a plaintiff must allege an "injury in fact" that is (a) concrete and particularized, (b) actual and imminent, not conjectural or hypothetical, and (c) fairly traceable to the challenged action. *Spokeo, Inc.*, 578 U.S. at 338–39. The alleged injury must also have "a close relationship to harms traditionally

recognized as providing a basis for lawsuits in American courts." *TransUnion v. Ramirez*, 594 U.S. 413, 424 (2021). A bare, technical violation of a statute is insufficient; the plaintiff must allege an actual injury traditionally recognized as a harm. *See id*. at 435–39. The Complaint fails to meet this standard and should be dismissed under Rule 12(b)(2) because it does not allege that Plaintiff suffered a concrete injury.

**1. Plaintiff does not allege a particularized injury.**

Plaintiffs' general allegations about what might happen if someone were to visit the Website do not entitle Plaintiff to relief. As courts routinely hold in similar cases, Article III requires the plaintiff to plausibly allege that she, herself, has provided personal information to the defendant. *See, e.g., Lightoller v. Jetblue Airways Corp.*, No. 23-cv-361, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023)(no injury in fact under CIPA without allegation that plaintiff "disclosed any personal information to Defendant"); *Mikulsky v. Noom, Inc*., 682 F. Supp. 3d 855, 864–65 (S.D. Cal. 2023)(same); *Cook v. GameStop, Inc*., 689 F.Supp.3d 58, 65–66 (W.D. Pa. 2023)(same). Instead of describing Plaintiff's own interactions with the Website, the Complaint describes hypothetical "users" and "visitors," and relies on general screenshots of unknown origin. See, e.g., Compl. ¶ 13–15 (the TikTok Software collects information when "a user lands on the website" so that "TikTok can isolate with certainty the individual to be targeted); see also, e.g., id. ¶ 32 (the software captures "information of website visitors"). Because Plaintiff never claims that she was among the individuals supposedly targeted, or that

their data was captured, their Complaint should be dismissed. *Byars v. Sterling Jewelers, Inc.*, No. 22-cv-01456, 2023 WL 2996686, at *4 (C.D. Cal. Apr. 5, 2023) (no Article III standing to bring CIPA claim because Plaintiff did not allege disclosure of sensitive information).

2. **Plaintiff does not allege a traditionally recognized injury.**

Plaintiff also lacks standing because she makes no claim that AA's use of the TikTok Software could cause the type of harm required for Article III jurisdiction. *See TransUnion*, 594 U.S. at 424 (a "concrete harm" has "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts"). When assessing federal jurisdiction in cases alleging privacy harms, courts typically analyze whether a harm is analogous to traditional privacy torts, notably (1) "disclosure of private information" or (2) "intrusion upon seclusion." *See I.C. v. Zynga, Inc.,* 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022) (dismissal due to "an insufficient fit between the loss of information alleged" and "private disclosure of private facts and intrusion upon seclusion"). Disclosure of private information requires sensitive and intimate private facts, the disclosure of which "would be offensive and objectionable to the reasonable person." *Taus v. Loftus*, 40 Cal. 4th 683, 717 (2007). Intrusion upon seclusion requires an intrusion that is contrary to a person's reasonable expectation of privacy in a manner that would be "highly offensive" to a reasonable person. *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009). Plaintiff's claim contains virtually none of either's elements.

First, Plaintiff makes no allegation that AA captured any sensitive or intimate private facts, as to Plaintiff or that any sensitive data was actually obtained and misused in anyway. *See Loftus*, 40 Cal. 4th at 717. Instead, the TikTok Software allegedly captured anodyne personal identifiers that visitors would need to voluntarily disclose while on the Website, like their names and email addresses, along with a hodgepodge of other information that does not directly identify anyone, for example, "device and browser information," and "geographic information." Compl. ¶¶ 11, 13, 32. This information is hardly sensitive or intimate, and courts hold that it does not "implicate[] a protectable privacy interest" when disclosed to a website. *Byars,* 2023 WL 2996686 at *2–3; *see also Lightoller*, 2023 WL 3963823, at *4 (no standing to allege CIPA claim because "mouse movements, clicks, keystrokes," text "entered into an information field," and URLs were not "private" information).

Second, Plaintiff never alleges that Website visitors have a reasonable expectation of privacy in any of this information because she cannot. *See, e.g.,Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 945– 46 (S.D. Cal. 2024) (no expectation of privacy in "personal information and browser history" shared with website absent allegation of intimate or sensitive personally identifiable information); *see also In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) ("Courts have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications.")(collecting cases). And since none of

the information described in the Complaint is either private or sensitive, it follows that its collection or disclosure cannot be "highly offensive" to a reasonable person. *Lightoller*, 2023 WL 3963823, at *4; *Byars,* 2023 WL 2996686 at *2–3. Accordingly, even if Plaintiff alleged that the TikTok Software captured any of their information (she does not), she still could not allege a traditional injury-in-fact.

**B. The Complaint fails to demonstrate personal jurisdiction.**

To hail a foreign defendant like AA into court, a plaintiff must show either general or specific personal jurisdiction. *See, e.g., Heiting v. Marriott Int'l, Inc.*, No. 23-cv-10822, 2024 WL 3751276, at *2 (C.D. Cal. Aug. 5, 2024) (*citing Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001)). When sitting in diversity,"[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Because "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution" the Court should look to "the limits imposed by federal due process." *Id.* Plaintiff must make a prima facie showing that jurisdiction is proper at the motion to dismiss stage. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).

The Complaint makes no such showing. First, it does not allege systematic contacts in California and admits that AA is incorporated in Rhode Island. See Compl. ¶ 5; *see generally, id*. Accordingly, the Court may not exercise general jurisdiction over AA. *See Ranza v. Nike*, 793 F.3d 1059, 1069 (9th Cir. 2015) (general jurisdiction is only available

outside a corporation's place of incorporation or principal place of business in an "exceptional case"). The Complaint also fails to allege a prima facie case of specific jurisdiction, which exits only if: (1) the defendant purposefully directed its activities at forum state, (2) the claims "arise out of or relate to" the defendant's contacts with the forum; and (3) exercising jurisdiction comports with fair play and substantial justice. *See Schwarzenegger*, 374 F.3d at 802.

Plaintiff's case fails on the first prong. Her sole relevant allegation is that AA "purposefully directed its activities" at the Central District "by regularly engaging with individuals in California through its website." Compl. ¶ 2. But conclusory allegations are insufficient. *See Caraway Home Inc.*, 655 F. Supp. 3d at 969–70 (no personal jurisdiction in CIPA case where plaintiff alleged only "minimum contacts" and operation of a California website). And mere operation of a website available to Californians does not establish purposeful direction. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) (purposeful direction requires "something more than a foreign act with foreseeable effects in the forum state") (cleaned up).

The Complaint also fails on the second prong. Nowhere does Plaintiff allege that her claims arise out of *California-specific* contacts. To the contrary, the Complaint is clear that the TikTok Software operates regardless of a visitors' location. *See generally* Compl. (referring to "users" and "individuals" untethered to location); *see also Martin v. Outdoor Network LLC*, No. 23-cv-09807, 2024 WL 661173, at *5 (C.D. Cal. Jan. 31,

2024) (no personal jurisdiction for website-based CIPA claim even though defendant was allegedly aware plaintiff was in California).

Finally, the Complaint fails under the third prong, which requires personal jurisdiction consistent with Due Process. "If the defendant merely operates a website, even a highly interactive website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *MGA Ent., Inc. v. Cabo Concepts Ltd.*, No. CV 20-10170, 2021 WL 4733784, at *5 (C.D. Cal. June 7, 2021) (cleaned up). Plaintiff has not stated a prima facie case for general or specific jurisdiction so their Complaint should be dismissed. *See Heiting,* 2024 WL 3751276 at *4 (dismissing CIPA case for lack of personal jurisdiction).[1]

[1] For similar reasons, the Complaint lacks sufficient allegations that AA or the Website are within the territorial scope of the CalPRTT Act, which lacks force outside of California. Per the Commerce Clause of the U.S. Constitution and to avoid legal conflict with other states, California observes a presumption against the extraterritorial application of its laws. *See, e.g.*, *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011) ("we presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history") Nothing in the CalPRTT Act evidences an intent that it should apply beyond California's borders. Indeed, because it only permits law enforcement to install and use PRTTs in criminal investigations pursuant to procedures and requirements that are necessarily only available to *California* peace officers, *see* Cal. Penal Code §§638.51(a), 638.52, 638.53, extraterritorial application of the Act would produce absurd results: Every federal law enforcement officer or officer from another state would commit a violation of the California Penal Code by installing and using a PRTT that was issued under another authority.

### C. The Complaint fails to state a claim.

The Court should dismiss the Complaint pursuant to Rule 12(b)(6) for multiple, individually sufficient reasons: *First*, the Complaint's sole theory of liability is based on the CalPRTT Act, which is not applicable to commercial websites like AA's that do not permit person-to-person communications. *Second*, even if there were plausible arguments that the CalPRTT Act might apply to ordinary commercial websites, the Act's scope is at a minimum ambiguous, and the rule of lenity requires dismissal. *Third*, the Complaint fails to plead two essential elements required for a trap-and-trace claim, namely: the presence of a "communication," and the collection of "dialing, addressing, routing, and signaling" information. *Fourth*, the Complaint does not allege any injury as required to bring a civil suit for a violation of the CalPRTT Act. *Fifth*, even if Plaintiff pled all the elements of a claim, the Act's statutory exemptions would still authorize AA to use the TikTok Software on its own website.

#### 1. The Act is not applicable to commercial websites like AA's

The CalPRTT Act does not apply to ordinary commercial websites like AA's that do not provide visitors any means to send or receive person-to-person communications. Like its federal counterpart, the CalPRTT Act was drafted entirely with person-to-person communications in mind. *See, e.g.*, Assemb. Comm. on Pub. Safety, Analysis of Assemb. Bill No. 929 (CA, 2015–2016 Reg. Sess.) at 1011 (PRTTs allow law enforcement to determine "which people" are "communicating with one another and at what times.").

The Act's limited focus on person-to-person communications is further evident from its structure and text. *See also*, Section II.A, *supra*.

For example, the Act's requirements for PRTT orders contain multiple references to "subscribers" and "telephone line[s]," underscoring that the Act only applies to person-to-person communication services. See Cal. Penal Code § 638.52(1), (3) (order must identify "the person to whom is leased or in whose name is listed the *telephone line*," and the "number" and "physical location of the *telephone line*" to which the device will be attached) (emphases added); *see also id.* § 638.52(5)(g) (order must direct that "the person owning or leasing the line" not notify the "listed subscriber" of the investigation's existence). It would be nonsensical to interpret the Act so broadly that it ensnares people's non-communicative interactions with commercial websites, when the only technology specifically (and repeatedly) mentioned in the Act is the telephone, the archetypal person-to-person communications tool that spurred the very invention of PRTTs.

Additionally, by definition, a trap-and-trace device must capture information about a communication that conveys some "content" that is separate from the information the device captures. *See* Cal. Penal Code § 638.50(c) (a trap-and-trace device captures information that identifies "the source of a wire or electronic communication, but not the *contents* of [that] communication") (emphasis added). And to contain "contents", a communication must convey the "substance, purpo[rt], or meaning" of an "intended message" that is distinct from "record information regarding the characteristics of the

message." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1017–18 (C.D. Cal. 2023) (cleaned up). When people talk on the phone, send an email, or meet via videoconference, they might exchange greetings, share intimacies, grievances, or gossip, or even just talk about the weather. People use these tools to share an "intended message," however banal it might be. *Id.* The opposite is true when people simply "interact[] with a website" to browse for products like jewelry; instead of "having a personal conversation or sending a personal message," website visitors simply "access[] publicly available data." *Vita v. New Eng. Baptist Hosp.*, 243 N.E.3d 1185, 1205 (Mass. 2024) (dismissing TikTok Software-based wiretapping claim because interactions with a commercial website did not entail "person-to-person" communication); *see also, e.g., Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) ("simply opening a webpage or mobile application is not a communication with content"); *Augustine v. Great Wolf Resorts, Inc.*, No. 23-cv-00281, 2024 WL 3450967, at *6 (S.D. Cal. July 18, 2024) (dismissing CIPA claim involving a commercial website because plaintiff "fail[ed] to show *communications* between Plaintiff" and the website and did not allege that she "intended to convey a message to [the website]") (emphasis original).

The text of the CalPRTT Act's limited exemptions further confirm that it is limited to person-to-person communications platforms, because these exemptions apply only to "electronic or wire communication service" providers. Cal. Penal Code § 638.51(b)(1)-(5). The Act does not mention any other types of services, much less categories that might

encompass simple commercial websites. These terms have stable and fixed meanings under both federal and state law, and courts have applied them consistently for decades. For example, related provisions of California law define an "electronic communications service" as one that provides subscribers "the ability to send or receive electronic communications." Cal. Penal Code § 1546(e). Courts interpreting the same term under federal law consistently hold that such services can include, e.g., "email provider[s]" because they "permit users to communicate directly with one another.," *Casillas v. Cypress Ins. Co*., 770 F. App'x 329, 330 (9th Cir. 2019), and "internet service providers" that enable users to engage in "communications over the internet." *In re Application of U.S. for an Ord. Authorizing use of A Pen Reg. & Trap On (XXX) Internet Serv. Acct./User Name, (xxxxxxxx@xxx.com)*, 396 F. Supp. 2d 45, 47 (D. Mass. 2005). But courts consistently hold that ordinary commercial websites do not qualify. *See, e.g., In re U.S. for an Ord. Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201, 210 (D.D.C. 2018) (unlike "a user-to-user messaging service," a "service that merely allows users to contact or interact with the company electronically" is not an electronic communication service); *Crowley v. Cybersource Corp*., 166 F. Supp. 2d 1263 (N.D. Cal. 2001) (online retailer did not provide electronic communication service); *Dyer v. Nw. Airlines Corps*., 334 F. Supp. 2d 1196, 1199 (D.N.D. 2004) ("electronic communications service" does "not encompass businesses selling traditional products or services online"). As one court cautioned, the "allegation that sending information to servers qualifies" to make

something an electronic communication would expand the definition to "all online services and thus render the term meaningless." *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 687 (N.D. Cal. 2021).

It would be illogical for the CalPRTT Act to sweep ordinary commercial websites into its scope while at the same time preventing them from relying on the Act's business exemptions. This would leave numerous Internet businesses at risk of violating the Act for any number of routine commercial purposes like fulfilling customer orders or protecting against malicious traffic. *See, e.g.*, Cal. Penal Code § 638.51(b)(1)-(3). In short, the Act's exemptions, like numerous other provisions, only make sense if the Act is limited in scope to the types of communications services that allow individuals to communicate with one another. And because AA provides jewelry, and not any sort of service that enables person-to-person communications, the CalPRTT Act simply does not apply to the Website. In sum, the Complaint should be dismissed because the CalPRTT Act only applies to person-to-person forms of communication and does not extend to visitor interactions with ordinary commercial websites.

**2. Plaintiff's theory is contrary to the rule of lenity.**

Even if one were to ignore the CalPRTT Act's drafting history and text, the Court should still reject Plaintiff's interpretation under the rule of lenity. When a penal statute is ambiguous, "the rule of lenity requires courts to limit" its reach to the "clear import of [its] text," and to only apply it "to conduct clearly covered." *See United States v. Lanier,*

520 U.S. 259, 266 (1997). This rule applies with equal force "in a criminal or noncriminal context" to ensure consistency. *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004). When in doubt, the court "must choose the interpretation least likely to impose penalties unintended" by the drafters. *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (citation omitted).

Plaintiff appears to argue that website visitors are anonymous by default and the CalPRTT Act protects this anonymity by prohibiting websites from identifying them even if they volunteer personal information like their name or address. See Compl. ¶¶ 10, 20, 13 (the TikTok Software identifies "otherwise anonymous visitor[s] to the Website" without consent). But nothing in the Act indicates that a website visitor must consent before a website can collect their personal information. To the contrary, PRTT laws are "designed to protect telephone users from unauthorized third-party or governmental intrusions," and not "to protect telephone users from one another." *Wis. Pro. Police Ass'n v. Pub. Serv. Comm'n of Wis*, 555 N.W.2d 179, 188 (Wis. Ct. App. 1996). Taken to its logical conclusion, Plaintiff's argument would mean that anyone who uses caller ID to screen calls, or a spam filter to weed out junk mail from their inbox, *commits a crime*. Not only is the Act devoid of anything to indicate that this conduct is "clearly covered," *Lanier*, 520 U.S. at 266, this cannot reasonably be what the California Legislature intended.

Moreover, recent laws that apply to the use of TikTok Software on commercial

websites unequivocally do not restrict their use. California's Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq*. ("CCPA"), established in 2018, comprehensively governs businesses' collection, use, and sharing of "personal information," which includes, among other things, identifiers like name, email address, and IP address, and "Internet or other electronic network activity information," including "information regarding a consumer's interaction with an Internet website." *See id.* §1798.140(v)(1). Although the Legislature could have followed the example similar laws in other jurisdictions by requiring website operators to obtain visitors' consent before using basic web-tracking technologies like TikTok Software, the Legislature did not do so. Despite extensive input and multiple amendments, the CCPA does not require website operators to obtain visitor's consent to use any website data-collection tools (even those that might collect highly sensitive data, such as that related to health, race, and religion). Instead, the CCPA gives consumers the ability to opt out of disclosures of their personal information to third parties after this information is collected. See Cal. Civ. Code § 1798.120 (providing consumers the right to opt out of the selling or sharing of their personal information); *id.* § 1798.135 (establishing acceptable opt-out mechanisms and prohibiting businesses from selling or sharing personal information after a consumer opts out); *id.* § 1798.121 (providing consumers the right to direct businesses to limit their use or disclosure of sensitive personal information).

Indeed, a recent enforcement action involving online-retailer Sephora, confirms

that the CCPA squarely governs the use of tools like web TikTok Software. *See* Complaint, *People v. Sephora, USA*, No. CGC-22-601380 (Cal. Super. Aug. 23, 2022). The California Attorney General examined Sephora's use of "third-party companies' tracking software on its website and in its app" to "monitor consumers as they shop," but did not find that Sephora was required to obtain visitors' consent before using this tracking software. *Id.* ¶¶ 1–2. Instead, the Attorney General faulted Sephora for failing to provide visitors with notice and the ability to opt out of sharing with third parties, finding that "California's landmark privacy law, the CCPA, sought to prevent this." *Id.* ¶ 2. It would have made little sense for the Legislature to choose an opt-out system for its landmark privacy law had it believed that, by enacting the CalPRTT Act just a few years prior, it already prohibited websites from collecting identifying information about visitors without first obtaining their opt-in consent. Had the California legislature intended to upend Internet commerce by imposing an opt-in regime on the collection of information through tools like web TikTok Software, the Legislature could have clearly said so in either the text of the CalPRTT Act or the CCPA. But it did not, and Plaintiff should not be permitted to rewrite California law to "turn ordinary citizens into criminals." *Nosal*, 676 F.3d at 862–63 (refusing to interpret the Computer Fraud and Abuse Act broadly to "cover violations of corporate computer use restrictions"); *see also In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 512–13 (S.D.N.Y. 2001) (refusing to interpret the federal Wiretap Act such that websites would commit crimes "every time they accessed

cookies on users' hard drives"). Because, at a minimum, the CalPRTT Act is ambiguous as to its application to commercial websites and tools like the TikTok Software, the Court should apply the rule of lenity to adopt a narrower interpretation consistent with the CCPA and dismiss the Complaint.

**3. The Complaint fails to allege a trap-and-trace claim.**

Even if the CalPRTT Act applied to commercial websites, the Complaint would still require dismissal because Plaintiff does not (and cannot) plead the use of a "pen register," see Compl. ¶¶ 29–34, and it does not plead the elements of a claim for an unlawful "trap-and-trace" device. To constitute a trap-and-trace device, a device or process must: (1) Capture incoming impulses (electronic or other); (2) Such impulses must identify either the "originating number" of a communication, or "other dialing, routing, addressing, or signaling information" ("DRAS") that is "reasonably likely to identify the source" of that communication; and (3) Not capture "the contents" of the communication. Cal. Penal Code § 638.50(c). The Complaint alleges neither a communication nor DRAS.

**i. The Complaint does not allege any communications.**

By definition, a trap-and-trace device must capture the originating number or other DRAS of a communication. *See* Cal. Penal Code § 638.50(c). But Plaintiff does not allege any communications here. Instead, the Complaint vaguely describes "electronic impulses," see, e.g., Compl. ¶¶ 15, 17, 18, without explaining what they entail, much less

what (or if) they communicate. Because Plaintiff has not identified any communications identified by so-called "impulses," she cannot state a claim for a trap-and-trace device. *See* Cal. Penal Code § 638.50(c).

**ii. The TikTok Software does not capture "dialing, routing, addressing, or signaling" ("DRAS") information.**

The Complaint also does not allege that the TikTok Software captured any data that could constitute either the "originating number" of a supposed *communication*, or other DRAS that is "reasonably likely" to identify the communication's source. DRAS "identif[ies] the source of a wire or electronic communication," but not its contents. *Id.* § 638.50(c). Examples include the number used to make or receive a phone call, or the identifier of an account used to make a social media post. *See, e.g., Meisler v. Chrzanowski*, No. 12-cv-00487, 2013 WL 5375524, at *14 (D. Nev. Sept. 24, 2013) (DRAS "includes the phone numbers dialed from or to a particular telephone," and "its counterpart in internet *communications*") (emphasis added). But DRAS does not include information other than that which identifies the sender of a communication. *In re Certified Question of L.*, 858 F.3d 591, 594 (Foreign Int. Surv. Ct. Rev. 2016) (DRAS includes digits input into a phone to "dial[] a telephone number," but not additional information not used to place the call, e.g., a "password, a personal identification number, [] a bank account number," a "credit card number or a Social Security number").

The Complaint alleges that the TikTok Software captures visitors' "phone number"

Compl. ¶ 17, and other "information[] such as name, date of birth, and address." *id.* ¶ 13. But it does not explain how any of this information could constitute either the "originating number" or other DRAS of someone's visit to a commercial website. Just because information may identify a person does not make it DRAS that is likely to identify the source of the person's communications. A person's phone number constitutes the "originating number" for their telephone calls, not their visits to commercial websites. Name, date of birth, and address fare no better for the same reasons. Finally, the Complaint broadly alludes to other "identifying dialing, routing, addressing and signaling information generated by users," *id.* ¶ 17, but the "threadbare recital[]" of a statutory definition cannot overcome a motion to dismiss. *Iqbal*, 556 U.S. at 663.

**4. Plaintiff has not alleged injury as required by CIPA.**

CIPA's private right of action is available only to individuals who have been "injured" by a violation. Cal. Penal Code § 637.2(a). Although the Complaint asserts that the TikTok Software "begins to collect information the moment a userlands on" the Website, Compl. ¶ 12 (emphasis added), it does not state that Plaintiff was ever such a "user". And while the Complaint asserts that the TikTok Software "is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors," id. ¶ 32, and that it captures other information like "name, date of birth, and address," id. ¶ 13, it never states that the TikTok Software collected any such information from Plaintiff. Even assuming that Plaintiff visited the Website, the Complaint never

describes when or why she would have disclosed their information or how the TikTok Software might have captured it. Since Plaintiff does not allege some resulting harm, she has not alleged an injury sufficient to state a claim.

5. **The Act expressly authorizes AA to collect visitor information.**

Even if Plaintiff had alleged the presence of a trap and trace device that injured her (she hasn't), the CalPRTT Act's user-consent exemption precludes their claim. *See* Cal. Penal Code § 638.51(b)(5). This exemption permits the installation of a PRTT device with the consent of the "user," and refers only to a single "user" of a service. *Id.* When construing virtually identical language in other PRTT laws, courts consistently hold that the "user," for purposes of consent to a trap-and-trace device, is the party who receives the communication, not the sender. *See, e.g., Wis. Pro. Police Ass'n*, 555 N.W.2d at 188 ("the singular term 'user' must be understood to refer to the consent of the person being called"); *Southern Bell Tel. & Tel. Co. v. Hamm*, 409 S.E.2d 775, 777 (S.C. 1991) (the statute does not refer to "all parties," meaning that "user" must "be understood to refer to the consent of the person being called"); *Ohio Domestic Violence Network v. Pub. Utilities Comm'n*, 638 N.E.2d 1012, 1021 (Ohio 1994) (there will "be only one party with respect to whom the installation and use [of a trap-and-trace device] is to take place," and this "is thus the 'user' referred to" in the consent exemption) (cleaned up).

Plaintiff may cite to *Moody* to argue that these cases are merely persuasive, *see Moody v. C2 Educ. Sys. Inc.*, No. 24-cv-04249, 2024 WL 3561367, at *3 (C.D. Cal. July

25, 2024), but *Moody* did not consider the chaos that would result from a conflicting interpretation of the CalPRTT Act's consent exemption. As one court noted, it would be "inconceivable" to require "consent [to be] obtained" for "every particular call (which would be impossible for calls that were unanswered)." *Ohio Domestic Violence Network*, 638 N.E.2d at 1021. Requiring consent for each and every incoming communication would render the consent exemption a nullity and make services like caller ID illegal. Logically, there can only be one "user," and here, that "user" is AA.

Plaintiff alleges that the TikTok Software operates on the Website to "identify the source of electronic communications," i.e., supposed communications directed to AA. Compl. ¶ 17. Plaintiff does not argue that the TikTok Software operates on visitors' browsers or devices or records their outgoing communications. AA is the recipient of the supposed communications, whereas the Website visitor is the sender. Therefore, only AA's consent matters. *See, e.g., Wis. Pro. Police Ass'n*, 555 N.W.2d at 188. And because AA installed the TikTok Software, it clearly consented for purposes of the exemption. *See* Cal. Penal Code § 638.51(b)(5).

## V. CONCLUSION

For the reasons set forth above, Plaintiff's Complaint should be dismissed with prejudice.

///

///

DATED: March 21, 2025

**THE LAW OFFICE OF ALEXANDRA KAZARIAN**

By: *_/s/ Alexandra Kazarian_*
ALEXANDRA KAZARIAN
ATTORNEY FOR DEFENDANT
ALEX AND ANI, LLC

# LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for ALEX AND ANI, LLC, certifies that this brief contains 5,743 words, which complies with the word limit of L.R. 11-6.2.

DATED: March 21, 2025

**THE LAW OFFICE OF**
**ALEXANDRA KAZARIAN**

By: */s/ Alexandra Kazarian*
ALEXANDRA KAZARIAN
ATTORNEY FOR DEFENDANT
ALEX AND ANI, LLC

**PROOF OF SERVICE**

I, Alexandra Kazarian, declare:

I am a citizen of the United States and employed in the State of California. I am over the age of 18 years and am not a party to the within-entitled action. My business address is 644 S. Figueroa Street, Los Angeles, California 90017.

On March 21, 2025, I electronically filed via my electronic service address (ak@alexkazlaw.com) the attached document:

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

with the Clerk of the court using the CM/ECF system which will then send a notification of such filing to the following:

Robert Tauler
Narain Kumar
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, CA 90017
213-927-9270
Email: robert@taulersmith.com
Email: nkumar@taulersmith.com
Attorneys for Plaintiff Milan Hassid

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on March 21, 2025, at Los Angeles, California.

*/s/Alexandra Kazarian*
*Alexandra Kazarian*