Robert Tauler (SBN 241964)
rtauler@taulersmith.com
Narain Kumar, Esq. (SBN 301533)
nkumar@taulersmith.com
**TAULER SMITH LLP**
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Milan Hassid*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MILAN HASSID, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALEX AND ANI, LLC, a Rhode Island corporation; and DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:25-cv-00679-FMO-JC<br><br>**PLAINTIFF MILAN HASSID'S OPPOSITION TO DEFENDANT ALEX AND ANI, LLC'S MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>**[CONCURRENTLY FILED AND SERVED WITH PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE]**<br><br>DATE: APRIL 24, 2025<br>TIME: 10:00 A.M.<br>CTRM: 6D J<br>JUDGE: FERNANDO M. OLGUIN |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... 3

MEMORANDUM OF POINTS AND AUTHORITIES ..... 6

I. INTRODUCTION ..... 6

II. RELEVANT FACTS ..... 7

A. Defendant's Synopsis of TikTok Software Is Wrong ..... 7

B. Defendant Entered a Contract with TikTok Governed by California Law Enforceable in the Central District of California ..... 8

C. Tauler Smith's Number of Filings Is Irrelevant ..... 8

III. ARGUMENT ..... 9

A. Plaintiff Has Article III Standing ..... 9

1. Plaintiff Alleges Defendant violated Plaintiff's Privacy – a Concrete and Particularized Injury-In-Fact under Cal. Penal Code, § 638.51 ..... 9

2. The Injury to Plaintiff Is a Traditionally Recognized Harm ..... 11

B. The Court Has Specific Personal Jurisdiction over the Defendant ..... 13

1. Defendant's Commission of a Tortious Act in California *Alone* Provides Sufficient Minimum Contacts to Support the Exercise of Personal Jurisdiction under *Paccar Intl'l* and *Freestream* ..... 13

2. Plaintiff's § 638.51 Claim "Arises from or Relates to" Defendant's California Activities ..... 16

3. Plaintiff Meets the Test's First Prong – Purposeful ..... 17

a. Defendant Committed Multiple Intentional Acts Expressly Aimed at California ..... 18

b. Defendant Knew Harm Was Likely to be Suffered in California ..... 18

4. Exercising Personal Jurisdiction Would Be Reasonable....18

C. The Complaint States a Claim for A Violation Of CIPA, Cal. Penal Code, Section 638.51....19

1. Statutory Framework for Penal Code, § 638.51....19

2. TikTok Software Is a Trap and Trace Device....19

a. Defendant Installed TikTok Software – a Prohibited Device....20

b. TikTok Software Uses a "Process" to Capture Electronic Impulses....20

c. TikTok Software Collects "Data", "Intelligence" and "Signaling Information" to Identify Anonymous Website Visitors....20

3. The Statute Is Broad and Is Expressly Not Limited Solely to Originating Numbers and Telephones....20

4. The Statute Is Plain and Unambiguous....21

5. The Rule of Lenity Is Inapplicable....22

6. No Court Has Held that TikTok Software Is Not a Trap and Trace Device....23

D. Defendant's Additional Arguments Fail....24

1. The CCPA Does Not Preempt CIPA but They Operate in Harmony....24

2. Defendant Is Not Exempt....25

3. Plaintiff is the User and Plaintiff Did Not Consent....25

IV. CONCLUSION....25

LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE....26

# TABLE OF AUTHORITIES

Cases


*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) .................................................. 16

*Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257 (9th Cir. 1989)..... 18

*Brooks v. Thomson Reuters Corp*., No. 21-cv-01418-EMC, 2021 U.S. Dist. LEXIS 154093 (N.D. Cal. Aug. 16, 2021)........................................................ 24

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023)...........................9, 12

*Calder v. Jones*, 465 U.S. 783 (1985) ................................................................. 17

*California Water Impact Network v. County of San Luis Obispo,* 25 Cal.App. 5th 666 (2018) ........................................................................................... 21

*Campbell v. Allied Van Lines, Inc*., 410 F. 3d 61 (9th Cir. 2005) ......................... 21

*Cantu v. Tractor Supply Co*., 2024 WL 1601257 (C.D. Cal. 2024) ........................ 9

*Chien v. Bumble Inc.*, 641 F. Supp. 3d 913 (S.D. Cal. 2022)................................ 15

*Conahan v. Rad Power Bikes Inc.,* No. CV 25-0106 PV (C.D. Cal. April 3, 2025) ......................................................................................... 7

*Davis v. Facebook*, *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589 (9th Cir. 2020) .................................................................................... 10

*Dole Food Co. v. Watts*, 303 F.3d 1104 (9th Cir. 2002) ....................................... 17

*Esparza v. Kohl's, Inc.,* 723 F. Supp. 3d 934 (S.D. Cal. 2024)............................ 12

*Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888 (9th Cir. 1996) .................................................................................... 15

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct*., 592 U.S. 351 (2021) .............. 13

*Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp*., 905 F.3d 597 (9th Cir. 2018) ...............................................................................14, 17

*Fudge v. Delta Air Lines, Inc*., 2024 WL 4445985 (C.D. Cal. Oct. 4, 2024) ...14, 15

*Greenley v. Kochava, Inc*684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................21, 23

*Griffith v. TikTok, Inc*., 2023 U.S. Dist. LEXIS 195368, 2023 WL 7107262 (C.D. Cal. Oct. 6, 2023)............................................................................... 10

*Herbal Brands, Inc. v. Photoplaza, Inc*., 72 F.4th 1085 (9th Cir. 2023) ....13, 16, 17

*In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589 (9th Cir. 2020) ..........................................................................9, 11, 14, 23

*In re Google Inc. Cookie Placement Consumer Privacy Litig*. 934 F.3d 316 (3rd Cir. 2019)..................................................................................... 14

*In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. 2022) ........ 12

*In re Vizio, Inc., Consumer Priv. Litig*., 238 F. Supp. 3d 1204 (C.D. Cal. 2017) .. 12

*Kis v. Cognism Inc*., 2024 U.S. Dist. LEXIS 151864; 2024 WL 3924553 (N.D. Cal. Aug. 23, 2024) ........ 9

*Langer v. Kiser*, 57 F.4th 1085 (9th Cir. 2023) ........ 8

*Lightoller v. Jetblue Airways Corp.,* 2023 WL 3963823 (S.D. Cal. 2023) ........ 11

*Mirmalek v. Los Angeles Times Commc'ns* LLC, No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........ 6, 24

*Moody v. C2 Educ.Sys. Inc*., No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367 (C.D. Cal. July 25, 2024) ........ 6, 7, 21, 22

*Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K*., 757 F.2d 1058 (9th Cir. 1985) ........ 13

*Patel v. Facebook, Inc*., 932 F.3d 1264 (9th Cir. 2019) ........ 11

*People v. Manzo,* 53 Cal. 4th 880 (2012) ........ 22

*People v. Platz* 136 Cal. App. 4th 1091 (2006) ........ 22

*Quiniones v. LG Chem., Ltd*., No. 23-15941, 2024 U.S. App. LEXIS 28005 (9th Cir. Nov. 5, 2024) ........ 13

*Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. 2019) ........ 10

*Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007 (9th Cir. 2002) ........ 16

*Rodriguez v. Aquatic Sales,* LLC, 735 F. Supp. 3d 1208 (C.D. Cal. 2024) ........ 15

*Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797 (9th Cir. 2004) ........ 17

*Shah v. Fandom, Inc*., No. 24-CV-01062-RFL, 2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ........ 6, 10

*Swarts v. Home Depot, Inc*., 689 F. Supp. 3d 732 (N.D. Cal. 2023) ........ 15

*TikTok, Inc. v. Garland* (24-656) ........ 14

*TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021) ........ 9

*Valenzuela v. Nationwide Mutual Ins*. Co., 2023 WL 5266033 ........ 8

*Vishal Shah v. Fandom, Inc*., Case No. 193032 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024) ........ 23

*WhatsApp Inc. v. NSO Grp. Techs. Ltd*., 472 F. Supp. 3d 649 (N.D. Cal. 2020) ... 13

*Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023) .......................... 9

Statutes

Cal. Civ. Code § 1798.175 .......................................................................... 24
Cal. Penal Code §629.51(a)(2) ..................................................................19, 20, 21
Cal. Penal Code § 638.50(c)......................................................................19, 21, 23
Cal. Penal Code § 638.51 ..........................................................................19, 24

Defendant's Motion should be denied in its entirety because Defendant made no attempt to meet and confer prior to its filing as required by Central District Local Rule 7-3, which is also why the required certification cannot be found within Defendant's notice of motion. Courts in this district have long been "unwilling to excuse noncompliance with the Local Rules absent any evidence that there was a good faith effort to meet and confer." *Bui v. Nationstar Mortg. LLC*, No. 16- CV-9354-PSG (MRWx), 2017 WL 8185852, at *1 (C.D. Cal. Mar. 22, 2017) (citation omitted); *see also Varkins v. TJC Transp. LLC*, No. 21-CV-1440-FMO (PVCx), 2022 WL 18278623, at *1 (C.D. Cal. Sept. 26, 2022) (denying motion for failure to comply with Local Rule 7-3 and collecting cases). Below, Plaintiff Milan Hassid respectfully submits its Opposition.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I. INTRODUCTION

Defendant Alex and Ani, LLC uses sophisticated commercial surveillance TikTok Software on its retail jewelry website ("Website'") Compl., ¶¶ 8 & 9. The TikTok Software uses a "fingerprinting process" to unmask the identity of anonymous visitors to the Website to misappropriate their private information for Defendant's marketing purposes. This "process," that uses electronic impulses from Plaintiff's device to capture signaling information, data, and intelligence, is a "trap and trace" device, a violation of the California Invasion of Privacy Act ("CIPA"), Penal, §§638.51(a). Compl., ¶¶ 9 – 17.

There is also no California Pen Register and Trap and Trace Act of 2022 that Defendant repeatedly references throughout the motion, which creates unnecessary confusion. Defendant also misses the point of the Complaint. It is not Defendant's Website that Plaintiff alleges violates §638.51 but TikTok Software. Each of Defendant's arguments fail.

No court has held that TikTok Software does not violate this law. See e.g., E.g., *Moody v. C2 Educ.Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL

3561367, at *4 (C.D. Cal. July 25, 2024) (concluding that defendant could be held liable for violating California's prohibition on trap and trace devices over the internet) ("C2"); *Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577, at *1 (N.D. Cal. Oct. 21, 2024) (same); *Mirmalek v. Los Angeles Times Commc'ns* LLC, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (same).

There is no "credible dispute" that Plaintiff has alleged an injury necessary for both CIPA, Cal. Penal Code, § 637.2 and Article II standing. Plaintiff alleges: (1) Defendant operates its TikTok Software on its Website; (2) the TikTok Software collects data from every visitor of the Website; and (3) Plaintiff allegedly visited the Website on [September 16, 2024.] "These allegations demonstrate that Defendant, through the use of the TikTok Software, collected Plaintiff's information, thereby constituting an invasion of privacy. And invasions of privacy are actionable injuries." *Moody v. C2 Educ. Sys*, 742 F. Supp. 3d at 1078.

The Court also has personal jurisdiction over Defendant. See e.g., *Conahan v. Rad Power Bikes Inc.,* No. CV 25-0106 PV (C.D. Cal. April 3, 2025) (Court denied motion to dismiss on ground Plaintiff's privacy rights were violated because the Defendant forwarded Conahan's information to TikTok, headquartered in California.) See Plaintiff's Supplemental Authorities and Request for Judicial Notice.

For these reasons, and as discussed in further detail below, the Court should deny Defendant's motion in its entirety.

## II. RELEVANT FACTS

### A. Defendant's Synopsis of TikTok Software Is Wrong

Defendant misstates the Complaint allegations. TikTok Software is not "commonplace," and it is not website analytics. Motion at 1:2 - 3. Paragraph 32 of the Complaint does not say TikTok Software is used for "analytics purposes," as Defendant misrepresents. Motion, 2:1 - 4. It is not pixel or cookies. Motion at 1:5;

2:2; 2:5. It does not do "routine data collection." Motion 3: 10 – 12. Rather, TikTok Software, as the Complaint describes, is a very **software** used to spy on anonymous and unsuspecting visitors to the Website for Defendant's own marketing purposes. Compl., 2:16.

TikTok Software uses a "fingerprinting process" to unmask the identity of Website visitors by identifying and capturing the source of incoming electronic impulses as the Website visitor clicks on any page of the Website. Compl., ¶ 17.

As part of this "process", it simultaneously transmits data and intelligence that it collects for each Website visitor to not only add to TikTok's database on hundreds of millions of Americans but also to identify each visitor with certainty. Compl ¶¶10 – 12; 15. TikTok Software can identify the user's device, geo-physical location, Internet browsing history, interests, "name, date of birth, and address" to identify the individual with certainty. Compl., ¶ 13.

**B. <u>Defendant Entered a Contract with TikTok Governed by California Law Enforceable in the Central District of California</u>**

To assist in targeting California residents for marketing purposes, Defendant contracted with TikTok, headquartered in Culver City, California, to embed the TikTok Software into the Website. Plaintiff's Request for Judicial Notice ("RJN") **Exhibits A & B**. (Secretary of State Website and TikTok Advertising Services "Terms of Service"). The Terms of Service state that the terms of the contract should be governed by California law and is enforceable by the U.S. District Court Central District of California. RJN, ¶¶ 2 – 4.

**C. <u>Tauler Smith's Number of Filings Is Irrelevant</u>**

Defendant's contention that Plaintiff and/or Tauler Smith is a serial filer is an argument that should be disregarded. "The Ninth Circuit has cautioned courts to generally avoid 'making credibility determinations against serial litigants' in Americans with Disability Act ("ADA") cases unless there is something other than the fact that the litigant files a lot of [lawsuits] that would lead court to question the

plaintiff's credibility." *Langer v. Kiser*, 57 F.4th 1085, 1097 (9th Cir. 2023). In *Valenzuela v. Nationwide Mutual Ins*. Co., 2023 WL 5266033 at fn. 2, Judge Frimpong stated: "Although *Langer* is not directly applicable, as this is not an ADA case [but implicates CIPA], its reasoning largely applies here." *Id*. Defendant's contention should be similarly disregarded.

## III. ARGUMENT

### A. Plaintiff Has Article III Standing

#### 1. Plaintiff Alleges Defendant violated Plaintiff's Privacy – a Concrete and Particularized Injury-In-Fact under Cal. Penal Code, § 638.51

By enacting CIPA, the California legislature "codif[ied] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 598 (9th Cir. 2020). Since Cal. Penal Code § 637.2 provides a private right of action to any violation of any section in the "chapter," and since section 638.51 is part of the same "chapter", then section 637.2 provides a private right of action to violations of 638.51. See, Cal. Penal Code, Part 1, Title 15, Chapter 1.5 Invasion of Privacy, which includes §§ 630 – 638.55.

Binding Ninth Circuit precedent has explained that various rights codified in CIPA are substantive and not procedural rights that are sufficient for Article III standing. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 924 (N.D. Cal. 2023) ("The Ninth Circuit has found that each of the statutory claims brought [under CIPA] codify substantive rights to privacy."). Indeed, "[A] legislature may elevate a legally protected interest into an injury for Article III purposes, though it cannot use its lawmaking power to transform something that is not remotely harmful into something that is." *Kis v. Cognism Inc*., 2024 U.S. Dist. LEXIS 151864; 2024 WL 3924553, at *2 (N.D. Cal. Aug. 23, 2024) (cleaned up); see also *Yockey v. Salesforce, Inc*., 688 F. Supp. 3d 962, 969–70 (N.D. Cal. 2023).

Other courts have reached identical conclusions. See, e.g., *Cantu v. Tractor Supply Co*., 2024 WL 1601257, at *2 (C.D. Cal. 2024) (finding it sufficient to establish a concrete injury under *TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021) when a website's disclosure "allowed Google (and any ordinary person) to readily identify Plaintiff's video-watching behavior . . . for the purpose of retargeting Plaintiff in connection with Google advertising campaigns.")

Additionally, "courts decline to dismiss invasion of privacy claims where plaintiffs allege that the intercepted information is used to compile a user's browsing history across other websites." See *Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. 2019) (finding that intrusion "which allegedly allowed NaviStone to associate Revitch's browsing habits with his identity, is a highly offensive breach of norms"); *Griffith v. TikTok, Inc*., 2023 U.S. Dist. LEXIS 195368, 2023 WL 7107262, at *6 (C.D. Cal. Oct. 6, 2023) (holding that because "the Tiktok [software development kit] allows Defendants to assemble extensive profiles containing individuals' browsing histories across numerous websites . . . the Court cannot conclude at the pleading stage that the alleged privacy intrusion is not serious."); *Shah v. Fandom, Inc*., No. 24-CV-01062-RFL, 2024 U.S. Dist. LEXIS 193032, 2024 WL 4539577, at *5 (N.D. Cal. Oct. 21, 2024) (finding standing where the plaintiffs alleged they were "tracked across multiple visits for marketing and advertising purposes, and that they did not expect or agree to such tracking.")

Here, Plaintiff suffered a constitutionally cognizable injury when Defendant violated his right to privacy – his right to "control information concerning his or her person." *Davis v. Facebook*, *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 598 (9th Cir. 2020). Plaintiff visited the Alex and Ani jewelry website, *www.alexandanie.com*, on September 16, 2024. Compl., ¶ 9.

As soon as any user lands on a web page, including Plaintiff, TikTok Software deploys and collects data it instantly sends to TikTok to match the Website visitor with TikTok's database of information on "hundreds of millions of Americans"

learning Plaintiff's physical geographical location, device information, Internet browsing history and interests. *Id*. at ¶¶10 – 12; 15. Defendant also uses TikTok's "Auto Matching" technology on the Website, which scans every website on the Internet for information about each anonymous visitor, including Plaintiff, by collecting the "name, date of birth, and address" to identify the individual with certainty. Compl., ¶ 13. Even images of the Website visitor's interests and their Internet browsing behavior are sent simultaneously to Defendant and to TikTok to be stored in its database and to add to the collection of user behavior. *Id*. at ¶¶ 13 - 15.

**2. <u>The Injury to Plaintiff Is a Traditionally Recognized Harm</u>**

Indeed, violations of this privacy right fall into the category of traditionally recognized harms that constitute an Article III injury-in-fact. See *Patel v. Facebook, Inc*., 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right to privacy"). In *In re Facebook*, Facebook "continued to collect [plaintiffs'] data after they had logged off the social media platform, to receive and compile their personally identifiable browsing history." *In re Facebook*, 956 F.3d at 598 – 599. The Ninth Circuit found the plaintiffs had "adequately alleged that Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information" because "Facebook's tracking practices allow it to amass a great degree of personalized information," such as "an individual's likes, dislikes, interests, and habits over a significant amount of time." *In re Facebook*, 956 F.3d at 599. The Ninth Circuit concluded that such an "unauthorized exploration" of someone's private life and information behind their back constitutes a cognizable Article III injury. *Id.* at 599. Defendant's collection practices are no different than Facebook using TikTok Software and its Auto Matching Technology.

Defendant cites cases where Courts have held the information collected was not considered an invasion of privacy Motion at 6 - 7, e.g., *Lightoller v. Jetblue*

*Airways Corp.,* 2023 WL 3963823 at *4 (S.D. Cal. 2023) (no standing to allege CIPA claim because "mouse movements, clicks, keystrokes," text "entered into an information field," and URLs were not "private" information); *Esparza v. Kohl's, Inc.,* 723 F. Supp. 3d 934, 945– 46 (S.D. Cal. 2024) (no expectation of privacy in "personal information and browser history" shared with website absent allegation of intimate or sensitive personally identifiable information.); *In re Vizio, Inc., Consumer Priv. Litig*., 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) ("Courts have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications."

Plaintiff, however, does not allege in the Complaint the collection of basic information such as Plaintiff's device's IP address, and information entered by Plaintiff into the Website, but rather, TikTok Software is misappropriating Plaintiff's information to unmask Plaintiff's identity and create an extensive biographical profile on each visitor for Defendant's marketing purposes. Thus, Defendant's cited cases are factually distinguishable.

Courts have clarified that while individuals may not have a reasonable expectation of privacy over the IP addresses of the websites they visit or URLs that only reveal basic identification information, "they do over URLs that disclose either unique 'search terms' or the 'particular document within a website that a person views.'") *Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023); *see also In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) (denying motion to dismiss privacy claim and stating the "nature and volume of the collected information is also important: where Google "sold sensitive personal information such as plaintiff's IP address, geo-location data, and web-browsing information, search terms, and sensitive websites that plaintiffs visited relating to race, religion, sexual orientation, and health.").

As discussed, the TikTok Software sends images of the content Plaintiff views on Defendant's Website in addition to scanning the Internet to obtain Plaintiff's date

of birth, name, address, geolocation and a host of other personally identifying information. Compl., ¶¶ 13 - 15. For these reasons, Plaintiff has standing.

**B. The Court Has Specific Personal Jurisdiction over the Defendant**

The Ninth Circuit applies a 3-part "minimum contacts" test for specific personal jurisdiction over a non-resident defendant, such as Defendant: "(1) the non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable. See, e.g., *Herbal Brands, Inc. v. Photoplaza, Inc*., 72 F.4th 1085, 1090 (9th Cir. 2023). The test's second prong "must be treated as a disjunct, with the 'arises out of' half asking about but-for causation and the 'relates to' half asking whether the defendant's relationships with the forum state support jurisdiction without a causal showing." *Quiniones v. LG Chem., Ltd*., No. 23-15941, 2024 U.S. App. LEXIS 28005, at *2-3 (9th Cir. Nov. 5, 2024) (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct*., 592 U.S. 351, 362 (2021)).

**1. Defendant's Commission of a Tortious Act in California *Alone* Provides Sufficient Minimum Contacts to Support the Exercise of Personal Jurisdiction under *Paccar Intl'l* and *Freestream*.**

The Court of Appeals in *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K*., 757 F.2d 1058, 1064 (9th Cir. 1985) has held: "The commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements [of the minimum contacts test].") Similarly, in *WhatsApp Inc. v. NSO Grp. Techs. Ltd*., 472 F. Supp. 3d 649, 673 (N.D. Cal. 2020), *aff'd on other grounds*, 17 F.4th 930 (9th Cir. 2021), the Court of Appeals concluded: "By sending the malicious

code, defendants electronically entered the forum state seeking out plaintiffs' servers, which were a necessary component to transmit the malicious code to the users." This is based on the "well-settled understanding that the commission of a tort within the forum state usually supports the exercise of personal jurisdiction." *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 606 (9th Cir. 2018) ("*Freestream*").

The California also legislature expressed its intention to protect the right of privacy of people in the State of California in enacting CIPA. "[T]he invasion of privacy resulting from the continual and increasing use of [] devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society." Cal. Penal Code, § 630.

Similarly, the Court of Appeals in *In re Facebook Inc.*, 956 F.3d at 598 states: "As the Third Circuit has noted, '[i]n an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion . . . that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data . . . is untenable. Nothing in Spokeo or any other Supreme Court decision suggests otherwise." citing *In re Google Inc. Cookie Placement Consumer Privacy Litig*. 934 F.3d 316, 325 (3rd Cir. 2019).

Moreover, people like Plaintiff had no idea any of their data was potentially being sent to a foreign government. Compl., at 4: 7; ¶¶ 22 & 33. This exact same concern over this tortious conduct was raised during oral arguments in the Supreme Court. "Just on the data collection, that seems like a huge concern for the future of the country," said Justice Brett Kavanaugh. He suggested that TikTok's vast trove of information on Americans could be used "to develop spies, to turn people, to blackmail people, people who a generation from now will be working in the FBI or the CIA or in the State Department." Transcript of Oral Argument, *TikTok, Inc. v. Garland* (24-656). Oyez. Retrieved at https://www.oyez.org/cases/2024/24-656.

Other U.S. district courts in California have similarly exercised personal jurisdiction involving internet websites finding that the Defendant foreseeably caused tortious conduct to Plaintiff in California. In *Fudge v. Delta Air Lines, Inc.*, 2024 WL 4445985, at *1 (C.D. Cal. Oct. 4, 2024) (Judge Vera), the class action arose out of Delta's disclosure of consumers' personal information to Meta Platforms, Inc. ("Facebook.") Delta moved to dismiss Plaintiffs' Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). The Complaint alleges that Delta regularly conducts business in California and that a substantial part of the events giving rise to Plaintiffs' claims occurred in the state. *Id.* at * 7. Plaintiffs further allege that since they "used their devices within California," Delta "records and disseminates Plaintiffs' and Class Members' data, communications, and personal information in California." *Id.* And, according to Plaintiffs, Delta intentionally installed the Facebook Tracking Pixel on its website "to surreptitiously duplicate and send its customers' personal information to Facebook." *Id.* at * 8. In alleging these facts, the Court concluded Plaintiffs make a sufficient prima facie showing to meet the specific jurisdiction requirements. *Id.* citing *Fireman's Fund Ins. Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 894 (9th Cir. 1996) (noting that "a lawsuit arises out of a defendant's contacts with the forum state if a direct nexus exists between those contacts and the cause of action.")

See also, *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 742 (N.D. Cal. 2023) (concluding minimum conducts were sufficiently alleged for a violation of CIPA based on the company's chat box on its website.); *Chien v. Bumble Inc.*, 641 F. Supp. 3d 913, 929 (S.D. Cal. 2022) (minimum contacts established when defendant, among other things, "collected personal and location information for the purpose of sending targeted 'marketing information, promotions, and advertisements."); and *Rodriguez v. Aquatic Sales,* LLC, 735 F. Supp. 3d 1208, 1219 (C.D. Cal. 2024) (Judge Snyder) (The Court denied defendant's motion to dismiss for lack of personal jurisdiction because the defendant caused harm it knew was

likely to be suffered in California through its website that sold aquarium products to California as well as other states.)

In the Complaint, Plaintiff alleges that he is a California resident. Compl., ¶ 4. Plaintiff visited the Website on September 16, 2024. Id. at ¶ 9.

The TikTok Software began to misappropriate Plaintiff's information the instant he landed on the Website and transmitted it to TikTok to add to its database and to identify Plaintiff with certainty. Id. at ¶¶ 12 & 15.

The TikTok Software collected Plaintiff's user's device information, geographical location, Internet browsing history, interests, name, date of birth, and address, referral tracking, and URL tracking to identify the individual with certainty and add to TikTok's database on hundreds of millions of Americans shared with the Chinese government without Plaintiff's consent. Compl., ¶¶ 9 – 17.

Plaintiff has pleaded a *prima facie* case that Defendant's tort occurred in California.

**2. <u>Plaintiff's § 638.51 Claim "Arises from or Relates to" Defendant's California Activities.</u>**

The second prong of the Ninth Circuit's minimum contacts for specific personal jurisdiction "requires that a plaintiff's claim arise out of or relate to the defendant's contacts with the forum." *Herbal Brands*, 72 F.4th at 1096. Here, the prong is easily met. First, Plaintiff would not have suffered the loss he has alleged here – the invasion of his privacy – had not Defendant forwarded the impulses (and information therein) to TikTok in California. This meets the "but for" test used in such cases as *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) ("The question, therefore, is this: but for [Defendants'] contacts with . . . California, would [Plaintiff's] claims against [Defendant] have arisen?"); *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002). Second, Plaintiff would not have sustained his injury had the Website not been available to him in California.

### 3. <u>Plaintiff Meets the Test's First Prong – Purposeful</u>

The jurisdictional facts set out above demonstrate that Defendant purposely availed itself of the benefits from conducting activities in California or purposely directed its conduct at the state. The fact that Defendant entered into an agreement with TikTok shows that Defendant knew the TikTok Software would collect Website visitors' data, and that Defendant knowingly allowed such information to be collected, commodified and monetized from California residents.

In this manner, Defendant derived benefits from the following California conduct: (1) contracting with TikTok in California, (2) from collecting personal data from California residents; and (3) transmitting that data to TikTok in California. Thus, Defendant is subject to the Court's personal jurisdiction on the ground that it purposely availed itself of the benefits of conducting activities in California that relate to Plaintiff's § 638.51 claim.

The facts also establish that Defendant's actions relating to that claim demonstrate purposeful direction at California. Where, as here, a case is based on an alleged tort, courts assess whether a Plaintiff has shown that purposeful direction at the forum has been satisfied using the three-part Calder "effects test." See *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp*., 905 F.3d 597, 603-04 (9th Cir. 2018). Under the Calder test, a plaintiff must allege a defendant: "(1) committed an intentional act[;] (2) expressly aimed at the forum state[;] (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). "In the context of tort claims, the Supreme Court has held that the purposeful direction requirement is met where the defendants intended to and did indeed cause injury within the forum state, even though the actions that gave rise to the effects took place outside the forum." *Calder v. Jones*, 465 U.S. 783 (1985).

**a. Defendant Committed Multiple Intentional Acts Expressly Aimed at California**

"The 'express aiming' analysis depends, to a significant degree, on the specific type of tort or other wrongful conduct at issue." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 807 (9th Cir. 2004). Where a tort is "intentional," the Ninth Circuit has "found jurisdiction in the plaintiff's home forum," even though the directions of the intentional act and the known impact diverged, because "in such cases the 'acts are performed for the very purpose of having their consequences felt in the forum state.'" *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989). Here, Defendant engaged in multiple intentional acts collecting data from Plaintiff's device in California, contracting with TikTok for software and cooperation in marketing surveillance in California, agreeing to submit to the application of California law and jurisdiction in California courts (with respect to disputes with TikTok.) Plaintiff's RJN Exhibits A & B. Thus, Plaintiff has established that Defendant "expressly aimed" its conduct relating to Plaintiff's claim in California.

**b. Defendant Knew Harm Was Likely to be Suffered in California.**

With regard to the third element of the *Calder* test, Defendant caused harm that it knew would be suffered in California. That harm consists of (1) the interception of Plaintiff's communications and data sent from California; (2) the dissemination of the communications and data to TikTok in California; and (3) the consequences of these events to Plaintiff living his life in California. Moreover, the Complaint alleges that the marketing surveillance using TikTok Software is used on all visitors to the Website, including those based in California.

**4. <u>Exercising Personal Jurisdiction Would Be Reasonable</u>**

It is well settled that if the first two prongs are satisfied, then the burden shifts to the defendant to "present a compelling case" that the exercise of jurisdiction

would not be reasonable. *Herbal Brands*, 72 F.4th at 1090. Defendant has not even articulated a ground that exercise of jurisdiction would be unreasonable in California. Therefore, the Court should deny Defendant's Motion to Dismiss on the ground that the Court has personal jurisdiction over Defendant.

**C. The Complaint States a Claim for A Violation Of CIPA, Cal. Penal Code, Section 638.51**

**1. Statutory Framework for Penal Code, § 638.51**

CIPA, Cal. Penal Code, § 638.51 provides, in pertinent part, as follows:

> (a) Except as provided in subdivision (b), **a person may not install or use a pen register or a trap and trace device without first obtaining a court orde**r pursuant to Section 638.52 or 638.53.
>
> (b) A provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes:
>
> (1) To operate, maintain, and test a wire or electronic communication service.
>
> * * *
>
> (5) If the consent of the user of that service has been obtained.

Penal Code, § 638.51(a), (b)(1) and (5) (Emphasis added.)

**2. TikTok Software Is a Trap and Trace Device**

Cal. Penal Code 638.51 broadly defines a "trap and trace device" as:

> a device or **process** that captures the **incoming electronic** or **other impulses** that identify the originating number **or** other dialing, routing, addressing, **or signaling information reasonably likely to identify the source** of a wire or **electronic communication**, but not the contents of a communication.

Cal. Penal Code § 638.50(c) (bold added).

Section §638.50(a) states: "'Wire communication' and 'electronic communication' have the meanings set forth in subdivision (a) of Section 629.51."

*Id*. Penal Code §629.51(a)(2) defines "electronic communication" broadly as "any transfer of signs, **signals**, writings, images, sounds**, data**, or **intelligence of any nature** in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system." *Id*., § 629.51(a)(2) (bold added.)

**a. <u>Defendant Installed TikTok Software – a Prohibited Device</u>**

In the Complaint, Plaintiff alleges Defendant has installed and uses sophisticated TikTok Software on the Website. Compl., ¶ 9.

**b. <u>TikTok Software Uses a "Process" to Capture Electronic Impulses</u>**

The TikTok Software uses a "fingerprinting process" by capturing "electronic impulses" generated from Plaintiff's device to identify with certainty the identity of each anonymous visitor to the Website, including Plaintiff. *Id*. at ¶¶ 10, 16 - 17.

**c. <u>TikTok Software Collects "Data", "Intelligence" and "Signaling Information" to Identify Anonymous Website Visitors</u>**

As discussed above and incorporated by reference, the TikTok Software misappropriates as much data as it can from each anonymous visitor and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans in order to unmask their identity. Compl. ¶¶ 9 - 19. Thus, Plaintiff pleads all of the elements for a violation of CIPA, Penal Code § 638.51.

**3. <u>The Statute Is Broad and Is Expressly Not Limited Solely to Originating Numbers and Telephones</u>**

Defendant contends that the statute only applies to telephones and the capture of an "originating number." Motion at 12. There is nothing in the broad language of CIPA, Cal. Penal Code, § 638.51 that limits the statute to telephones and incoming phone calls like Caller ID. Motion, 3: 1 – 3. The statute is written in the

disjunctive using "or" and is not so limited. The statute is expressly satisfied by alleging the capture of "signaling information", including the transfer of signals, data, "intelligence of any nature." Penal Code §629.51(a)(2).

Defendant repeatedly references a so-called "Pen Register and Trap and Trace Act" of 2022, which Defendant terms, "CalPRTT Act". There is no such Act, and Defendant cites no authorities in support. Motion, 2:19; fn.1. Thus, Defendant's entire discussion of "the Act" is very confusing and not credible.

The fingerprinting process TikTok Software uses satisfies the statute because the statute's definition of a "trap and trace device" is stated in the disjunctive and includes the capture of "signaling information" and "the transfer of signals, data, intelligence of any nature." Penal Code §§629.51(a)(2); 638.50(c). Several courts have held that the expansive language of Cal. Penal Code § 638.51 and its corresponding definitions are broad and do not limit a trap and trace device to incoming phone calls or phones generally. See e.g., *Moody v. C2 Educ. Sys*, 742 F. Supp. 3d 1072, 1078 (C.D. 2024) (In denying Defendant's motion to dismiss the Plaintiff's §638.51 claim, Judge Klausner stated: "Defendant fails to explain why the definitions under § 638.50 should be so limited given their references to 'wire or electronic communication.'" Cal. Penal Code §§ 638.50(b)–(c); *Greenley v. Kochava, Inc*684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (same).

### 4. <u>The Statute Is Plain and Unambiguous</u>

Defendant's resort to legislative history and an allegedly analogous federal wiretapping act, not at issue, is appropriate only where statutory language is ambiguous. Motion at 11 – 13. "[Courts] may not rewrite the statute to conform to an assumed intention that does not appear in its language." *California Water Impact Network v. County of San Luis Obispo,* 25 Cal.App.5th 666, 678 (2018). It is not proper here because the statute is unambiguous.

Statutory interpretation is guided by the "plain meaning rule". "Under the plain meaning rule, where the language of a statute is plain and admits of no more

than one meaning the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." *Campbell v. Allied Van Lines, Inc.*, 410 F. 3d 61 (9th Cir. 2005).

Defendant's argument that the trap and trace law does not apply to a "commercial website" misses the point. Motion at 11 – 14. Plaintiff alleges that TikTok Software is a prohibited "trap and trace" device. While Defendant points to a Legislative Digest to claim that this statute is only for peace officers, there is no language present in any of the Digests or the statute to suggest that the legislature intended to limit the application of Section 638.51 to peace officers. Motion at 11: 26. Therefore, the Court should reject Defendant's very convoluted argument.

**5. <u>The Rule of Lenity Is Inapplicable.</u>**

Defendant incorrectly argues that the rule of lenity should be applied if there is any ambiguity with interpreting the statute. See Motion at 15. First, the statute is very broad and unambiguous, and therefore, the plain meaning rule applies. "[D]ue process does not compel the court to violate the plain meaning of the words of the statute. If the language contains no ambiguity, the court presumes the Legislature meant what it said, and the plain meaning of the statute governs." *People v. Platz* 136 Cal. App. 4th 1091, 1103 (2006).

Second, the rule of lenity, which is a "tie-breaking principle, of relevance when two reasonable interpretations of the same provision stand in relative equipoise" does not apply because the statute is not ambiguous. See *People v. Manzo,* 53 Cal. 4th 880, 890 (2012). "The rule of lenity applies only if the court can do **no more than guess** what the legislative body intended; **there must be an egregious ambiguity and uncertainty to justify invoking the rule**." *Id.* at 889. (bold added.) This is not the case here.

**6. No Court Has Held that TikTok Software Is Not a Trap and Trace Device**

California courts have conclusively, and persuasively, rejected Defendant's arguments that TikTok Software is not a "trap and device" *to the extent the Court will consider* non-binding but persuasive authorities. See e.g., *Dino Moody v. C2 Educational Systems, Inc*., Case No. 2:24-cv-04249-RGK-SK, 2024 U.S. Dist. LEXIS 132614 (C.D. Cal. July 25, 2024) [Judge Klausner denied Defendant's motion to dismiss the Plaintiff's §638.51 claim holding that Plaintiff plausibly alleged that TikTok Software is a trap and trace device under California law, "at least at the motion to dismiss stage."] The Court further stated: "Defendant fails to explain why the definitions under § 638.50 should be so limited given their references to 'wire or electronic communication.'" Cal. Penal Code §§ 638.50(b)–(c).

In *Vishal Shah v. Fandom, Inc*., Case No. 193032 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024), the Court denied Fandom's motion to dismiss stating that the Plaintiff adequately pleaded the elements of a pen register or a trap and trace device and alleged a plausible claim for violation of § 638.51.

In *Greenley v. Kochava, Inc*., 684 F. Supp. 3d 1024 (S.D. Cal. 2024), the Complaint alleged the Defendant used a software development kit to "fingerprint" users and correlated their personal information without their knowledge. From the information collected, "Defendant [was] able to deliver targeted advertising … by in essence 'fingerprinting' each unique device and user . . ." *Id.* at 1047.

In denying the Defendant's motion to dismiss, the Court in *Kochava, Inc*. found *Davis v. Facebook, Inc*. (*In re Facebook Inc. Internet Tracking Litig*.) (9th Cir. 2020) 956 F.3d 589 instructive ("Facebook gained a cradle-to-grave profile without users' consent.") In *Kochava, Inc*., the Court could not ignore the broad language defining a trap and trace device as to the type of data collected "dialing, routing, addressing, or signaling information" from which a "wire or electronic

communication is transmitted." *Greenley v. Kochava, Inc.*, *supra*, 684 F. Supp. 3d at 1050. It found the definition "vague and inclusive as to the form of the collection tool – 'a device or process' See Cal. Penal Code § 538.50(b)." *Id*.

Similarly in the Demurrer, Defendant fails to explain why the definitions under § 638.50 should be so limited given their references to "wire or electronic communication." Cal. Penal Code §§ 638.50(b)–(c). Therefore, Plaintiff urges the Court to follow.

**D. <u>Defendant's Additional Arguments Fail</u>**

**1. <u>The CCPA Does Not Preempt CIPA but They Operate in Harmony</u>**

Defendant argues that the California Consumer Privacy Act ("CCPA"), not CIPA, should control. Motion 3: 12-15. The Court should disregard Defendant's preemption argument because it is wrong. In fact, CCPA states that "law relating to consumers' personal information should be construed to harmonize with the provisions of this title." (Cal. Civ. Code § 1798.175.) CCPA explicitly states that "in the event of a conflict between other laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." *Id*. Thus, CCPA and CIPA are complementary.

Even if a conflict existed, Plaintiff may bring his claim under CIPA. *Mirmalek v. Los Angeles Times Communs. LLC*, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024). ("Wherever possible, law relating to consumers' personal information should be construed to harmonize with the provisions of this title, but in the event of a conflict between other laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control.") (Cal. Civ. Code § 1798.175)*; see also, e.g., Brooks v. Thomson Reuters Corp.*, (N.D. Cal. Aug. 16, 2021) No. 21-cv-01418-EMC, 2021 U.S. Dist. LEXIS 154093, at *18-19 ["several provisions of the CCPA clearly state

that the law is not meant to curtail other privacy statutes".] Therefore, Defendant's discussion of the CCPA is irrelevant here.

**2. Defendant Is Not Exempt**

Section 638.51 includes an exception for the use of pen registers and trap and trace devices "[t]o operate, maintain, and test a wire or electronic communication service." Cal. Penal Code § 638.51(b)(1). Defendant has not and cannot argue that the collection of this data through the use of TikTok Software is necessary to operate or maintain the Website. Thus, Defendant's argument fails.

**3. Plaintiff is the User and Plaintiff Did Not Consent**

Defendant makes a distorted interpretation of the statute claiming Defendant is the "user" under § 638.51(b)(5), and therefore, is immunized from liability because it consented to having the trap and trace device embedded on the Website. This is an absurd attempt to escape liability. If merely owning a website constitutes consent to the use of a trap and trace device on all visitors to the website, then Section 638.51(a) would never be violated. Plaintiff is the only person whose consent would conceivably be relevant, and Plaintiff alleges he did not consent. The Court should conclude that no exception applies to Defendant.

## IV. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Court deny the Motion to Dismiss, or in the alternative, permit Plaintiff leave to amend to add more facts should the Court find the Complaint deficient.

DATED: April 3, 2025

**TAULER SMITH LLP**

By: */s/ Robert Tauler*

Robert Tauler, Esq.
*Attorney for Plaintiff*
*Milan Hassid*

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Milan Hassid, certifies that this brief contains 6,229 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 3, 2025

**TAULER SMITH LLP**

By: *_/s/ Robert Tauler_*

Robert Tauler, Esq.
*Attorney for Plaintiff*
*Milan Hassid*