**THE LAW OFFICE OF**
**ALEXANDRA KAZARIAN**
644 SOUTH FIGUEROA STREET
LOS ANGELES, CALIFORNIA 90017-3411
TELEPHONE (213) 290-2478
FACSIMILE (213) 232-3255
**ALEXANDRA KAZARIAN SBN 244494**

*Attorney for Defendant*
ALEX AND ANI, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MILAN HASSID, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ALEX AND ANI, LLC., a Rhode Island corporation; DOES 1 through 25, inclusive,<br><br>Defendants. | Case No. 2:25-cv-00679-FMO-JC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>Date: August 14, 2025<br>Time: 10:00 a.m.<br>Ctrm: 6D<br>Judge: Hon. Fernando M. Olguin |

**TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD:** **PLEASE TAKE NOTICE** that on August 14, 2025 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6D, before the Honorable Fernando M. Olguin of the above-entitled Court located at the First Street Courthouse, 350 West First Street, Los Angeles, CA 90012, Defendant Alex and Ani, LLC ("AA" or "Defendant"), by and through its attorneys of record, will and hereby do move for an order dismissing Plaintiff Milan Hassid's ("Plaintiff" or "Hassid") claims in the Class Action Complaint ("Complaint") (ECF No. 1) pursuant to Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place in person at the office of counsel for Plaintiff on July 7, 2025. AA's motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and records on file in this action, and such other evidence and argument as may be presented to the Court at or before the hearing on the motion.

DATED: July 9, 2025

**THE LAW OFFICE OF**
**ALEXANDRA KAZARIAN**

By: *<u>/s/ Alexandra Kazarian</u>*
ALEXANDRA KAZARIAN
ATTORNEY FOR DEFENDANT
ALEX AND ANI, LLC

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. Plaintiff's Allegations .......... 2

B. California's Trap and Trace Law (Cal. Penal Code §§ 638.50–638.53) .......... 2

III. LEGAL STANDARDS .......... 4

IV. ARGUMENT .......... 5

A. Plaintiff lacks Article III standing because she suffers no concrete injury .......... 5

1. Plaintiff does not allege a particularized injury .......... 6

2. Plaintiff does not allege a traditionally recognized injury .......... 9

B. The Complaint fails to demonstrate personal jurisdiction .......... 11

C. The Complaint fails to state a claim .......... 14

1. Fingerprinting is Not Trap-and-Trace Technology .......... 15

i. The Complaint does not allege any communications .......... 17

ii. The TikTok Software does not capture "dialing, routing, addressing, or signaling" ("DRAS") information .......... 17

2. Plaintiff has not alleged injury as required by CIPA .......... 19

3. The Act expressly authorizes AA to collect visitor information .......... 19

V. CONCLUSION .......... 21

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 5

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 5

*Byars v. Sterling Jewelers, Inc.*,
No. 22-cv-01456, 2023 WL 2996686 (C.D. Cal. Apr. 5, 2023) .......... 9, 10

*Caraway Home Inc.*,
655 F. Supp. 3d 966 (C.D. Cal. 2023) .......... 13

*Chandler v. State Farm Mut. Auto. Ins. Co.*,
598 F.3d 1115 (9th Cir. 2010) .......... 4

*Cook v. GameStop, Inc.*,
689 F.Supp.3d 58 (W.D. Pa. 2023) .......... 6

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) .......... 12

*Esparza v. Kohl's, Inc.*,
723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 11

*Heiting v. Marriott Int'l, Inc.*,
No. 23-cv-10822, 2024 WL 3751276 (C.D. Cal. Aug. 5, 2024) .......... 11, 14

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 10

*In re Certified Question of L.*,
858 F.3d 591, 594 (Foreign Int. Surv. Ct. Rev. 2016) .......... 18

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589, 598 (9th Cir. 2020) .......... 16

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......................................................11

*I.C. v. Zynga, Inc.*,
600 F. Supp. 3d 1034 (N.D. Cal. 2022) .......................................................9

*Lightoller v. Jetblue Airways Corp.*,
No. 23-cv-361, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ............6, 10, 11

*Martin v. Outdoor Network LLC*,
No. 23-cv-09807, 2024 WL 661173 (C.D. Cal. Jan. 31, 2024) ....................13

*Martinez v. Aero Caribbean*,
764 F.3d 1062 (9th Cir. 2014) .......................................................................12

*Meisler v. Chrzanowski*,
No. 12-cv-00487, 2013 WL 5375524 (D. Nev. Sept. 24, 2013) ...................17

*MGA Ent., Inc. v. Cabo Concepts Ltd.*,
No. CV 20-10170, 2021 WL 4733784 (C.D. Cal. June 7, 2021) ..................14

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ..........................................................6

*Moody v. C2 Educ. Sys. Inc.*,
No. 24-cv-04249, 2024 WL 3561367 (C.D. Cal. July 25, 2024).........8, 16, 20

*Norman-Bloodsaw v. Lawrence Berkeley Lab.*,
135 F.3d 1260, 1271 n.17 (9th Cir. 1998) ....................................................6

*Ohio Domestic Violence Network v. Pub. Utilities Comm'n*,
638 N.E.2d 1012 (Ohio 1994) ......................................................................20

*Pakootas v. Teck Cominco Metals, Ltd.*,
905 F.3d 565 (9th Cir. 2018).........................................................................13

*Ranza v. Nike*,
793 F.3d 1059 (9th Cir. 2015).........................................................................12

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921, 926–27 (C.D. Cal. 2025) ................................6, 8, 9, 16

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004)........................................................................4, 12

*Southern Bell Tel. & Tel. Co. v. Hamm*,
409 S.E.2d 775 (S.C. 1991)............................................................................20

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ....................................................................................4, 5

*Sullivan v. Oracle Corp.*,
254 P.3d 237 (Cal. 2011)..............................................................................14

*Taus v. Loftus*,
40 Cal. 4th 683 (2007).................................................................................10

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ....................................................................................16

*Wis. Prof. Police Ass'n v. Pub. Serv. Comm'n of Wis.*,
555 N.W.2d 179 (Wis. Ct. App. 1996)......................................................20, 21

**<u>Statutes and Rules</u>**

Cal. Penal Code § 637.2 ...........................................................................*passim*

Cal. Penal Code §§ 638.50–638.53 ..........................................................*passim*

Cal. Penal Code § 638.51 ..........................................................................*passim*

Cal. Penal Code § 638.50(c) .....................................................................*passim*

Fed. R. Civ. P. 12(b)(1) .......... 4

Fed. R. Civ. P. 12(b)(2) .......... 1, 4, 6

Fed. R. Civ. P. 12(b)(6) .......... 1, 5, 14

**Other Authorities**

Riley K. Temple & Michael Regan, Recent Developments Relating to Caller ID,

18 W. St. U. L. Rev. 549 (1990–1991) .......... 3

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's Complaint attempts to transform a commonplace website analytics practice into a violation of a California criminal statute never intended for such use. Plaintiff alleges that Defendant installed the "TikTok pixel" on its jewelry retail website and claims this constitutes use of a "trap and trace device" in violation of Cal. Penal Code § 638.51. This creative theory fails for multiple independent reasons. ***First***, Plaintiff has not pled any concrete or particularized harm from the alleged data collection and therefore lacks Article III standing to invoke federal jurisdiction. ***Second***, even if the statute could be stretched to cover internet activity, the Complaint seeks an impermissible extraterritorial application of California law. The alleged "installation" and "use" of the TikTok pixel occurred on servers located outside California (where Defendant is based), and the presumption against extraterritoriality bars applying Cal. Penal Code § 638.51 to such out-of-state conduct. ***Third***, the Complaint should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction, as Plaintiff does not make a prima facie case as to why AA is subject to the jurisdiction of a California court for the unspecified use of TikTok Software on its Website. ***Fourth***, the Complaint should be dismissed under Rule 12(b)(6) because it fails to state a claim, as the

Complaint fails to allege injury as required to seek civil damages and ignores a statutory exemption that authorizes AA's use of the TikTok Software.

## II. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff is a citizen of California, residing in the Central District. Compl. ¶ 4. Defendant AA operates an e-commerce website that sells jewelry and is incorporated in Rhode Island, *id*. ¶ 5. Plaintiff alleges that at some point AA "install[ed]" TikTok tracking code (the "TikTok pixel" or "TikTok Software") on its website, which collects certain information about visitors for advertising and analytics purposes. *Id*. ¶ 32. Plaintiff visited AA's website on September 16, 2024, after the TikTok pixel was in place. *Id*. ¶ 9. The crux of the Complaint is that the TikTok pixel "captures" data such as a visitor's phone number, email, or other identifying routing information, and that this constitutes a "trap and trace device" under California law. *Id*. ¶¶ 10, 13, 32. Plaintiff asserts that using the pixel without first obtaining a court order (and without visitors' consent) violates Cal. Penal Code § 638.51(a). *Id*. ¶¶ 30, 33. Plaintiff seeks statutory damages under CIPA's private right of action provision, Cal. Penal Code § 637.2. *Id*. ¶ 34.

### B. California's Trap and Trace Law (Cal. Penal Code §§ 638.50-638.53)

The California Pen Register and Trap and Trace Act ("CalPRTTs"), codified in Section 638.51(a) of the California Penal Code, provides that "a

person may not install or use a pen register or a trap and trace device without first obtaining a court order," subject to certain exceptions." A "trap and trace device" is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." § 638.50(c). In simpler terms, a trap-and-trace device captures who is calling or where a communication is coming from – analogous to a Caller ID device that identifies the originating phone number of incoming calls. See Riley K. Temple & Michael Regan, Recent Developments Relating to Caller ID, 18 W. St. U. L. Rev. 549 (1990-1991) ("Caller ID service is made possible by the use of a 'trap and trace' device.").

By contrast, it does not record the substance of the communication itself. See Cal. Penal Code § 638.50(c). The Act was designed to regulate classic telephone surveillance tools: pen registers (outgoing call trackers) and trap-and-trace devices (incoming call trackers) used by law enforcement and others. Nothing in the statutory text or legislative history indicates an intent to police routine data collection on websites, which is governed by other privacy laws if at all. Indeed, the California Consumer Privacy Act (CCPA) addresses website data

practices, whereas Plaintiff's theory attempts to stretch CIPA's trap-and-trace provision far beyond its intended reach.

Notably, in the past months, Plaintiff's counsel, Tauler Smith LLP, has filed dozens of functionally identical suits in the Central District alone, alleging trap-and-trace violations based on the same technology at issue here. The majority will reach settlement before a decision on a motion to dismiss.

## III. LEGAL STANDARDS

**Rule 12(b)(1).** The Court must dismiss a complaint pursuant to Rule 12(b)(1) if the allegations are insufficient on their face to invoke federal jurisdiction. A district court lacks jurisdiction when plaintiff fails to establish standing to sue pursuant to Article III of Constitution. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). The plaintiff has the burden of establishing Article III standing to assert the claims. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

**Rule 12(b)(2).** "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The Court must dismiss claims against a non-resident defendant when the plaintiff fails to make a prima facie showing that the Court has personal jurisdiction over that defendant. *Id.*

**Rule 12(b)(6).** To survive a 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This requires "more than labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

## IV. ARGUMENT

### A. Plaintiff lacks Article III standing because she suffers no concrete injury.

To establish Article III jurisdiction, a plaintiff must allege an "injury in fact" that is (a) concrete and particularized, (b) actual and imminent, not conjectural or hypothetical, and (c) fairly traceable to the challenged action. *Spokeo, Inc.*, 578 U.S. at 338–39. The alleged injury must also have "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion v. Ramirez*, 594 U.S. 413, 424 (2021) (internal quotation marks and citation omitted). A bare, technical violation of a statute is insufficient; the plaintiff must allege an actual injury traditionally recognized as a harm. *See id.* at 435–39. The Complaint fails to meet this standard and should

be dismissed under Rule 12(b)(2) because it does not allege that Plaintiff suffered a concrete injury.

**1. Plaintiff does not allege a particularized injury.**

Plaintiffs' general allegations about what might happen if someone were to visit the Website do not entitle Plaintiff to relief. As courts routinely hold in similar cases, Article III requires the plaintiff to plausibly allege that she, herself, has provided personal information to the defendant. *See, e.g., Lightoller v. Jetblue Airways Corp.*, No. 23-cv-361, 2023 WL 3963823, at *4 (S.D. Cal. June 12, 2023) (no injury in fact under CIPA without allegation that plaintiff "disclosed any personal information to Defendant"); *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864–65 (S.D. Cal. 2023) (same); *Cook v. GameStop, Inc.*, 689 F.Supp.3d 58, 65–66 (W.D. Pa. 2023) (same).

Specifically, the Central District of California has held that whether the right to privacy is implicated depends on 'the sort of information revealed.' Not all information will qualify; the information must be sufficiently personal or sensitive that its disclosure is harmful." *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926–27 (C.D. Cal. 2025) (internal citations omitted) (quoting *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1271 n.17 (9th Cir. 1998).) For that reason, courts will dismiss actions brought under Section 631 when the plaintiff "fails to describe the contents of her query,[as] she

fails to demonstrate that she suffered an injury in fact." *Id.* In *Rodriguez*, the plaintiff alleged as follows:

> Defendant operates the website Autotrader.com (the "Website"). When a visitor visits the Website, the Website immediately installs third-party tracking software on the visitor's browser before the visitor has any opportunity to consent or decline the Website's privacy policy. This software collects various types of information about the visitor to deliver targeted advertising. This information includes IP addresses, operating system information, browser information, geolocation data, and email addresses. This software remains installed on the browser unless the visitor decides to delete it. However, if the visitor visits the Website again, it is reinstalled.
>
> Once the Website loads, the visitor may enter queries into a search bar provided by an unknown third party. When a visitor enters a query, the query is routed to that unknown third party and shared with other third parties like Google, Facebook, Pinterest, and various other advertising services.
>
> In March 2024, Plaintiff, a "tester" that seeks out privacy violations, visited the Website. Immediately upon visiting the Website, the Website installed tracking software on her browser, which captured and sent identifying information to third parties. She also made a search query containing "confidential" and "private" information which was shared with multiple third parties without her consent or permission.

*Id.*, at 924–25.

Here, as Plaintiff's injury, Plaintiff alleges only that Plaintiff "landed" on Defendant's website and that TikTok's software collected browser and device information, geographic data, and referral URLs. Compl. ¶ 10. This kind of basic

telemetry is automatically shared by browsers in every internet request and is not the type of personal or sensitive information contemplated by § 638.51. *See Rodriguez v. Autotrader.com, Inc.* 2025 WL 65409 (C.D. Cal. Jan 8, 2025) (recognizing that individuals do not have a right to privacy with respect to all of one's information). Plaintiff does not allege that she submitted any data, filled out any form, or otherwise provided personally identifiable information that TikTok could "match" or associate with them directly. Compl. ¶¶ 10-18.

Additionally, the instant case is distinguishable from cases considering dismissal of a claim brought under Section 638.51 and where the motion to dismiss was denied. For example, in *Moody v. C2 Educ. Sys. Inc*., 742 F. Supp. 3d 1072, 1075 (C.D. Cal. 2024), the court denied the defendant's motion to dismiss, but there the plaintiff alleged that the defendant, an online tutoring program, embedded a TikTok marketing pixel on its website and collected sensitive information from not just users generally, but the plaintiff specifically, without obtaining prior consent. *Id* at 1075. In contrast, Plaintiff's claim for injury here rests solely on Plaintiff's *landing* on the website. Compl. ¶¶ 9-10. Instead of describing Plaintiff's own interactions with the Website, the Complaint describes hypothetical "users" and "visitors," and relies on general screenshots of unknown origin. *See, e.g.*, Compl. ¶ 13–15 (the TikTok Software collects information when "a user lands on the website" so that "TikTok can isolate with

certainty the individual to be targeted); *see also, e.g., id.* ¶ 32 (the software captures "information of website visitors"). Because Plaintiff never claims that she was among the individuals supposedly targeted, or that their data was captured, their Complaint should be dismissed. *Byars v. Sterling Jewelers, Inc.*, No. 22-cv-01456, 2023 WL 2996686, at *4 (C.D. Cal. Apr. 5, 2023) (no Article III standing to bring CIPA claim because Plaintiff did not allege disclosure of sensitive information). *See Rodriguez v. Autotrader.com, Inc.* 2025 WL 65409 (C.D. Cal. Jan 8, 2025). *See also TransUnion*, 594 U.S. 413, 424 (2021) (holding that a "concrete harm" is one which has a "close relationship" to harm which would traditionally form a basis for a lawsuit in American courts).

**2. Plaintiff does not allege a traditionally recognized injury.**

Plaintiff also lacks standing because she makes no claim that AA's use of the TikTok Software could cause the type of harm required for Article III jurisdiction. *See TransUnion*, 594 U.S. at 424 (a "concrete harm" has "a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts"). When assessing federal jurisdiction in cases alleging privacy harms, courts typically analyze whether a harm is analogous to traditional privacy torts, notably (1) "disclosure of private information" or (2) "intrusion upon seclusion." *See I.C. v. Zynga, Inc.,* 600 F. Supp. 3d 1034, 1050 (N.D. Cal. 2022) (dismissal due to "an insufficient fit between the loss of

information alleged" and "private disclosure of private facts and intrusion upon seclusion"). Disclosure of private information requires sensitive and intimate private facts, the disclosure of which "would be offensive and objectionable to the reasonable person." *Taus v. Loftus*, 40 Cal. 4th 683, 717 (2007). Intrusion upon seclusion requires an intrusion that is contrary to a person's reasonable expectation of privacy in a manner that would be "highly offensive" to a reasonable person. *Hernandez v. Hillsides, Inc*., 47 Cal. 4th 272, 286 (2009). Plaintiff's claim contains virtually none of the elements of either's elements.

First, Plaintiff makes no allegation that AA captured any sensitive, intimate, or private facts as to Plaintiff or visitors generally. *See Loftus*, 40 Cal. 4th at 717. Instead, the TikTok Software allegedly captured anodyne personal identifiers that visitors would need to voluntarily disclose while on the Website, like their names and email addresses, along with a hodgepodge of other information that does not directly identify anyone, for example, "device and browser information," and "geographic information." Compl. ¶¶ 11, 13, 32. This information is hardly sensitive or intimate, and courts hold that it does not "implicate[] a protectable privacy interest" when disclosed to a website. *Byars,* 2023 WL 2996686 at *2–3; *see also Lightoller*, 2023 WL 3963823, at *4 (no standing to allege CIPA claim because "mouse movements, clicks, keystrokes,"

text "entered into an information field," and URLs were not "private" information).

Second, Plaintiff never alleges that Website visitors have a reasonable expectation of privacy in any of this information because she cannot. *See, e.g.,Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 945– 46 (S.D. Cal. 2024) (no expectation of privacy in "personal information and browser history" shared with website absent allegation of intimate or sensitive personally identifiable information); *see also In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233 (C.D. Cal. 2017) ("Courts have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications.") (collecting cases). And since none of the information described in the Complaint is either private or sensitive, it follows that its collection or disclosure cannot be "highly offensive" to a reasonable person. *Lightoller*, 2023 WL 3963823, at *4; *Byars,* 2023 WL 2996686 at *2–3. Accordingly, even if Plaintiff alleged that the TikTok Software captured any of their information (she does not), she still could not allege a traditional injury-in-fact.

**B. The Complaint fails to demonstrate personal jurisdiction.**

To hail a foreign defendant like AA into court, a plaintiff must show either general or specific personal jurisdiction. *See, e.g., Heiting v. Marriott Int'l, Inc.*,

No. 23-cv-10822, 2024 WL 3751276, at *2 (C.D. Cal. Aug. 5, 2024) (*citing Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001)). When sitting in diversity,"[f]ederal courts ordinarily follow state law in determining the bounds of their jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Because "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution" the Court should look to "the limits imposed by federal due process." *Id.* Plaintiff must make a prima facie showing that jurisdiction is proper at the motion to dismiss stage. *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1066 (9th Cir. 2014).

The Complaint makes no such showing. First, it does not allege systematic contacts in California and admits that AA is incorporated in Rhode Island. *See* Compl. ¶ 5. *See generally,* Compl. Accordingly, the Court may not exercise general jurisdiction over AA. *See Ranza v. Nike*, 793 F.3d 1059, 1069 (9th Cir. 2015) (general jurisdiction is only available outside a corporation's place of incorporation or principal place of business in an "exceptional case"). The Complaint also fails to allege a prima facie case of specific jurisdiction, which exits only if: (1) the defendant purposefully directed its activities at forum state, (2) the claims "arise out of or relate to" the defendant's contacts with the forum; and (3) exercising jurisdiction comports with fair play and substantial justice. *See Schwarzenegger*, 374 F.3d at 802.

Plaintiff's case fails on the first prong. Their sole relevant allegation is that AA "purposefully directed its activities" at the Central District "by regularly engaging with individuals in California through its website." Compl. ¶ 2. But conclusory allegations are insufficient. *See Caraway Home Inc.*, 655 F. Supp. 3d at 969–70 (no personal jurisdiction in CIPA case where plaintiff alleged only "minimum contacts" and operation of a California website). And mere operation of a website available to Californians does not establish purposeful direction. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 577 (9th Cir. 2018) (purposeful direction requires "something more than a foreign act with foreseeable effects in the forum state") (cleaned up).

The Complaint also fails on the second prong. Nowhere does Plaintiff allege that their claims arise out of *California-specific* contacts. To the contrary, the Complaint is clear that the TikTok Software operates regardless of a visitors' location. *See generally* Compl. (referring to "users" and "individuals" untethered to location). *See also Martin v. Outdoor Network LLC*, No. 23-cv-09807, 2024 WL 661173, at *5 (C.D. Cal. Jan. 31, 2024) (no personal jurisdiction for website-based CIPA claim even though defendant was allegedly aware plaintiff was in California).

Finally, the Complaint fails under the third prong, which requires personal jurisdiction consistent with Due Process. "If the defendant merely operates a

website, even a highly interactive website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *MGA Ent., Inc. v. Cabo Concepts Ltd.*, No. CV 20-10170, 2021 WL 4733784, at *5 (C.D. Cal. June 7, 2021) (cleaned up). Plaintiff has not stated a prima facie case for general or specific jurisdiction so their Complaint should be dismissed. *See Heiting,* 2024 WL 3751276 at *4 (dismissing CIPA case for lack of personal jurisdiction).[1]

**C. The Complaint fails to state a claim.**

The Court should dismiss the Complaint pursuant to Rule 12(b)(6) for multiple, individually sufficient reasons: *First*, the Complaint's sole theory of

---

[1] For similar reasons, the Complaint lacks sufficient allegations that AA or the Website are within the territorial scope of the CalPRTT Act, which lacks force outside of California. Per the Commerce Clause of the U.S. Constitution and to avoid legal conflict with other states, California observes a presumption against the extraterritorial application of its laws. *See, e.g.*, *Sullivan v. Oracle Corp.*, 254 P.3d 237, 248 (Cal. 2011) ("we presume the Legislature did not intend a statute to be operative, with respect to occurrences outside the state, unless such intention is clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history") (cleaned up) (quoting *N. Alaska Salmon Co. v. Pillsbury*, 162 P. 93, 94 (Cal. 1916)). Nothing in the CalPRTT Act evidences an intent that it should apply beyond California's borders. Indeed, because it only permits law enforcement to install and use PRTTs in criminal investigations pursuant to procedures and requirements that are necessarily only available to *California* peace officers, *see* Cal. Penal Code §§638.51(a), 638.52, 638.53, extraterritorial application of the Act would produce absurd results: Every federal law enforcement officer or officer from another state would commit a violation of the California Penal Code by installing and using a PRTT that was issued under another authority.

liability is based on the CalPRTT Act, which is not applicable to commercial websites like AA's that do not permit person-to-person communications. *Second*, even if there were plausible arguments that the CalPRTT Act might apply to ordinary commercial websites, the Act's scope is at a minimum ambiguous, and the rule of lenity requires dismissal. *Third*, the Complaint fails to plead two essential elements required for a trap-and-trace claim, namely: the presence of a "communication," and the collection of "dialing, addressing, routing, and signaling" information. *Fourth*, the Complaint does not allege any injury as required to bring a civil suit for a violation of the CalPRTT Act. *Fifth*, even if Plaintiff pled all the elements of a claim, the Act's statutory exemptions would still authorize AA to use the TikTok Software on its own website.

**1. Fingerprinting is Not Trap-and-Trace Technology.**

Even if the CalPRTT Act applied to commercial websites, the Complaint would still require dismissal because Plaintiff does not (and cannot) plead the use of a "pen register," see Compl. ¶¶ 29–34, and it does not plead the elements of a claim for an unlawful "trap-and-trace" device. To constitute a trap-and-trace device, a device or process must: (1) Capture incoming impulses (electronic or other); (2) Such impulses must identify either the "originating number" of a communication, or "other dialing, routing, addressing, or signaling information" ("DRAS") that is "reasonably likely to identify the source" of that

communication; and (3) Not capture "the contents" of the communication. Cal. Penal Code § 638.50(c). The Complaint alleges neither a communication nor DRAS.

Courts have found that routine collection of browser and device metadata, without more, does not constitute actionable trap-and-trace activity under CIPA, especially where there is no allegation that sensitive or personally identifiable information was submitted or collected. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020) ("*In re Facebook*"). *Contrast Rodriguez v. Autotrader.com, Inc.*, 2025 WL 65409, at *3 (C.D. Cal. Jan. 8, 2025) *with Moody v. C2 Educ. Sys. Inc.*, 2024 WL 356167, at *3 (C.D. Cal. July 25, 2024). Plaintiff does not claim that she ever submitted a name, date of birth, or address, or that Defendant collected such data. Compl. ¶ 13. Plaintiff's theory relies entirely on what TikTok may do with anonymous data collected from millions of users across the web. Id. ¶¶ 10-18. That is not trap-and-trace activity by Defendant. It is at most a speculative downstream action by a third party and both falls outside the scope of CIPA-covered actions and falls short of Article III injury-in-fact pleading requirements. *See Rodriguez v. Autotrader.com, Inc.* 2025 WL 65409 (C.D. Cal. Jan 8, 2025) (recognizing that landing on a page that utilizes tracing technology does not rise to a CIPA violation). *See also TransUnion*, 594 U.S. 413, 424 (2021) (holding that a "concrete harm" is one

which has a "close relationship" to harm which would traditionally form a basis for a lawsuit in American courts).

**i. The Complaint does not allege any communications.**

By definition, a trap-and-trace device must capture the originating number or other DRAS of a communication. *See* Cal. Penal Code § 638.50(c). But Plaintiff does not allege any communications here. Instead, the Complaint vaguely describes "electronic impulses," see, e.g., Compl. ¶¶ 15, 17, 18, without explaining what they entail, much less what (or if) they communicate. Because Plaintiff has not identified any communications identified by so-called "impulses," she cannot state a claim for a trap-and-trace device. *See* Cal. Penal Code § 638.50(c).

**ii. The TikTok Software does not capture "dialing, routing, addressing, or signaling" ("DRAS") information.**

The Complaint also does not allege that the TikTok Software captured any data that could constitute either the "originating number" of a supposed *communication*, or other DRAS that is "reasonably likely" to identify the communication's source. DRAS "identif[ies] the source of a wire or electronic communication," but not its contents. *Id.* § 638.50(c). Examples include the number used to make or receive a phone call, or the identifier of an account used to make a social media post. *See, e.g., Meisler v. Chrzanowski*, No. 12-cv-00487,

2013 WL 5375524, at *14 (D. Nev. Sept. 24, 2013) (DRAS "includes the phone numbers dialed from or to a particular telephone," and "its counterpart in internet *communications*") (emphasis added). But DRAS does not include information other than that which identifies the sender of a communication. *In re Certified Question of L.*, 858 F.3d 591, 594 (Foreign Int. Surv. Ct. Rev. 2016) (DRAS includes digits input into a phone to "dial[] a telephone number," but not additional information not used to place the call, e.g., a "password, a personal identification number, [] a bank account number," a "credit card number or a Social Security number").

The Complaint alleges that the TikTok Software captures visitors' "phone number" Compl. ¶ 17, and other "information[] such as name, date of birth, and address." *id.* ¶ 13. But it does not explain how any of this information could constitute either the "originating number" or other DRAS of someone's visit to a commercial website. Just because information may identify a person does not make it DRAS that is likely to identify the source of the person's communications. A person's phone number constitutes the "originating number" for their telephone calls, not their visits to commercial websites. Name, date of birth, and address fare no better for the same reasons. Finally, the Complaint broadly alludes to other "identifying dialing, routing, addressing and signaling

information generated by users," *id.* ¶ 17, but the "threadbare recital[]" of a statutory definition cannot overcome a motion to dismiss. *Iqbal*, 556 U.S. at 663.

**2. Plaintiff has not alleged injury as required by CIPA.**

CIPA's private right of action is available only to individuals who have been "injured" by a violation. Cal. Penal Code § 637.2(a). Although the Complaint asserts that the TikTok Software "begins to collect information the moment a userlands on" the Website, Compl. ¶ 12 (emphasis added), it does not state that Plaintiff was ever such a "user". And while the Complaint asserts that the TikTok Software "is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors," id. ¶ 32, and that it captures other information like "name, date of birth, and address," id. ¶ 13, it never states that the TikTok Software collected any such information from Plaintiff. Even assuming that Plaintiff visited the Website, the Complaint never describes when or why she would have disclosed their information or how the TikTok Software might have captured it. Since Plaintiff does not allege some resulting harm, she has not alleged an injury sufficient to state a claim.

3. **The Act expressly authorizes AA to collect visitor information.**

Even if Plaintiff had alleged the presence of a trap and trace device that injured her (she hasn't), the CalPRTT Act's user-consent exemption precludes their claim. *See* Cal. Penal Code § 638.51(b)(5). This exemption permits the

installation of a PRTT device with the consent of the "user," and refers only to a single "user" of a service. *Id.* When construing virtually identical language in other PRTT laws, courts consistently hold that the "user," for purposes of consent to a trap-and-trace device, is the party who receives the communication, not the sender. *See, e.g., Wis. Pro. Police Ass'n*, 555 N.W.2d at 188 ("the singular term 'user' must be understood to refer to the consent of the person being called"); *Southern Bell Tel. & Tel. Co. v. Hamm*, 409 S.E.2d 775, 777 (S.C. 1991) (the statute does not refer to "all parties," meaning that "user" must "be understood to refer to the consent of the person being called"); *Ohio Domestic Violence Network v. Pub. Utilities Comm'n*, 638 N.E.2d 1012, 1021 (Ohio 1994) (there will "be only one party with respect to whom the installation and use [of a trap-and-trace device] is to take place," and this "is thus the 'user' referred to" in the consent exemption) (cleaned up).

Plaintiff may cite to *Moody* to argue that these cases are merely persuasive, *see Moody v. C2 Educ. Sys. Inc.*, No. 24-cv-04249, 2024 WL 3561367, at *3 (C.D. Cal. July 25, 2024), but *Moody* did not consider the chaos that would result from a conflicting interpretation of the CalPRTT Act's consent exemption. As one court noted, it would be "inconceivable" to require "consent [to be] obtained" for "every particular call (which would be impossible for calls that were unanswered)." *Ohio Domestic Violence Network*, 638 N.E.2d at 1021. Requiring

consent for each and every incoming communication would render the consent exemption a nullity and make services like caller ID illegal. Logically, there can only be one "user," and here, that "user" is AA.

Plaintiff alleges that the TikTok Software operates on the Website to "identify the source of electronic communications," i.e., supposed communications directed to AA. Compl. ¶ 17. Plaintiff does not argue that the TikTok Software operates on visitors' browsers or devices or records their outgoing communications. AA is the recipient of the supposed communications, whereas the Website visitor is the sender. Therefore, only AA's consent matters. *See, e.g., Wis. Pro. Police Ass'n*, 555 N.W.2d at 188. And because AA installed the TikTok Software, it clearly consented for purposes of the exemption. *See* Cal. Penal Code § 638.51(b)(5).

## V. CONCLUSION

For the reasons set forth above, Plaintiff's Complaint should be dismissed with prejudice.

//

//

//

//

DATED: July 9, 2025

**THE LAW OFFICE OF ALEXANDRA KAZARIAN**

By: _/s/ Alexandra Kazarian_
ALEXANDRA KAZARIAN
ATTORNEY FOR DEFENDANT
ALEX AND ANI, LLC

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for ALEX AND ANI, LLC, certifies that this brief contains 4,869 words, which complies with the word limit of L.R. 11-6.2.

DATED: July 9, 2025

**THE LAW OFFICE OF**
**ALEXANDRA KAZARIAN**

By: *[/s/ Alexandra Kazarian]*
ALEXANDRA KAZARIAN
ATTORNEY FOR DEFENDANT
ALEX AND ANI, LLC

## **PROOF OF SERVICE**

I, Alexandra Kazarian, declare:

I am a citizen of the United States and employed in the State of California. I am over the age of 18 years and am not a party to the within-entitled action. My business address is 644 S. Figueroa Street, Los Angeles, California 90017.

On July 9, 2025, I electronically filed via my electronic service address (ak@alexkazlaw.com) the attached document:

**NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT**

with the Clerk of the court using the CM/ECF system which will then send a notification of such filing to the following:

Robert Tauler
Narain Kumar
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, CA 90017
213-927-9270
Email: robert@taulersmith.com
Email: nkumar@taulersmith.com
Attorneys for Plaintiff Milan Hassid

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 9, 2025, at Los Angeles, California.

*/s/Alexandra Kazarian*
*Alexandra Kazarian*