Robert Tauler (SBN 241964)
robert@taulersmith.com
Narain Kumar, Esq. (SBN 301533)
nkumar@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 550
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Milan Hassid*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MILAN HASSID, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

ALEX AND ANI, LLC, a Rhode Island corporation; DOES 1 through 25, inclusive,

Defendants.

Case No.: 2:25-cv-00679-FMO-JC

**PLAINTIFF MILAN HASSID'S OPPOSITION TO DEFENDANT ALEX AND ANI, LLC'S MOTION TO DISMISS CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing
Date: August 14, 2025
Time: 10:00 am
Courtroom: 6D

# TABLE OF CONTENTS

**I. INTRODUCTION** .......... **6**
**II. RELEVANT FACTS** .......... **7**
A. DEFENDANT'S SYNOPSIS OF TIKTOK SOFTWARE IS WRONG .......... 7
B. DEFENDANT ENTERED A CONTRACT WITH TIKTOK GOVERNED BY CALIFORNIA LAW ENFORCEABLE IN THE CENTRAL DISTRICT OF CALIFORNIA .......... 8
C. TAULER SMITH'S NUMBER OF FILINGS IS IRRELEVANT .......... 9
**III. LEGAL STANDARD** .......... **9**
A. LEGAL STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(B)(2) .......... 9
B. LEGAL STANDARD FOR A MOTION TO DISMISS UNDER RULE 12(B)(6) .......... 10
**IV. ARGUMENT** .......... **11**
A. PLAINTIFF HAS ARTICLE III STANDING .......... 11
*1. Plaintiff Alleges Defendant violated Plaintiff's Privacy – a Concrete and Particularized Injury-In-Fact under Cal. Penal Code § 638.51* .......... *11*
*2. The Injury to Plaintiff Is a Traditionally Recognized Harm* .......... *13*
B. THIS COURT CAN EXERCISE PERSONAL JURISDICTION OVER DEFENDANT .......... 17
*1. The "Minimum Contacts," Calder/Effects Tests, and Arising or Related to Prong are All Established under Briskin* .......... *18*
*2. Plaintiff's § 638.51 Claim "Arises from or Relates to" Defendant's California Activities.* .......... *20*
*3. Defendant Knew Harm Was Likely to be Suffered in California.* .......... *21*
C. THE COMPLAINT STATES A CLAIM FOR A VIOLATION OF CIPA, CAL. PENAL CODE, SECTION 638.51 .......... 24
*1. Statutory Framework for Penal Code, § 638.51* .......... *24*
*2. TikTok Software Is a Trap and Trace Device* .......... *24*
*3. The Statute Is Broad and Is Expressly Not Limited Solely to Originating Numbers and Telephones* .......... *26*
*4. The Statute Is Plain and Unambiguous* .......... *27*
*5. The Rule of Lenity Is Inapplicable.* .......... *28*
*6. No Court Has Held that TikTok Software Is Not a Trap and Trace Device* .......... *28*
D. DEFENDANT'S ADDITIONAL ARGUMENTS FAIL .......... 30
*1. The CCPA Does Not Preempt CIPA but They Operate in Harmony* .......... *30*
*2. Defendant Is Not Exempt* .......... *31*
*3. Plaintiff is the User and Plaintiff Did Not Consent* .......... *31*
**V. CONCLUSION** .......... **32**

# TABLE OF AUTHORITIES

Page(s)

Cases

2024 WL 3924553 (N.D. Cal. Aug. 23, 2024) .......... 12
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 11
*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) .......... 10
*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) .......... 20
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 10, 11
*Briskin v. Shopify, Inc.*, 135 F.4th 739 (2025) .......... 17, 19, 20, 21
*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 11, 15
*Calder v. Jones*, 465 U.S. 783 (1985) .......... 19
*California Water Impact Network v. County of San Luis Obispo*, 25 Cal.App.5th 666 (2018) .......... 27
*Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156 (9th Cir. 2016) .......... 10
*Campbell v. Allied Van Lines, Inc*., 410 F. 3d (9th Cir. 2005) .......... 27
*Cantu v. Tractor Supply Co*., 2024 WL 1601257 (C.D. Cal. 2024) .......... 12
*Conley v. Gibson*, 355 U.S. 41 (1957) .......... 10
*Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195 (9th Cir. 2022) .......... 11
*Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934 (S.D. Cal. 2024) .......... 14
*Fiore v. Walden*, 688 F.3d 558 (9th Cir. 2012) .......... 10
*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597 (9th Cir. 2018) .......... 22
*Greenley v. Kochava, Inc*., 684 F. Supp. 3d 1024 (S.D. Cal. 2024) .......... 29
*Griffith v. TikTok, Inc*., 2023 WL 7107262 (C.D. Cal. Oct. 6, 2023) .......... 12
*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023) .......... 18, 20, 22
*In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589 (9th Cir. 2020) .......... Passim
*In re Google Inc. Cookie Placement Consumer Privacy Litig*., 934 F.3d 316 (3rd Cir. 2019) .......... 17
*In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. 2022) .......... 15
*In re Vizio, Inc., Consumer Priv. Litig*., 238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......... 14

*Langer v. Kiser*,
57 F.4th 1085 (9th Cir. 2023) ....9
*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. 2023) .... 14
*LNS Enters. LLC v. Cont'l Motors, Inc.*,
22 F. 4th 852 (9th Cir. 1977) .... 10
*Mirmalek v. Los Angeles Times Commc'ns* LLC,
2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ....6
*Moody v. C2 Educ. Sys*,
742 F. Supp. 3d ....7
*Moody v. C2 Educ.Sys. Inc*.,
2024 WL 3561367 (C.D. Cal. July 25, 2024)....6, 26, 28
*Patel v. Facebook, Inc*.,
932 F.3d 1264 (9th Cir. 2019).... 13
*People v. Manzo*,
53 Cal. 4th 880 (2012) .... 28
*People v. Platz*,
136 Cal. App. 4th 1091 (2006).... 28
*Rio Properties, Inc. v. Rio Intern. Interlink*,
284 F.3d 1007 (9th Cir. 2002).... 21
*Shah v. Fandom, Inc*.,
2024 WL 4539577 (N.D. Cal. Oct. 21, 2024)....6, 12
*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) .... 12
*Valenzuela v. Nationwide Mutual Ins*. Co.,
2023 WL 5266033fn. 2 ....9
*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) .... 10
*Yockey v. Salesforce, Inc*.,
688 F. Supp. 3d 962 (N.D. Cal. 2023).... 12

Statutes

Cal. Civ. Code § 1798.175.... 30
Cal. Penal Code § 538.50(b) .... 30
Cal. Penal Code § 638.50(c).... 24
1.Plaintiff Alleges Def .... Passim
Cal. Penal Code § 638.51(b)(1).... 31
Cal. Penal Code §§ 638.50(b)–(c) ....27, 29, 30
Cal. Penal Code, § 637.2....7, 11
Section 638.51(b)(5).... 31
§638.50(a) .... 25
§ 638.50....27, 29, 30
§ 638.51(a), (b)(1) and (5) .... 24
§§638.51(a) ....6, 31

Rules

Federal Rule of Civil Procedure 8(a)(2) .... 10

Other Authorities

16, 2021) No. 21-cv-01418-EMC,
2021 U.S. Dist. LEXIS 154093, at *18-19 ........ 31
CIPA. *Mirmalek v. Los Angeles Times Communs. LLC*,
2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ........ 30
*First Capitol Consulting, Inc. v. NetTax, LLC*, No. 2:23-cv-07837-MRA-AGR,
2025 U.S. Dist. LEXIS 27438, at *2 n.1 (C.D. Cal. Feb. 14, 2025) ........ 10
*Kis v. Cognism Inc.*,
2024 U.S. Dist. LEXIS 151864 ........ 12
*Revitch v. New Moosejaw, LLC*,
2019 U.S. Dist. LEXIS 186955 (N.D. Cal. 2019) ........ 12
*Vishal Shah v. Fandom, Inc.*, Case No. 193032 ,
2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024) ........ 29

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION[1]

Defendant Alex and Ani, LLC uses sophisticated commercial surveillance TikTok Software on its retail jewelry website ("Website'") Compl. ¶¶ 8 & 9. The TikTok Software uses a "fingerprinting process" to unmask the identity of anonymous visitors to the Website to misappropriate their private information for Defendant's marketing purposes. This "process," that uses electronic impulses from Plaintiff's device to capture signaling information, data, and intelligence, is a "trap and trace" device, a violation of the California Invasion of Privacy Act ("CIPA"), Penal, §§638.51(a). Compl. ¶¶ 9–17.

There is also no California Pen Register and Trap and Trace Act of 2022 or "CalPRTT" that Defendant repeatedly references throughout the motion, which creates unnecessary confusion. Defendant also misses the point of the Complaint. It is not Defendant's Website itself that Plaintiff alleges violates §638.51, but the TikTok Software. Each of Defendant's arguments fail.

No court has held that TikTok Software does not violate this law. *See e.g.*, *Moody v. C2 Educ.Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367, at *4 (C.D. Cal. July 25, 2024) (concluding that defendant could be held liable for violating California's prohibition on trap and trace devices over the internet) ("C2"); *Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 WL 4539577, at *1 (N.D. Cal. Oct. 21, 2024) (same); *Mirmalek*

[1] The undersigned counsel for Plaintiff also apologizes for the late filing which was unfortunately caused by an unexpected medical issue.

*v. Los Angeles Times Commc'ns* LLC, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3 (N.D. Cal. Dec. 12, 2024) (same).

There is no "credible dispute" that Plaintiff has alleged an injury necessary for both CIPA, Cal. Penal Code, § 637.2 and Article III standing. Plaintiff alleges: (1) Defendant operates its TikTok Software on its Website; (2) the TikTok Software collects data from every visitor of the Website; and (3) Plaintiff allegedly visited the Website on [September 16, 2024.] "These allegations demonstrate that Defendant, through the use of the TikTok Software, collected Plaintiff's information, thereby constituting an invasion of privacy. And invasions of privacy are actionable injuries." *Moody v. C2 Educ. Sys*, 742 F. Supp. 3d at 1078.

The Court also has personal jurisdiction over Defendant. See e.g., *Conahan v. Rad Power Bikes Inc.,* No. CV 25-0106 PV (C.D. Cal. April 3, 2025) (Court denied motion to dismiss on ground Plaintiff's privacy rights were violated because the Defendant forwarded Conahan's information to TikTok, headquartered in California). This was true when Defendant's original motion to dismiss was filed, and is even more true now because of the Ninth Circuit's subsequent decision in

For these reasons, and as discussed in further detail below, the Court should deny Defendant's motion in its entirety.

## II. RELEVANT FACTS

### A. <u>Defendant's Synopsis of TikTok Software Is Wrong</u>

Defendant misstates the Complaint allegations. TikTok Software is not "commonplace," and it is not website analytics. Motion at 1:2-3. Paragraph 32 of the Complaint does not say TikTok Software is used for "analytics purposes," as Defendant misrepresents. Motion, 2:1-4. It is not pixel or cookies. Motion at 1:5; 2:2; 2:5. It does not do "routine data collection." Motion 3:10–12. Rather, TikTok Software, as the Complaint describes, is a very sophisticated **software** used to spy on anonymous and unsuspecting visitors to the Website for Defendant's own marketing purposes. Compl. ¶¶ 10, 32.

TikTok Software uses a "fingerprinting process" to unmask the identity of Website visitors by identifying and capturing the source of incoming electronic impulses as the Website visitor clicks on any page of the Website. Compl. ¶ 17.

As part of this "process", it simultaneously transmits data and intelligence that it collects for each Website visitor to not only add to TikTok's database on hundreds of millions of Americans but also to identify each visitor with certainty. Compl. ¶¶10 – 12; 15. TikTok Software can identify the user's device, geo-physical location, Internet browsing history, interests, "name, date of birth, and address" to identify the individual with certainty. Compl. ¶ 13.

**B. <u>Defendant Entered a Contract with TikTok Governed by California Law Enforceable in the Central District of California</u>**

To assist in targeting California residents for marketing purposes, Defendant contracted with TikTok, headquartered in Culver City, California, to embed the TikTok Software into the Website. Plaintiff's Request for Judicial Notice ("RJN") **Exhibits A** &

**B**. (Secretary of State Website and TikTok Advertising Services "Terms of Service") (previously filed at dkt. 15-1). The Terms of Service state that the terms of the contract should be governed by California law and is enforceable by the U.S. District Court Central District of California. RJN ¶¶ 2 – 4.

### C. Tauler Smith's Number of Filings Is Irrelevant

Defendant's contention that Plaintiff and/or Tauler Smith is a serial filer is an argument that should be disregarded. "The Ninth Circuit has cautioned courts to generally avoid 'making credibility determinations against serial litigants' in Americans with Disability Act ("ADA") cases unless there is something other than the fact that the litigant files a lot of [lawsuits] that would lead court to question the plaintiff's credibility." *Langer v. Kiser*, 57 F.4th 1085, 1097 (9th Cir. 2023). In *Valenzuela v. Nationwide Mutual Ins*. Co., 2023 WL 5266033 at fn. 2, Judge Frimpong stated: "Although *Langer* is not directly applicable, as this is not an ADA case [but implicates CIPA], its reasoning largely applies here." *Id*. Defendant's contention should be similarly disregarded.

Illegal corporate surveillance like Defendant's use of an illegal trap and trace device have unfortunately become pervasive and often undetectable and happens to everyone regardless of whether someone is a "serial litigant." The only thing different about Plaintiff is that Plaintiff has decided to hold people accountable for their privacy violations instead of doing nothing and tacitly accepting the constant privacy violations.

## III. LEGAL STANDARD

### A. Legal Standard for A Motion to Dismiss Under Rule 12(b)(2)

"On a motion to dismiss for lack of personal jurisdiction, the court 'take[s] as true all uncontroverted allegations in the complaint.'" *First Capitol Consulting, Inc. v. NetTax, LLC*, No. 2:23-cv-07837-MRA-AGR, 2025 U.S. Dist. LEXIS 27438, at *2 n.1 (C.D. Cal. Feb. 14, 2025) (quoting *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F. 4th 852, 858 (9th Cir. 1977)). Where a defendant's Rule 12(b)(2) motion to dismiss "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023) (citation and internal quotation marks omitted). This showing may include reasonable inferences made from a complaint's material factual allegations in the plaintiff's favor. *See, e.g., Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2012) ("We will draw reasonable inferences from the complaint in favor of the plaintiff where personal jurisdiction is at stake, and will assume credibility.").

**B. Legal Standard for A Motion to Dismiss Under Rule 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The Court "must accept" all facts alleged by Plaintiff "as true." *Caltex*

*Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "It is axiomatic that the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (citation omitted).

## IV. ARGUMENT

### A. Plaintiff Has Article III Standing

#### 1. *Plaintiff Alleges Defendant violated Plaintiff's Privacy – a Concrete and Particularized Injury-In-Fact under Cal. Penal Code § 638.51*

By enacting CIPA, the California legislature "codif[ied] a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing." *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 598 (9th Cir. 2020). Since Cal. Penal Code § 637.2 provides a private right of action to any violation of any section in the "chapter," and since section 638.51 is part of the same "chapter", then section 637.2 provides a private right of action to violations of 638.51. See, Cal. Penal Code, Part 1, Title 15, Chapter 1.5 Invasion of Privacy, which includes §§ 630 – 638.55.

Binding Ninth Circuit precedent has explained that various rights codified in CIPA are substantive and not procedural rights that are sufficient for Article III standing. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 924 (N.D. Cal. 2023) ("The Ninth Circuit has found that each of the statutory claims brought [under CIPA] codify substantive rights to

privacy.”). Indeed, “[A] legislature may elevate a legally protected interest into an injury for Article III purposes, though it cannot use its lawmaking power to transform something that is not remotely harmful into something that is.” *Kis v. Cognism Inc.*, 2024 U.S. Dist. LEXIS 151864; 2024 WL 3924553, at *2 (N.D. Cal. Aug. 23, 2024) (cleaned up); *see also Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 969–70 (N.D. Cal. 2023). Other courts have reached identical conclusions. *See*, e.g., *Cantu v. Tractor Supply Co.*, 2024 WL 1601257, at *2 (C.D. Cal. 2024) (finding it sufficient to establish a concrete injury under *TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021) when a website’s disclosure “allowed Google (and any ordinary person) to readily identify Plaintiff's video-watching behavior . . . for the purpose of retargeting Plaintiff in connection with Google advertising campaigns.”)

Additionally, “courts decline to dismiss invasion of privacy claims where plaintiffs allege that the intercepted information is used to compile a user's browsing history across other websites.” *See Revitch v. New Moosejaw, LLC*, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. 2019) (finding that intrusion “which allegedly allowed NaviStone to associate Revitch's browsing habits with his identity, is a highly offensive breach of norms”); *Griffith v. TikTok, Inc.*, 2023 U.S. Dist. LEXIS 195368, 2023 WL 7107262, at *6 (C.D. Cal. Oct. 6, 2023) (holding that because “the Tiktok [software development kit] allows Defendants to assemble extensive profiles containing individuals’ browsing histories across numerous websites . . . the Court cannot conclude at the pleading stage that the alleged privacy intrusion is not serious.”); *Shah v. Fandom, Inc.*, No. 24-CV-01062-RFL, 2024 U.S. Dist.

LEXIS 193032, 2024 WL 4539577, at *5 (N.D. Cal. Oct. 21, 2024) (finding standing where the plaintiffs alleged they were "tracked across multiple visits for marketing and advertising purposes, and that they did not expect or agree to such tracking.")

Here, Plaintiff suffered a constitutionally cognizable injury when Defendant violated his right to privacy – his right to "control information concerning his or her person." *Davis v. Facebook*, *In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589, 598 (9th Cir. 2020). Plaintiff visited the Alex and Ani jewelry website, *www.alexandanie.com*, on September 16, 2024. Compl. ¶ 9. As soon as any user lands on a web page, including Plaintiff, TikTok Software deploys and collects data it instantly sends to TikTok to match the Website visitor with TikTok's database of information on "hundreds of millions of Americans" learning Plaintiff's physical geographical location, device information, Internet browsing history and interests. *Id*. at ¶¶10 – 12; 15. Defendant also uses TikTok's "Auto Matching" technology on the Website, which scans every website on the Internet for information about each anonymous visitor, including Plaintiff, by collecting the "name, date of birth, and address" to identify the individual with certainty. Compl. ¶ 13. Even images of the Website visitor's interests and their Internet browsing behavior are sent simultaneously to Defendant and to TikTok to be stored in its database and to add to the collection of user behavior. *Id*. at ¶¶ 13-15.

### 2. ***<u>The Injury to Plaintiff Is a Traditionally Recognized Harm</u>***

Indeed, violations of this privacy right fall into the category of traditionally recognized harms that constitute an Article III injury-in-fact. *See Patel v. Facebook, Inc.*,

932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right to privacy"). In *In re Facebook*, Facebook "continued to collect [plaintiffs'] data after they had logged off the social media platform, to receive and compile their personally identifiable browsing history." *In re Facebook*, 956 F.3d at 598 – 599. The Ninth Circuit found the plaintiffs had "adequately alleged that Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information" because "Facebook's tracking practices allow it to amass a great degree of personalized information," such as "an individual's likes, dislikes, interests, and habits over a significant amount of time." *In re Facebook*, 956 F.3d at 599. The Ninth Circuit concluded that such an "unauthorized exploration" of someone's private life and information behind their back constitutes a cognizable Article III injury. *Id.* at 599. Defendant's collection practices are no different than Facebook using TikTok Software and its Auto Matching Technology.

Defendant cites cases where Courts have held the information collected was not considered an invasion of privacy Motion at 6-7, e.g., *Lightoller v. Jetblue Airways Corp.,* 2023 WL 3963823 at *4 (S.D. Cal. 2023) (no standing to allege CIPA claim because "mouse movements, clicks, keystrokes," text "entered into an information field," and URLs were not "private" information); *Esparza v. Kohl's, Inc.,* 723 F. Supp. 3d 934, 945–46 (S.D. Cal. 2024) (no expectation of privacy in "personal information and browser history" shared with website absent allegation of intimate or sensitive personally identifiable information.); *In re Vizio, Inc., Consumer Priv. Litig*., 238 F. Supp. 3d 1204,

1233 (C.D. Cal. 2017) ("Courts have been hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications."

Courts have clarified that while individuals may not have a reasonable expectation of privacy over the IP addresses of the websites they visit or URLs that only reveal basic identification information, "they do over URLs that disclose either unique 'search terms' or the 'particular document within a website that a person views.'") *Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023); *see also In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935, 946-47 (N.D. Cal. 2022) (denying motion to dismiss privacy claim and stating the "nature and volume of the collected information is also important: where Google "sold sensitive personal information such as plaintiff's IP address, geo-location data, and web-browsing information, search terms, and sensitive websites that plaintiffs visited relating to race, religion, sexual orientation, and health."). As discussed, the TikTok Software sends images of the content Plaintiff views on Defendant's Website in addition to scanning the Internet to obtain Plaintiff's date of birth, name, address, geolocation and a host of other personally identifying information. Compl. ¶¶ 13-15.

Plaintiff, also does not allege only the collection of basic information such as Plaintiff's device's IP address, and information entered by Plaintiff into the Website. Thus, even if the Court agrees with Defendant that Article III imposes some sort of minimum threshold for how objectively and inherently "sensitive" or "personal" the wrongfully obtained information must be to constitute a cognizable Article III injury, that

is not the only cognizable Article III injury alleged in the Complaint. After the Plaintiff's personal data was extracted from Plaintiff's device by Defendant's trap and trace device and transmitted to TikTok, Plaintiff also suffered a distinct injury because of how TikTok used that information – to fingerprint and de-anonymize Plaintiff. Compl. ¶¶ 10, 17. TikTok Software is misappropriating Plaintiff's information to unmask Plaintiff's identity and create an extensive biographical profile on Plaintiff (and every other Website visitor) for Defendant's marketing purposes. The harm from *that* injury is entirely distinct and unquestionably more severe than the harm caused solely by Defendant's extraction of information. Compl. ¶ 10. A more digestible analogy could be that an individual may not experience an Article III injury if she is coincidentally captured in the background of an unrelated picture being taken while walking down a crowded public street, but she certainly has experienced an Article III injury if that photographer were to instead follow her around 24/7 taking pictures wherever she goes including places that she thought were private, particularly when the photographer is doing it for its own marketing and profit and without someone's consent or often even awareness.

Plaintiff also has a right to choose who to do business with and share his personal information, and many people choose not to use TikTok or restrict what information they share with it because of serious privacy concerns. These are particularly acute concerns with TikTok because it is owned by a foreign company and any data they share with it could potentially be shared with or used by the Chinese government. These concerns were so substantial that Congress was motivated to pass a bill "banning" TikTok which was

later upheld by the Supreme Court. Defendant's implicit suggestion that when that same harm occurs the individual whose data was misappropriated has no recourse in the federal judiciary because Article III determined she wasn't really harmed and needs to just get over it is meritless and must be rejected according to the Ninth and Third Circuits. The Ninth Circuit explained in *In re Facebook Inc.*, 956 F.3d at 598 that: "As the Third Circuit has noted, '[i]n an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion . . . that federal courts are powerless to provide a remedy when an internet company surreptitiously collects private data . . . is untenable. Nothing in *Spokeo* or any other Supreme Court decision suggests otherwise." citing *In re Google Inc. Cookie Placement Consumer Privacy Litig*. 934 F.3d 316, 325 (3rd Cir. 2019).

For these reasons, Plaintiff has Article III standing.

### B. <u>This Court Can Exercise Personal Jurisdiction over Defendant</u>

The personal jurisdiction analysis under Ninth Circuit caselaw would have been much more complicated, confusing, and unintuitive just a couple of months ago, it is now very straight forward and easily dispensed with thanks to its recent en banc decision in *Briskin v. Shopify, Inc.*, 135 F.4th 739 (2025). Here Defendant's Website was obviously intended to be used by Californians, Defendant installed the relevant code on the Website intentionally, it cannot be meaningfully disputed that Defendant permitted and continued to allow this tracking and invasive activity to occur because it received a meaningful benefit from doing so. That invasive information gathering and subsequent tracking, de-

fingerprinting and anonymization all gave rise to and are related to Plaintiff's claim. Finally, the Complaint alleges that Plaintiff was located in California at the time he visited the Website, the TikTok Software gathers precisely that geographic information, and "[t]he TikTok Software begins to collect information the moment a user lands on the Website, including Plaintiff's information." Compl. ¶¶ 11-13. This is all that *Briskin* requires. And cannot meaningfully dispute this because *Briskin* is noticeably absent from Defendant's Motion.

***1. <u>The "Minimum Contacts," Calder/Effects Tests, and Arising or Related to Prong are All Established under Briskin</u>***

The Ninth Circuit applies a 3-part "minimum contacts" test for specific personal jurisdiction over a non-resident Defendant. That requires "(1) the non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *See, e.g., Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023). "For claims sounding in tort, like the privacy and data use violations Briskin asserts here, we most often employ a

purposeful direction analysis." *Briskin*, 135 F.4th at 751 (footnote omitted).[2] "In the context of tort claims, the Supreme Court has held that the purposeful direction requirement is met where the defendants intended to and did indeed cause injury within the forum state, even though the actions that gave rise to the effects took place outside the forum." *Calder v. Jones*, 465 U.S. 783 (1985)

Central to *Briskin*'s analysis finding of express aiming and purposeful direction under the first prong was finding was the Ninth Circuit's conclusion that the harvesting or interception of data from the devices in California constituted an "entry into the state of California by electronic means" which for the personal jurisdiction analysis "certainly is a relevant contact with the forum state." *Briskin*, 135 F.4th at 757-58. It concluded there that Shopify, a nonresident corporation operating an online payment service, was subject to suit in California based on the following conduct: Shopify partnered with a third-party online vendor to embed Shopify code on the vendor's website – code that harvested data from the devices of individuals in California and transmitted it to Shopify for commercial purposes. *Id.* at 755-61.

And on the purposeful direction prong Defendant's entire argument is that the "mere operation of a website available to Californians does not establish purposeful direction."

[2] Plaintiff also contends that the purposeful availment analysis further shows Defendant's conduct satisfies the first prong because a majority of the third-party advertisers are also headquartered in California. *Briskin*, 135 F.4th at 751 n.10 (Ninth Circuit explaining that "our cases do not impose a rigid dividing line between purposeful direction and purposeful availment, and the first prong of the personal jurisdiction test may be satisfied by purposeful availment, by purposeful direction, or by some combination thereof.") (cleaned up).

Mot. at 13. But as explained above, purposeful direction has been easily established here because Defendant did not just passively operate a website available to Californians when it knowingly communicated with devices in California to gather information which it then caused to be sent to TikTok for fingerprinting and deanonymization to further its own marketing efforts in order to generate greater profits. The fact that Defendant's entry to California was through code on its Website is exactly what happened in *Briskin* - the fact that *Briskin* involved cookies on the plaintiff's device makes it indistinguishable from the facts alleged in the Complaint. *Briskin* made clear that "an interactive platform expressly aims its wrongful conduct toward a forum state when its contacts are its own choice and not 'random, isolated, or fortuitous, even if that platform cultivates a nationwide audience for commercial gain." *Briskin*, 135 F.4th at 758.

### 2. ***<u>Plaintiff's § 638.51 Claim "Arises from or Relates to" Defendant's California Activities.</u>***

The second prong of the Ninth Circuit's minimum contacts for specific personal jurisdiction "requires that a plaintiff's claim arise out of or relate to the defendant's contacts with the forum." *Herbal Brands*, 72 F.4th at 1096. Here, the prong is easily met. First, Plaintiff would not have suffered the loss he has alleged here – the invasion of his privacy – had not Defendant forwarded the impulses (and information therein) to TikTok in California. This meets the "but for" test used in such cases as *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) ("The question, therefore, is this: but for [Defendants'] contacts

with . . . California, would [Plaintiff's] claims against [Defendant] have arisen?"); *Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002).

Defendant's arguments to the contrary largely rely on cases that were overruled by *Briskin*. Defendant's entire argument on the "arise out of or relate to" prong is that "the Complaint is clear that the TikTok Software operates regardless of a visitors' location." Mot. at 13. This is the same differential targeting analysis *Briskin* expressly rejected. For the arising or relating to prong, *Briskin* explains that Defendant's same conduct under the first prong also satisfies this prong, explaining:

> Briskin's claims "arise out of" Shopify's contact with Briskin's device, which Shopify allegedly knew was in California. Briskin's claims also "relate to" Shopify's California contacts because Briskin alleges the kind of injury that would "tend to be caused" by Shopify's contacts with California merchants and consumers. In particular, Shopify's installation of software onto unsuspecting Californians' devices and extracting personal data from them is the kind of contact that would tend to cause privacy injuries.

*Briskin*, 135 F.4th at 760 (citation omitted). *Briskin*'s description applies virtually identically to Defendant's conduct alleged in the Complaint.

### ***3. Defendant Knew Harm Was Likely to be Suffered in California.***

With regard to the third element of the *Calder* test, Defendant caused harm that it knew would be suffered in California. That harm consists of (1) the interception of Plaintiff's communications and data sent from California; (2) the dissemination of the communications and data to TikTok in California; and (3) the consequences of these events to Plaintiff living his life in California. Moreover, the Complaint alleges that the marketing

surveillance using TikTok Software is used on all visitors to the Website, including those based in California. And, as explained above, the Complaint sufficiently alleges that Defendant gathered Plaintiff's geographic information the instant Plaintiff visited the Website.

***a. Exercising Personal Jurisdiction over Defendant Comports with Substantial Justice and Fair Play***

Exercising personal jurisdiction would also be reasonable in this case, and Defendant fails to satisfy its burden to show that it would be unreasonable. The factors used by the Ninth Circuit for Defendant to meet its burden of showing unreasonableness are:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Herbal Brands*, 72 F.4th at 1096 (quoting *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018)). Defendant makes no argument regarding any of these factors and has therefore failed to meet its burden. In addition, none of these factors

weigh in Defendant's favor because it is very reasonable for California courts to hear claims that Defendant violated California privacy laws when it electronically extracted personal Plaintiff's personal information from his computer in California and caused it to be transmitted to TikTok for fingerprinting and deanonymization.

In a footnote at the end of its section on personal jurisdiction Defendant makes arguments based on (1) the dormant Commerce Clause, (2) California's rule of statutory interpretation establishing the presumption against the extraterritorial application of state statutes, and (3) some form of statutory interpretation to avoid unintended and constitutionally suspect intergovernmental criminal liability. Mot. at 14 n.1. None of these arguments are coherently or meaningfully raised and all can be rejected out of hand. The dormant Commercse Clause has no application to a law like this protecting the privacy rights of consumers within California and California's trap and trace law was in all ways relevant to this argument copied identically from the corresponding federal statute, precluding any possible dormant Commerce Clause argument. There are also no interpretive concerns based on the risk of extraterritorial application of Section 638.51 because Plaintiff only seeks to have it applied to protect people within California. The fact that Defendant violated that statute while out of the state is irrelevant because Plaintiff only asks for it to be held liable for conduct it substantially caused that occurred within California. Finally, Defendant provides no meaningful explanation for how Plaintiff's argument would criminalize state and federal law enforcement officers seeking to apply their respective trap and trace laws, particularly because Defendant isn't a law enforcement

officer and therefore cannot obtain a court order authorizing it to use a trap and trace device in any case.

**C. <u>The Complaint States a Claim for A Violation Of CIPA, Cal. Penal Code, Section 638.51</u>**

***1. <u>Statutory Framework for Penal Code, § 638.51</u>***

CIPA, Cal. Penal Code, § 638.51 provides, in pertinent part, as follows:

> Except as provided in subdivision (b), **a person may not install or use a pen register or a trap and trace device without first obtaining a court order** pursuant to Section 638.52 or 638.53.
>
> A provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes:
>
> To operate, maintain, and test a wire or electronic communication service.
>
> * * *
>
> (5) If the consent of the user of that service has been obtained.

Penal Code, § 638.51(a), (b)(1) and (5) (Emphasis added.)

***2. <u>TikTok Software Is a Trap and Trace Device</u>***

Cal. Penal Code 638.51 broadly defines a "trap and trace device" as:

> a device or **process** that captures the **incoming electronic** or **other impulses** that identify the originating number **or** other dialing, routing, addressing, **or signaling information reasonably likely to identify the source** of a wire or **electronic communication**, but not the contents of a communication.

Cal. Penal Code § 638.50(c) (bold added).

Section §638.50(a) states: "'Wire communication' and 'electronic communication' have the meanings set forth in subdivision (a) of Section 629.51." *Id.* Penal Code §629.51(a)(2) defines "electronic communication" broadly as "any transfer of signs, **signals**, writings, images, sounds**, data**, or **intelligence of any nature** in whole or in part by a wire, radio, electromagnetic, photoelectric, or photo-optical system." *Id.*, § 629.51(a)(2) (bold added.)

***a. Defendant Installed TikTok Software – a Prohibited Device***

In the Complaint, Plaintiff alleges Defendant has installed and uses sophisticated TikTok Software on the Website. Compl. ¶ 9.

***b. TikTok Software Uses a "Process" to Capture Electronic Impulses***

The TikTok Software uses a "fingerprinting process" by capturing "electronic impulses" generated from Plaintiff's device to identify with certainty the identity of each anonymous visitor to the Website, including Plaintiff. *Id.* at ¶¶ 10, 16-17.

***c. TikTok Software Collects "Data", "Intelligence" and "Signaling Information" to Identify Anonymous Website Visitors***

As discussed above and incorporated by reference, the TikTok Software misappropriates as much data as it can from each anonymous visitor and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans in order to unmask their identity. Compl. ¶¶ 9- 19. Thus, Plaintiff pleads all of the elements for a violation of CIPA, Penal Code § 638.51.

### 3. ***The Statute Is Broad and Is Expressly Not Limited Solely to Originating Numbers and Telephones***

Defendant contends that the statute only applies to telephones and the capture of an "originating number." Motion at 12. There is nothing in the broad language of CIPA, Cal. Penal Code, § 638.51 that limits the statute to telephones and incoming phone calls like Caller ID. Motion, 3: 1 – 3. The statute is written in the disjunctive using "or" and is not so limited. The statute is expressly satisfied by alleging the capture of "signaling information", including the transfer of signals, data, "intelligence of any nature." Penal Code §629.51(a)(2).

Defendant repeatedly references a so-called "Pen Register and Trap and Trace Act" of 2022, which Defendant terms, "CalPRTT Act". There is no such Act, and Defendant cites no authorities in support. Motion, 2:19; fn.1. Thus, Defendant's entire discussion of "the Act" is very confusing and not credible.

The fingerprinting process TikTok Software uses satisfies the statute because the statute's definition of a "trap and trace device" is stated in the disjunctive and includes the capture of "signaling information" and "the transfer of signals, data, intelligence of any nature." Penal Code §§629.51(a)(2); 638.50(c). Several courts have held that the expansive language of Cal. Penal Code § 638.51 and its corresponding definitions are broad and do not limit a trap and trace device to incoming phone calls or phones generally. See e.g., *Moody v. C2 Educ. Sys*, 742 F. Supp. 3d 1072, 1078 (C.D. 2024) (In denying Defendant's motion to dismiss the Plaintiff's §638.51 claim, Judge Klausner stated:

"Defendant fails to explain why the definitions under § 638.50 should be so limited given their references to 'wire or electronic communication.'" Cal. Penal Code §§ 638.50(b)–(c); *Greenley v. Kochava, Inc*684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (same).

### *4. The Statute Is Plain and Unambiguous*

Defendant's resort to legislative history and an allegedly analogous federal wiretapping act, not at issue, is appropriate only where statutory language is ambiguous. Motion at 11 – 13. "[Courts] may not rewrite the statute to conform to an assumed intention that does not appear in its language." *California Water Impact Network v. County of San Luis Obispo,* 25 Cal.App.5th 666, 678 (2018). It is not proper here because the statute is unambiguous.

Statutory interpretation is guided by the "plain meaning rule". "Under the plain meaning rule, where the language of a statute is plain and admits of no more than one meaning the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." *Campbell v. Allied Van Lines, Inc*., 410 F. 3d 61 (9th Cir. 2005).

Defendant's argument that the trap and trace law does not apply to a "commercial website" misses the point. Motion at 11 – 14. Plaintiff alleges that TikTok Software is a prohibited "trap and trace" device. While Defendant points to a Legislative Digest to claim that this statute is only for peace officers, there is no language present in any of the Digests or the statute to suggest that the legislature intended to limit the application of Section

638.51 to peace officers. Motion at 11: 26. Therefore, the Court should reject Defendant's very convoluted argument.

***5. The Rule of Lenity Is Inapplicable.***

Defendant incorrectly argues that the rule of lenity should be applied if there is any ambiguity with interpreting the statute. See Motion at 15. First, the statute is very broad and unambiguous, and therefore, the plain meaning rule applies. "[D]ue process does not compel the court to violate the plain meaning of the words of the statute. If the language contains no ambiguity, the court presumes the Legislature meant what it said, and the plain meaning of the statute governs." *People v. Platz* 136 Cal. App. 4th 1091, 1103 (2006).

Second, the rule of lenity, which is a "tie-breaking principle, of relevance when two reasonable interpretations of the same provision stand in relative equipoise" does not apply because the statute is not ambiguous. See *People v. Manzo,* 53 Cal. 4th 880, 890 (2012). "The rule of lenity applies only if the court can do **no more than guess** what the legislative body intended; **there must be an egregious ambiguity and uncertainty to justify invoking the rule**." *Id*. at 889. (bold added.) This is not the case here.

***6. No Court Has Held that TikTok Software Is Not a Trap and Trace Device***

California courts have conclusively, and persuasively, rejected Defendant's arguments that TikTok Software is not a "trap and device" *to the extent the Court will consider* non-binding but persuasive authorities. See e.g., *Dino Moody v. C2 Educational Systems, Inc*., Case No. 2:24-cv-04249-RGK-SK, 2024 U.S. Dist. LEXIS 132614 (C.D. Cal. July 25, 2024) [Judge Klausner denied Defendant's motion to dismiss the Plaintiff's

§638.51 claim holding that Plaintiff plausibly alleged that TikTok Software is a trap and trace device under California law, "at least at the motion to dismiss stage."] The Court further stated: "Defendant fails to explain why the definitions under § 638.50 should be so limited given their references to 'wire or electronic communication.'" Cal. Penal Code §§ 638.50(b)–(c).

In *Vishal Shah v. Fandom, Inc.*, Case No. 193032 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024), the Court denied Fandom's motion to dismiss stating that the Plaintiff adequately pleaded the elements of a pen register or a trap and trace device and alleged a plausible claim for violation of § 638.51.

In *Greenley v. Kochava, Inc*., 684 F. Supp. 3d 1024 (S.D. Cal. 2024), the Complaint alleged the Defendant used a software development kit to "fingerprint" users and correlated their personal information without their knowledge. From the information collected, "Defendant [was] able to deliver targeted advertising … by in essence 'fingerprinting' each unique device and user . . ." *Id.* at 1047.

In denying the Defendant's motion to dismiss, the Court in *Kochava, Inc*. found *Davis v. Facebook, Inc*. (*In re Facebook Inc. Internet Tracking Litig*.) (9th Cir. 2020) 956 F.3d 589 instructive ("Facebook gained a cradle-to-grave profile without users' consent.") In *Kochava, Inc*., the Court could not ignore the broad language defining a trap and trace device as to the type of data collected "dialing, routing, addressing, or signaling information" from which a "wire or electronic communication is transmitted." *Greenley v. Kochava, Inc*., *supra*, 684 F. Supp. 3d at 1050. It found the definition "vague and

inclusive as to the form of the collection tool – 'a device or process' See Cal. Penal Code § 538.50(b)." *Id*.

Similarly in the Demurrer, Defendant fails to explain why the definitions under § 638.50 should be so limited given their references to "wire or electronic communication." Cal. Penal Code §§ 638.50(b)–(c). Therefore, Plaintiff urges the Court to follow.

**D. <u>Defendant's Additional Arguments Fail</u>**

***1. <u>The CCPA Does Not Preempt CIPA but They Operate in Harmony</u>***

Defendant argues that the California Consumer Privacy Act ("CCPA"), not CIPA, should control. Motion 3: 12-15. The Court should disregard Defendant's preemption argument because it is wrong. In fact, CCPA states that "law relating to consumers' personal information should be construed to harmonize with the provisions of this title." (Cal. Civ. Code § 1798.175.) CCPA explicitly states that "in the event of a conflict between other laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control." *Id*. Thus, CCPA and CIPA are complementary.

Even if a conflict existed, Plaintiff may bring his claim under CIPA. *Mirmalek v. Los Angeles Times Communs. LLC*, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024). The CCPA itself expressly requires that its own less restrictive (often called toothless) provisions give way to CIPA in the face of a conflict. Cal. Civ. Code § 1798.175 ("Wherever possible, law relating to consumers' personal information should be construed to harmonize with the provisions of this title, **but in the event of a conflict between other**

**laws and the provisions of this title, the provisions of the law that afford the greatest protection for the right of privacy for consumers shall control**.") (emphasis added)*;* *see also, e.g., Brooks v. Thomson Reuters Corp*., (N.D. Cal. Aug. 16, 2021) No. 21-cv-01418-EMC, 2021 U.S. Dist. LEXIS 154093, at *18-19 ["several provisions of the CCPA clearly state that the law is not meant to curtail other privacy statutes".] Therefore, Defendant's discussion of the CCPA is irrelevant here.

***2. Defendant Is Not Exempt***

Section 638.51 includes an exception for the use of pen registers and trap and trace devices "[t]o operate, maintain, and test a wire or electronic communication service." Cal. Penal Code § 638.51(b)(1). Defendant has not and cannot argue that the collection of this data through the use of TikTok Software is necessary to operate or maintain the Website. Thus, Defendant's argument fails.

***3. Plaintiff is the User and Plaintiff Did Not Consent***

Defendant makes a distorted interpretation of the statute claiming Defendant is the "user" under Section 638.51(b)(5), and therefore, is immunized from liability because it consented to having the trap and trace device embedded on the Website. This is an absurd attempt to escape liability. If merely owning a website constitutes consent to the use of a trap and trace device on all visitors to the website, then Section 638.51(a) would never be violated. Plaintiff is the only person whose consent would conceivably be relevant, and Plaintiff alleges he did not consent. Defendant's argument is truly farcical - Plaintiff's

consent is irrelevant because Defendant consented to its own violations of the privacy of others. The Court should conclude that no exception applies to Defendant.

## V. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Court deny the Motion to Dismiss, or in the alternative, permit Plaintiff leave to amend to add more facts should the Court find the Complaint deficient.

DATED: July 26, 2025

**TAULER SMITH LLP**

By: */s/ Narain Kumar*

Narain Kumar, Esq.
Attorneys for Plaintiff
Milan Hassid

**LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff Milan Hassid, certifies that this brief contains 6684 words, which complies with the word limit of L.R. 11-6.1.

DATED: July 26, 2025 **TAULER SMITH LLP**

By: */s/ Narain Kumar*
Narain Kumar, Esq.
Attorneys for Plaintiff
Milan Hassid