# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

MILAN HASSID, Individually and on
Behalf of all Others Similarly Situated,

               Plaintiff,

      v.

ALEX AND ANI, LLC,

               Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 25-0679 FMO (JCx)

**ORDER RE: MOTION TO DISMISS**

Having reviewed and considered all the briefing filed with respect to Alex and Ani, LLC's ("defendant") Motion to Dismiss (Dkt. 24, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78(b); Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

## BACKGROUND

Milan Hassid ("plaintiff") is a California citizen residing in this District. (Dkt. 1, Complaint at ¶ 4). Defendant is a Rhode Island corporation that owns and operates an online platform, www.alexandani.com ("Website"), through which it sells jewelry. (Id. at ¶ 5). TikTok is a California company with which defendant contracted.[1]   (See id. at ¶ 9); (Dkt. 15-1, Request for Judicial

---

[1] "[A] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018) (internal quotation marks omitted); see also Motul S.A. v. USA Wholesale

Notice at ¶ 1).  According to plaintiff, defendant installed software created by TikTok ("TikTok Software") to identify visitors to its Website.  (Dkt. 1, Complaint at ¶ 9).   Plaintiff visited defendant's Website on September 16, 2024, after the TikTok Software was installed on defendant's Website.  (Id.).

Plaintiff alleges that the TikTok Software is a "trap and trace device" under California's Trap and Trace Law, Cal. Penal Code § 638.51, a provision of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 630 et seq.[2]  (Dkt. 1, Complaint at ¶¶ 16-20).  Under CIPA, a "trap and trace device" is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).  California's Trap and Trace Law also provides that "a person may not install or use . . . a trap and trace device without first obtaining a court order[.]"  Cal. Penal Code § 638.51(a).

The TikTok Software acts via a process known as "fingerprinting" whereby it collects data about Website visitors such as their "device and browser information, geographic information, referral tracking, and URL tracking by running code or 'scripts' on the Website[.]"  (Dkt. 1, Complaint at ¶¶ 10-11).  This "fingerprinting" process collects information as soon as a user visits the Website, (id. at ¶ 12), and "every time a user clicks on a page" on the Website.  (Id. at ¶ 15). The TikTok Software then matches the collected data "with existing data TikTok has acquired and accumulated about hundreds of millions of Americans." (Id. at ¶ 10).  Additionally, defendant uses TikTok's "Auto Advanced Matching" technology to scan every website for information such as "name, date of birth, and address, [and] the information is sent simultaneously to TikTok, so that TikTok can isolate with certainty the individual to be targeted."  (Id. at ¶ 13).

Lubricant, Inc., 686 F.Supp.3d 900, 910 (N.D. Cal. 2023) ("Filings with the California Secretary of State are also proper subjects of judicial notice because they are matters of public record whose accuracy is not subject to reasonable dispute.").

[2] Plaintiff further alleges that "CIPA imposes civil liability including statutory damages for violations of the California Trap and Trace Law." (Dkt. 1, Complaint at ¶¶ 21, 34); see also Cal. Penal Code § 637.2.

According to plaintiff, Website visitors "are never informed that the [W]ebsite is collaborating with the Chinese government to obtain their phone number and other identifying information[,]" (Dkt. 1, Complaint at ¶ 17), and that defendant did not obtain consent or a court order before using the TikTok Software to identify users of its Website. (See id. at ¶¶ 19-20).

Plaintiff brings a one-count claim alleging that defendant's use of the TikTok Software violates California's Trap and Trace Law. (Dkt. 1, Complaint at ¶¶ 29-34). Plaintiff seeks to certify a class of "[a]ll persons within California whose identifying information was sent to TikTok as a result of visiting the Website within the limitations period." (Id. at ¶ 23). Defendant moves to dismiss the Complaint for lack of Article III standing under Fed. R. Civ. P. 12(b)(1), lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and failure to state a claim under Fed. R. Civ. P. 12(b)(6). (See Dkt. 24, Motion at 5-21).

**DISCUSSION**

I.    STANDING.

Article III requires a plaintiff to show that he or she: "(1) has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc., 528 U.S. 167, 180-81, 120 S.Ct. 693, 704 (2000); Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 125, 134 S.Ct. 1377, 1386 (2014) ("The plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision.") (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136 (1992)). "[A] plaintiff must demonstrate standing separately for each form of relief sought." Friends of the Earth, 528 U.S. at 185, 120 S.Ct. at 706.

Defendant contends that plaintiff has not alleged an injury in fact sufficient to confer standing because the Complaint contains only "general allegations about what might happen if someone were to visit the Website[,]" (Dkt. 24, Motion at 6), and merely "describes hypothetical 'users' and 'visitors,' and relies on general screenshots of unknown origin." (Id. at 8). Defendant

further contends that plaintiff has not alleged that defendant's "use of the TikTok Software could cause the type of harm required for Article III jurisdiction." (Id. at 9).  Namely, plaintiff does not allege that defendant "captured any sensitive, intimate, or private facts as to Plaintiff or visitors generally." (Id. at 10).  Defendant's contentions are unpersuasive.[3]

Plaintiff alleges that he visited defendant's Website after the TikTok Software was installed and operating on its Website.  (See Dkt. 1, Complaint at ¶ 9).  Plaintiff also alleges that defendant's tracking practices enable it to regularly collect personalized information when someone, like plaintiff, visits defendant's Website.  (See id. at ¶¶ 10, 32); see, e.g., Conohan v. Rad Power Bikes Inc., et al., 2025 WL 1111246, *5-6 (C.D. Cal. 2025) (finding allegations sufficient to establish standing in a nearly identical case involving similar tracking software).

Additionally, defendant's contention that plaintiff has not sufficiently alleged an invasion of the historically recognized right to privacy, (see Dkt. 24, Motion at 9-11), is without merit.  "Violations of the right to privacy have long been actionable at common law." Eichenberger v. ESPN, Inc., 876 F.3d 979, 983 (9th Cir. 2017); see Patel v. Facebook, 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the common law roots to the right to privacy); Matera v. Google Inc., 2016 WL 5339806, *10 (N.D. Cal. 2016) ("Invasion of privacy has been recognized as a common law tort for over a century.").  A right to privacy "encompass[es] the individual's control of information concerning his or her person." In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589, 598 (9th Cir. 2020) (alteration in original).  Although disclosure of private information is intangible, it is a concrete harm.  See TransUnion LLC v. Ramirez, 594 U.S. 413, 425, 141 S.Ct. 2190, 2204 (2021) ("Various intangible harms can also be concrete. . . .  Those include, for example, . . .

---

[3] The cases defendant cites in support of its contentions are distinguishable.  In Gabrielli v. Insider, Inc., 2025 WL 522515, *4 (S.D.N.Y. 2025), for instance, the defendant used tracking software to collect only the plaintiff's IP address, which did not de-anonymize him, is not considered private data, and was therefore not an adequately alleged injury under CIPA. Additionally, in Lightoller v. Jetblue Airways Corp., 2023 WL 3963823, *4 (S.D. Cal. 2023), the plaintiff did not adequately allege an injury in fact because she did not allege that she disclosed any personal information to the defendant.  Instead, the plaintiff alleged only that the defendant "monitored, recorded, and collected" her communications such as "mouse movements, clicks, keystrokes . . . [and] URLs of webpages visited" on its website.  See id. (internal quotation marks omitted).

disclosure of private information[.]").  An intangible injury is sufficiently "concrete" when (1) there is "a statutory cause of action for the injury, and (2) the injury has a close historical or common-law analog."  Wakefield v. ViSalus, Inc., 51 F.4th 1109, 1118 (9th Cir. 2022); see TransUnion LLC, 594 U.S. at 425-26, 141 S.Ct. at 2204-05.  Both factors are clearly satisfied here.  First, CIPA was passed "to protect the right of privacy of the people of this state[,]" Cal. Pen. Code § 630, and codified a substantive right to privacy, "the violation of which gives rise to a concrete injury sufficient to confer standing."  In re Facebook, 956 F.3d at 598.  Second, plaintiff has asserted an injury with a close historical and common-law analog.  See Wakefield, 51 F.4th at 1118 (recognizing the right to privacy as evidence of a common-law analog to privacy violations); Garcia v. Build.com, Inc., 2023 WL 4535531, *4 (S.D. Cal. 2023) (same); In re Facebook, 956 F.3d at 599 (concluding plaintiffs had standing to bring CIPA claims based on their allegations that "Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information").  In short, plaintiff has Article III standing to sue.

II.     PERSONAL JURISDICTION.

Next, defendant contends that plaintiff's Complaint fails to demonstrate that the court has specific personal jurisdiction over defendant.  (See Dkt. 24, Motion at 11-14).  "In contrast to general jurisdiction, specific jurisdiction covers defendants that are less intimately connected with a state, but that have sufficient minimum contacts with the state that are relevant to the lawsuit."  LNS Enters. LLC v. Cont'l Motors, Inc., 22 F.4th 852, 859 (9th Cir. 2022).  For specific jurisdiction, a suit must "arise out of or relate to the defendant's contacts with the forum[,]" i.e., "there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty., 582 U.S. 255, 262, 137 S.Ct. 1773, 1780 (2017) (alterations, emphasis, and internal quotation marks omitted).  Courts apply a three-part test to assess whether a defendant has sufficient contacts for specific jurisdiction:

> (1) [t]he non-resident defendant must purposefully direct his activities or

consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Morrill v. Scott Fin. Corp., 873 F.3d 1136, 1142 (9th Cir. 2017).

With respect to the first part of the test, defendant argues that "regularly engaging with individuals in California through its website[,]" (Dkt. 24, Motion at 13) (internal quotation marks omitted), is not enough to show that defendant "'purposefully directed its activities' at the Central District[.]" (Id.). "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (internal citation omitted). Because plaintiff's claim under CIPA sounds in tort, the court will apply the purposeful direction analysis. See Briskin v. Shopify, Inc., 135 F.4th 739, 751 (9th Cir. 2025) (en banc) ("For claims sounding in tort, like the privacy and data use violations Briskin asserts here, we most often employ a purposeful direction analysis.").

In the Ninth Circuit, courts "evaluate purposeful direction under the three-part 'effects' test traceable to the Supreme Court's decision in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482 (1984)." Schwarzenegger, 374 F.3d at 803. Under the Calder effects test, the defendant must have allegedly "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Id. (internal quotation marks omitted). "The proper question" under the Calder effects test "is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Walden v. Fiore, 571 U.S. 277, 290, 134 S.Ct. 1115, 1125 (2014). In other words, in conducting the minimum contacts inquiry in a tort action, the court's focus is on "the relationship among the defendant, the forum, and the litigation." Id. at 291, 134

S.Ct. at 1126 (internal quotation marks omitted). "And it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." Id.

Here, factors one and three of the Calder effects test are met: plaintiff alleges that defendant's conduct was intentional and caused harm in California. (See Dkt. 1, Complaint at ¶ 2). Thus, the issue is whether factor two is met, i.e., whether defendant "expressly aimed" its conduct at California.

In Briskin v. Shopify, Inc., 135 F.4th 739 (9th Cir. 2025) the Ninth Circuit, sitting en banc, recently analyzed the doctrine of "express aiming" in the "ever-evolving world" of e-commerce platforms. Id. at 746. In Briskin, the Court held that the Canadian-based e-commerce platform Shopify was subject to personal jurisdiction in California because it "expressly aimed" its conduct at the State. Id. at 758. The Court explained that "an interactive platform expressly aims its wrongful conduct toward a forum state when its contacts are its own choice and not random, isolated, or fortuitous, even if that platform cultivates a nationwide audience for commercial gain." Id. at 758 (internal citations omitted). The Briskin Court found that Shopify had targeted California consumers to "extract, collect, maintain, distribute, and exploit for its own profit" California consumers' payment information and other personal data without their knowledge or consent. Id. at 755–56. This conduct, the Court concluded, "connects Shopify to California in a meaningful way[,]" id. at 759 (alteration marks omitted), and is not "mere happenstance[.]"[4] Id. at 756.

Plaintiff alleges that defendant uses the TikTok Software to collect "device and browser information, geographic information, referral tracking, and URL tracking by running code or 'scripts' on the Website[.]" (Dkt. 1, Complaint at ¶ 11). Defendant also uses TikTok's "Auto Advanced Matching" technology to scan every website for information such as "name, date of birth, and address[.]" (Id. at ¶ 13). According to plaintiff, that information – including plaintiff's – is then sent to TikTok "so that TikTok can isolate with certainty the individual to be targeted." (Id.).

---

[4] In so holding, the court overruled AMA Multimedia, LLC v. Wanat, 970 F.3d 1201 (9th Cir. 2020) and related cases, which had required a showing of a "forum-specific focus" or "differential targeting" to establish personal jurisdiction. Briskin, 135 F.4th at 757 & n. 15.

Under the circumstances, the court is persuaded that plaintiff has sufficiently alleged that defendant's Website "appeals to, and profits from, an audience in California," and is "used to collect information intentionally from users, knowing that privacy harms will be suffered in California[.]" See Mikulsky v. Bloomingdale's, LLC, 2025 WL 1718225, *1 (9th Cir. 2025) (internal quotation marks and citations omitted); Thomas v. Papa John's Int'l, Inc., 2025 WL 1704437, *1 (9th Cir. 2025) (finding interactive website with national viewership and scope expressly aimed its conduct at California by intentionally collecting information that invaded privacy of users). Therefore, as in Briskin, defendant's contacts with California "are its own choice and not random, isolated, or fortuitous[.]"  135 F.4th at 758.  Accordingly, defendant expressly aimed its contacts at California, and plaintiff has satisfied all three factors of the Calder effects test.

With respect to the second part of the specific jurisdiction test, defendant contends that plaintiff's Complaint fails to allege that his claims "arise out of California-specific contacts." (Dkt. 24, Motion at 13).  Additionally, defendant contends that it is clear from the Complaint "that the TikTok Software operates regardless of a visitors' location." (Id.).  Again, defendant's contentions are unpersuasive.

Plaintiff's claim arises out of, or relates to, defendant's contacts with California through its Website.  Plaintiff would not have suffered an invasion of privacy had defendant not contracted with TikTok to install TikTok Software on its Website to collect and send plaintiff's private information to TikTok in California.  (See Dkt. 1, Complaint at ¶¶ 11-12, 32-33); see, e.g., Briskin, 135 F.4th at 760 ("Shopify's installation of software onto unsuspecting Californians' devices and extracting personal data from them is the kind of contact that would tend to cause privacy injuries. Briskin's claims therefore satisfy the second requirement for specific jurisdiction."); Conohan, 2025 WL 1111246, at *4 ("Conohan's privacy rights would not have been implicated had Rad not contracted with TikTok – and not forwarded Conohan's private information to TikTok – in California."); see also Yamashita v. LG Chem, Ltd., 62 F.4th 496, 505 (9th Cir. 2023) (noting that "a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts").

Finally, the third part of the specific jurisdiction test requires the burden to shift to defendant

to present a "compelling case that the exercise of jurisdiction would not be reasonable." See Schwarzenegger, 374 F.3d at 802 (internal quotation marks omitted). Defendant contends that plaintiff's CIPA claim should be dismissed because "personal jurisdiction [is not] consistent with Due Process," (Dkt. 24, Motion at 13) and that "[i]f the defendant merely operates a website . . . that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." (Id. at 13-14) (internal quotation marks omitted). But as discussed above, the TikTok Software used by defendant targets California residents and collects their personal information, which readily distinguishes this case from those in which a defendant merely operates a website with "passive nationwide accessibility[.]" Briskin, 135 F.4th at 752; see, e.g., Mikulsky, 2025 WL 1718225, at *1 ("Mikulsky's alleged privacy injuries arise out of or relate to the website's contacts with California, and Defendants have not shown that the exercise of jurisdiction over it would be unreasonable."); Thomas, 2025 WL 1704437, at *1 ("And because Thomas's alleged privacy injuries arise out of or relate to Papa John's website's contacts with California, and Papa John's has not shown that the exercise of jurisdiction over it would be unreasonable, Papa John's is subject to personal jurisdiction in California."). In short, defendant has not shown that exercising jurisdiction over it would be unreasonable.

III.     FAILURE TO STATE A CLAIM.

Defendant argues that plaintiff fails to state a claim because California's Trap and Trace Law does not apply to defendant's Website; and even if it did, the Complaint fails to plead the essential elements of a trap and trace claim; no injury has been alleged; and that statutory exemptions apply. (See Dkt. 24, Motion at 14-21).

Under the circumstances, the court is persuaded that the Complaint sufficiently alleges that defendant uses a trap and trace "device" or "process" designed to "capture" personal information from its Website visitors. (See Dkt. 1, Complaint at ¶¶ 31-32). Thus, defendant's use of the TikTok Software "meets the statutory definition of a . . . trap and trace device because it is software that identifies consumers, gathers data, and correlates that data through unique fingerprinting." Wright v. TrueCare Prop. Holdings, LLC, 2025 WL 3248749, *4 (S.D. Cal. 2025) (internal quotation marks omitted); see, e.g., Greenley v. Kochava, Inc., 684 F.Supp.3d 1024,

9

1050 (S.D. Cal 2025) (noting that a trap and trace "process" can include "software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting'"); Moody v. C2 Educational Systems Inc., 742 F.Supp.3d 1072, 1077 (C.D. Cal. 2024) ("Plaintiff's allegations that the TikTok Software is embedded in the Website and collects information from visitors plausibly fall within the scope of [Cal. Penal Codes] §§ 638.50 and 638.51"). Moreover, "[d]ata capable of being associated with a user's identity falls within the statutory definition of addressing information." Wright, 2025 WL 3248749, at *4.

The court is also not persuaded by defendant's contentions that California's Trap and Trace Law "is not applicable to commercial websites like [defendant's] that do not permit person-to-person communications" because the language in Cal. Penal Code § 638.50 requires communications. (Dkt. 24, Motion at 15). Courts have determined that the trap and trace provision should be construed broadly and that "courts should focus less on the form of the data collector and more on the result." Greenley, 684 F.Supp.3d at 1050 (concluding that tracking software could suffice as a pen register under California's Trap and Trace Law). In Conohan, for instance, TikTok software embedded in the defendant's website to collect visitors' information "plausibly [fell] within the scope" of California's Trap and Trace Law. 2025 WL 1111246, at *6. Similarly, in Moody, the court found that plaintiffs allegations that TikTok software was embedded in the defendant's website and collects information were sufficient to allege that the software "may qualify as a pen register or trap and trace device under California law[.]" 742 F.Supp.3d at 1076. In short, plaintiff has adequately alleged that the TikTok Software on defendant's Website qualifies as a trap and trace device under Cal. Penal Code § 638.50(c).

Finally, the court is unpersuaded by defendant's argument that even if the TikTok Software is a trap and trace device, there was no violation of Cal. Penal Code § 638.51 because defendant gave consent to TikTok. (See Dkt. 24, Motion at 19). California's Trap and Trace Law permits the use of a trap and trace device "[i]f the consent of the user of that service has been obtained." Cal. Penal Code § 638.51(b)(5). Defendant contends it is the "user," i.e., the "party who receives the communication, not the sender[,]" (Dkt. 24, Motion at 20), and thus only defendant's "consent matters." (Id. at 21). This argument is unavailing. In Moody, the court determined that the

10

plaintiff, who did not consent, was the relevant "user" of the defendant's website that installed TikTok software, thereby "plausibly demonstrat[ing] that the consent exception does not apply." 742 F.Supp.3d at 1077.  Here, plaintiff similarly alleges that he is the user of the Website and did not give express or implied consent.  (See Dkt. 1, Complaint at ¶¶ 9, 20, 22, 33).  Thus, plaintiff's allegations are sufficient to plausibly demonstrate that the consent exception does not apply.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1.  Defendant's Motion to Dismiss **(Document No. 24)** is **denied**.

2.  Defendant shall file its Answer to the Complaint no later than **February 4, 2026**.

Dated this 20th day of January, 2026.

/s/
Fernando M. Olguin
United States District Judge