Robert Tauler (SBN 241964)
rtauler@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 1100
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Milan Hassid*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MILAN HASSID, individually and on behalf of all others similarly situated,

Plaintiff,

vs.

ALEX AND ANI LLC, a Rhode Island limited liability company; THE BATHING CLUB LLC, a New York limited liability company; LMGL LLC, a Delaware limited liability company; MLLG LLC, a Delaware limited liability company; LC A&A HOLDINGS INC., a Delaware corporation; and DOES 5 through 25, inclusive,

Defendants.

Case No. 2:25-cv-00679-FMO-AYP

**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**

1. **VIOLATIONS OF THE CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51)**

## JURISDICTION

1. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen of a different State or subject of a foreign state.

2. This Court has personal jurisdiction over each Defendant because, on information and belief, each Defendant purposefully directed activities toward the Central District of California through the ownership, operation, administration, marketing, and/or control of www.alexandani.com (the "Website"), which conducts substantial business with California residents. Defendants' conduct was directed at and harmed California residents, including Plaintiff, and Plaintiff's claims arise out of those contacts.

3. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because each Defendant (1) is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District; (2) does substantial business within this District; (3) is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District; and the injury to Plaintiff occurred within this District.

## PARTIES

4. Plaintiff Milan Hassid ("Plaintiff") is, and at all times relevant to this complaint has been, a citizen of California residing and located within the Central District of California.

5. Defendant Alex and Ani, LLC ("Alex and Ani") is Rhode Island limited liability company that, at various times from January 1, 2022 to the present (the "Relevant Period"), owned, controlled, and/or operated the Website, an online platform that sells jewelry.

6. Defendant The Bathing Club LLC ("Bathing Club") is, upon information and belief, a New York limited liability company that, at various times during the Relevant Period, owned, controlled, foreclosed upon, and/or acquired assets relating to the Website and the Alex and Ani business.

7. Defendant LMGL LLC ("LMGL") is, upon information and belief, a Delaware limited liability company that, at various times during the Relevant Period, received, controlled, operated, licensed, and/or administered assets relating to the Website, including e-commerce and digital assets.

8. Defendant MLLG LLC ("MLLG") is, upon information and belief, a Delaware limited liability company that holds intellectual property, including trademark and related rights associated with the Alex and Ani brand and Website, and at various times exercised control over brand, digital, and Website-related assets.

9. Defendant LC A&A Holdings Inc. ("LC A&A") is, upon information and belief, a Delaware corporation that previously held secured interests in the assets of Alex and Ani and, during the Relevant Period, exercised control over Website-related assets, either directly or through assignment, transfer, or coordinated action with other Defendants.

10. Plaintiff is informed and believes that during the Relevant Period, ownership and operational control of the Website shifted among one or more of the Defendants. The precise timing and structure of those shifts are within Defendants' exclusive knowledge. Plaintiff therefore pleads in the alternative that each Defendant owned, operated, controlled, administered, directed, or had the practical ability to control the Website and its tracking technologies during the Relevant Period.

11. Plaintiff is further informed and believes that Defendants are commonly owned or controlled, directly or indirectly, by Mark Geragos and/or Lyndon Lea (or their affiliated entities), and that the corporate entities named herein

acted in concert, as agents of one another, and/or as part of a common enterprise with respect to the ownership, control, marketing, and operation of the Website.

12. The above-named Defendants, along with their affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 5 through 25, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the First Amended Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

13. At all relevant times, each Defendant acted as the agent, alter ego, joint venturer, and/or co-conspirator of the other Defendants, and each Defendant ratified, authorized, or knowingly benefited from the conduct alleged herein.

## FACTUAL ALLEGATIONS

14. The Website is an online platform that sells jewelry to consumers nationwide, including California residents.

15. During the Relevant Period, one or more Defendants owned, operated, maintained, administered, marketed, or controlled the Website and its associated digital infrastructure.

16. Defendants installed on the Website software created by TikTok in order to identify website visitors (the "TikTok Software"). Plaintiff visited the Website on September 16, 2024, after the TikTok Software was installed and within the limitations period established by statute.

17. The TikTok Software acts via a process known as "fingerprinting." Put simply, the TikTok Software collects as much data as it can about an otherwise anonymous visitor to the Website, such as Plaintiff Milan Hassid, and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans.

18. The TikTok Software gathers device and browser information, geographic information, referral tracking, and URL tracking by running code or "scripts" on the Website to send user details to TikTok.

19. The TikTok Software begins to collect information the moment a user lands on the Website, including Plaintiff's information.

20. Additionally, since Defendants decided to use TikTok's "Auto Advanced Matching" technology, TikTok scans every website for information, such as name, date of birth, and address, the information is sent simultaneously to TikTok, so that TikTok can isolate with certainty the individual to be targeted.

21. The TikTok Software runs on virtually every page of the Website, sending communications and electronic impulses to TikTok whenever a user lands on or interacts with the Website.

22. The Website instantly sends communications to TikTok whenever a user lands on the Website and every time a user clicks on a page. In the example below, the right side of the image shows the various TikTok scripts being run by Defendants, and the electronic impulses being sent to TikTok to add to its collection of user behavior.



23. CIPA defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." Cal. Penal Code § 638.50(c).

24. The TikTok Software is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users, who are never informed that the Website is collecting data that the Chinese government can access through TikTok.

25. The TikTok Software is "reasonably likely" to identify the source of incoming electronic impulses. In fact, it is designed solely to meet this objective.

26. Defendants did not obtain a court order before installing the TikTok Software on the Website.

27. Defendants did not obtain Class Members' express or implied consent to be subjected to data sharing with TikTok for the purposes of fingerprinting and de-anonymization.

28. At various times during the Relevant Period, Defendants either directly deployed the TikTok Software or had the authority and ability to control, enable, disable, or configure such software on the Website.

29. To the extent one Defendant contends it did not "operate" the Website at a particular time, Plaintiff alleges in the alternative that such Defendant directed, controlled, authorized, ratified, or benefited from the use of the TikTok Software and the data transmissions at issue.

30. The California Invasion of Privacy Act ("CIPA"), California Penal Code § 630 *et. seq.*, imposes civil liability and provides for statutory damages for the installation of trap and trace software without a court order. *Id.* §§ 637.2, 638.51; *see Moody v. C2 Educ. Sys. Inc.*, No. 2:24-CV-04249-RGK-SK, 2024 WL 3561367

(C.D. Cal. July 25, 2024) (holding that TikTok Software was properly alleged to be a trap and trace device because it communicates over the internet and the statutory definition of a trap and trace device expressly covers "wire communication" and "electronic communication" and is not limited to telephone lines).

## CLASS ALLEGATIONS

31. Plaintiff brings this action individually and on behalf of all others similarly situation (the "Class") defined as follows:

> **All persons within California whose identifying information was sent to TikTok as a result of visiting the Website within the limitations period.**

32. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact identities of Class Members may be ascertained by the records maintained by Defendants.

33. COMMONALITY: Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

a. Whether Defendants installed the TikTok Software on the Website;
b. Whether the TikTok Software is a trap and trace process as defined by California law;
c. Whether Plaintiff and Class Members are entitled to statutory damages;
d. Whether Class Members are entitled to injunctive relief; and
e. Whether Class Members are entitled to disgorgement of unlawfully obtained data.

34. TYPICALITY: As a person who visited Defendants' Website and whose personal information was fingerprinted and de-anonymized by TikTok, Plaintiff is asserting claims that are typical of the Class.

35. ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper are excluded.

36. SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of each Class Member is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed and address identical issues.

## FIRST CAUSE OF ACTION

### Violations of California Trap and Trace Law

### Cal. Penal Code § 638.51 (the "California Trap and Trace Law")

37. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

38. The California Trap and Trace Law provides that "a person may not install or use…a trap and trace device without first obtaining a court order…." Cal. Penal Code § 638.51(a).

39. A "trap and trace device" is defined as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." *Id.* § 638.50(c).

40. Defendants used a trap and trace process by deploying the TikTok Software on the Website because the TikTok Software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the TikTok Software is designed precisely to identify the source of the incoming electronic and wire communications to the Website in violation of the California Trap and Trace Law.

41. Each Defendant either directly installed, caused to be installed, or used the TikTok Software, or directed, controlled, authorized, ratified, or knowingly benefited from its use.

42. Defendants did not obtain a court order before installing the TikTok Software on the Website. Defendants also did not obtain consent from Plaintiff or any of the Class Members before using trap and trace technology to identify visitors of the Website.

43. CIPA imposes civil liability including statutory damages for violations of the California Trap and Trace Law. Cal. Penal Code § 637.2; *see also C2 Educ. Sys. Inc.*, 2024 WL 3561367.

## PRAYER

WHEREFORE, Plaintiff prays for the following relief against Defendants:

1. An order certifying the Class, naming Plaintiff as the representative of the Class and Plaintiff's attorneys as Class Counsel;

2. An order declaring Defendants' conduct violates CIPA;

3. An order of judgment in favor of Plaintiff and the Class against Defendants on the cause of action asserted herein;

4. An order enjoining Defendants' conduct as alleged herein and any other injunctive relief that the Court finds proper;

5. Statutory damages pursuant to CIPA;

6. Prejudgment interest;

7. Reasonable attorneys' fees and costs; and

8. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

DATED: April 3, 2026

TAULER SMITH LLP

By: */s/ Robert Tauler*
Robert Tauler

*Attorneys for Plaintiff Milan Hassid*

**DEMAND FOR JURY TRIAL**

Plaintiff Milan Hassid hereby demands a trial by jury.

DATED: April 3, 2026

TAULER SMITH LLP

By: */s/ Robert Tauler*
Robert Tauler

*Attorneys for Plaintiff*
*Milan Hassid*