Robert Tauler (SBN 241964)
rtauler@taulersmith.com
J. Evan Shapiro (SBN 218481)
eshapiro@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 1100
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff Milan Hassid*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MILAN HASSID, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br><br>ALEX AND ANI, LLC, a Rhode Island limited liability company; THE BATHING CLUB LLC, a New York limited liability company; LMGL LLC, a Delaware limited liability company; MLLG LLC, a Delaware limited liability company; LC A&A HOLDINGS INC., a Delaware corporation; DOES 1 through 25, inclusive,<br><br>Defendants. | Case No.: 2:25-cv-00679-FMO-AYP<br><br>**PLAINTIFF MILAN HASSID'S OPPOSITION TO DEFENDANT ALEX AND ANI, LLC'S MOTION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT (BY ALL DEFENDANTS EXCEPT ALEX AND ANI, LLC); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: September 10, 2026<br>Time: 10:00 a.m.<br>Place: Courtroom 6D (6th Floor)<br>350 W. 1st Street<br>Los Angeles, CA 90012 |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ 3

MEMORANDUM OF POINTS AND AUTHORITIES ........ 7

I. INTRODUCTION ........ 7

II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ........ 10

III. THE NEW DEFENDANTS HAVE REBUFFED EFFORTS TO OBTAIN DISCOVERY ........ 12

IV. LEGAL STANDARDS ........ 15

A. Legal Standard for a Motion to Dismiss Under Rule 12(b)(1) ........ 15

B. Legal Standard for a Motion to Dismiss Under Rule 12(b)(6) ........ 15

V. ARGUMENT ........ 16

A. Plaintiff Has Established Article III Standing for His Claims Against the New Defendants ........ 16

B. The Court Has Specific Personal Jurisdiction Over the New Defendants ........ 19

1. The FAC Establishes Purposeful Direction of the New Defendants ........ 19

2. The FAC Establishes That Plaintiff's Claims Arise Out of the New Defendants' California-Related Conduct ........ 21

3. Exercising Personal Jurisdiction over the New Defendant Would Comport with Substantial Justice and Fair Play ........ 22

C. The Complaint States a Claim for a Violation of CIPA, Cal. Penal Code, Section 638.51 ........ 22

1. Plaintiff Has Statutory Standing Under CIPA ........ 22

2. Section 638.51 Is Broad and Applies to Internet Communications and Websites ........ 23

3. The New Defendants' Reliance on the Legislative History of §§ 638.50-51, and the Language of Cal. Penal Code § 638.52 Is Misplaced ........ 23

D. The FAC Complies With Fed. R. Civ. P. 8(a)(2) ........ 24

VI. IN THE EVENT THE COURT INTENDS TO DISMISS THE FAC, IT SHOULD GRANT PLAINTIFF LEAVE TO AMEND ........ 24

VII. CONCLUSION ........ 25

CERTIFICATE OF COMPLIANCE ........ 26

## TABLE OF AUTHORITIES

Cases

*Allen v. Wright*, 468 U.S. 737 (1984) .......... 15

*AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201 (9th Cir. 2020) .......... 17

*Anderson v. NCAA*, No. 2:25-cv-11576-MWC-MBK, 2026 LX 158908 (C.D. Cal. Mar. 25, 2026) .......... 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 8

*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696 (9th Cir. 1988) .......... 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 7, 8

*Biglang-Awa-Castro v. SBE Restaurant Group, LLC*, 25VECV03590, 2026 Cal. Super. LEXIS 25177 (L.A. Co. Super. Ct. Apr. 16, 2026) .......... 21

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 8, 10, 13

*Calder v. Jones*, 465 U.S. 783 (1984) .......... 15

*California Water Impact Network v. County of San Luis Obispo,* 25 Cal.App.5th 666 (2018) .......... 23

*Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156 (9th Cir. 2016) .......... 8

*Campbell v. Allied Van Lines, Inc*., 410 F. 3d 61 (9th Cir. 2005) .......... 23

*Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095 (S.D. Cal. 2025) .......... 14

*Cantu v. Tractor Supply Co.*, 2024 WL 1601257 (C.D. Cal. 2024) .......... 9

*Casillas v. Lucky Opco LLC,* 25STCV03961, 2026 Cal. Super. LEXIS 24132 (L.A. Co. Super. Ct. Jan. 5, 2026) .......... 22

*Casillas v. Six Flags Ent. Corp*., No. 2:25-cv-6824-CBM-PD, 2025 LX 518344 (C.D. Cal. Dec. 15, 2025) .......... 18

*Conley v. Gibson*, 355 U.S. 41 (1957) .......... 8

*Conohan v. Rad* Power *Bikes Inc.*, 2025 U.S. Dist. LEXIS 72865, 2025 WL 1111246 (C.D. Cal. Apr. 3, 2025) .......... 22

*Davis v. Facebook, In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589 (9th Cir. 2020) .......... 9

*Dellasala v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, 2026 LX 187347 (N.D. Cal. Apr. 21, 2026) .......... 13

*Fiore v. Walden*, 688 F.3d 558 (9th Cir. 2012) .......... 7

*First Capitol Consulting, Inc. v. NetTax, LLC*, No. 2:23-cv-07837-MRA-AGR, 2025 U.S. Dist. LEXIS 27438 (C.D. Cal. Feb. 14, 2025) .......... 7

*Frasco v. Flo Health, Inc.*, No. 21-CV-00757-JD, 2024 WL 4280933 (N.D. Cal. Sept. 23, 2024)............ 14

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597 (9th Cir. 2018).... 19

*Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852 (N.D. Cal. 2025)............ 13, 14

*Gabrielli v. Motorola Mobility LLC*, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025)............14, 18, 22

*Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-cv-02282-SSS-DTBx, 2026 U.S. Dist. LEXIS 101782 (C.D. Cal. May 5, 2026)............ 13

*Garon v. Keleops USA, Inc.*, 2025 U.S. Dist. LEXIS 170745 (N.D. Cal. Sep. 2, 2025).. 22

*Griffith v. TikTok, Inc.*, 2023 U.S. Dist. LEXIS 195368, 2023 WL 7107262 (C.D. Cal. Oct. 6, 2023)............ 9

*Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 LX 11956 (N.D. Cal. Jan. 29, 2026)............ 13

*Heiting v. Fka Distrib. Co.*, 2025 U.S. Dist. LEXIS 20076 (C.D. Cal. Feb. 3, 2025)..... 22

*In re Baby Food Prods. Liab. Litig.*, No. 24-md-03101-JSC, 2025 LX 145220 (N.D. Cal. Apr. 2, 2025)............ 15

*In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020)....8, 10, 12, 13

*In re Google Inc. Cookie Placement Consumer Privacy Litig.* 934 F.3d 316 (3rd Cir. 2019)............ 12

*In re Google RTB Consumer Privacy Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. 2022)....... 10

*In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d............ 24

*Jones v. Skullcandy, Inc.*, No. 25-CV-1759 JLS (BLM), 2026 LX 101303 (S.D. Cal. Mar. 12, 2026)............ 13

*Kis v. Cognism Inc.*, 2024 U.S. Dist. LEXIS 151864; 2024 WL 3924553 (N.D. Cal. Aug. 23, 2024)............ 8

*Krzyzek v. Openx Techs., Inc.*, No. 25-CV-5588-SI, 2026 U.S. Dist. LEXIS 15195 (N.D. Cal. Jan. 27, 2026)............ 13

*Langer v. Kiser*, 57 F.4th 1085 (9th Cir. 2023)............ 6

*Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675 (C.D. Cal. Dec. 4, 2025).... 18, 22

*LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F. 4th 852 (9th Cir. 1977)............ 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)............ 12

*Makaryan v. Volkswagen Grp. of Am., Inc.*, No. CV 17-5086 PA (KSX), 2017 WL 6888254 (C.D. Cal. Oct. 13, 2017)............ 15

*Martinez v. Choose Your Horizon, Inc.,* No. 24-cv-02798-LB, 2025 LX 367073 (N.D. Cal. Aug. 31, 2025) ... 18

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218 (9th Cir. 2011) ... 17, 18

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ... 15

*Mikulsky v. Bloomingdale's, LLC*, Nos. 24-3564, 24-3837, 2025 LX 193021 (9th Cir. June 20, 2025) ... 17

*Mirmalek v. Los Angeles Times Commc'ns LLC*, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) ... 5, 22

*Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072 (C.D. Cal. July 25, 2024) ... 5, 22

*Moody v. Textron Inc.*, No. 2:25-cv-01032-MWC-E, 2025 U.S. Dist. LEXIS 199239 (C.D. Cal. Sep. 24, 2025) ... 18

*Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) ... 10, 12

*Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 LX 598744 (N.D. Cal. Nov. 24, 2025) ... 14

*Price v. Headspace, Inc.*, 2025 Cal. Super. LEXIS 27951 (L.A. Super Ct. Apr. 1, 2025) ... 22

*Riganian v. LiveRamp Holdings, Inc.*, 791 F.Supp.3d 1075 (N.D. Cal. July 18, 2025) ... 22

*Rounds v. Case-Mate Inc.*, No. 2:24-cv-08531-WLH-RAO, 2025 U.S. Dist. LEXIS 126431 (C.D. Cal. July 2, 2025) ... 18

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035 (9th Cir. 2004) ... 14

*Sanchez v. Glasscanopy, Inc.*, 2025 Cal. Super. LEXIS 18460 (L.A. Super. Ct. Feb. 28, 2025) ... 22

*Santoro v. Lulu & Georgia, Inc.*, 25STCV11722, 2025 Cal. Super. LEXIS 84529 (L.A. Co. Super. Ct. Nov. 21, 2025) ... 22

*Scarlett v. Future US, LLC*, CGC-25-621912, 2025 Cal. Super. LEXIS 56166 (S.F. Co. Super. Ct. Sept. 5, 2025) ... 22

*Schallert v. RocketGenius*, 25STCV35081, 2026 Cal. Super. LEXIS 25177 (L.A. Co. Super. Ct. March 24, 2026) ... 22

*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. October 21, 2024) ... 5, 9, 22, 24

*Shah v. MyFitnessPal, Inc.*, 25-CV-4430-PCP, 2026 U.S. Dist. LEXIS 15193 (N.D. Cal. Jan. 27, 2026) ... 13, 23

*Sun Valley Gas., Inc. v. Ernst Enters.*, 711 F.2d 138 (9th Cir.1983) ... 14

*Thomas v. Papa John's Int'l, Inc.,* Nos. 24-3557, 24-3834, 2025 LX 192037 (9th Cir. June 18, 2025) ... 17

*TransUnion LLC v. Ramirez,* 594 U.S. 413 (2021) ... 9, 12

*Valenzuela v. Intersystems Corp.*, 2025 Cal. Super. LEXIS 42550 (Orange Co. Superior Ct. Aug. 4, 2025) ... 22

*Valenzuela v. Nationwide Mutual Ins*. Co., 2023 WL 5266033 ... 6

*Walsh v. Dollar Tree Stores, Inc.,* No. 25-cv-01601-SVK, 2025 LX 466484 (N.D. Cal. Oct. 16, 2025) ... 24

*Yamashita v. LG Chem, Ltd.*, 62 F.4th 496 (9th Cir. 2023) ... 7

*Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023) ... 9

*Zhizhi Xu v. Reuters News & Media, Inc.*, 25CV459918, 2025 Cal. Super. LEXIS 76169 (Santa Clara Co. Super Ct. Oct. 24, 2025) ... 22

Statutes

Cal. Penal Code, Part 1, Title 15, Chapter 1.5 Invasion of Privacy ... 8

Cal. Penal Code § 629.51 ... 21

Cal. Penal Code § 638.50 ... 20

Cal. Penal Code, § 638.51 ... 20

Cal. Penal Code. § 638.52 ... 23

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In January of this year, the Court denied the Motion to Dismiss the Complaint of Defendant Alex and Ani, LLC ("A&A") in this action. *See Hassid v. Alex and Ani, LLC*, 816 F. Supp. 3d 1196, 1201-02 (CD Cal. 2026). In so doing, the Court held the following:

- Plaintiff's allegations that he was subjected to the operation of TikTok tracking software while visiting A&A's website on September 16, 2024, supported the finding of Article III standing. The Software in question was alleged to provide TikTok with identifying data about Plaintiff through "fingerprinting," enabled TikTok to match such data with information previously in TikTok's possession and tracked his activity on the website. The Court found Plaintiff had identified a concrete, particularized injury giving rise to standing, namely, the loss of control of information concerning himself. *Id.*, at 1201-02.
- The Court has specific personal jurisdiction over A&A because the Complaint had sufficiently alleged that A&A had purposefully directed itself at California by appealing to and profiting from an audience located in California through its website, and by using the website to collect information intentionally from users, knowing that privacy harms would be suffered by website visitors in California. *Id.*, at 1202-1204.
- The Complaint stated a claim under Cal. Penal Code § 638.51, for the installation and use of a "trap and trace device" as defined in Cal. Penal Code § 638.50(c), rejecting A&A's contention that the definition requires underlying person to person communications not part of interactions with commercial websites.

Defendants named for the first time in Plaintiff's First Amended Complaint (ECF No. 57) The Bathing Club LLC, LMGL LLC, MLLG LLC, and LC A&A Holdings, Inc. (the "New Defendants") now move to dismiss Plaintiff's claims against them, asking the Court to revisit its earlier rulings, and also to dismiss them on grounds relating to their

management or control (or purported lack thereof) over the website in question, https://www.alexandani.com (the "Website") (the "Motion").

Plaintiff submits that the Court's holdings in January were correct, and are supported by additional caselaw not available to the Court at that time. On that basis, the Court should reject the New Defendants' arguments that (1) Plaintiff has no Article III standing to sue them, (2) Section 638.51 does not apply to "internet data" or "websites" based on the language of the following provision in the Penal Code, Cal. Penal Code § 638.52 (setting forth the requirements to obtain a court order authorizing use of a trap and trace device).

The New Defendants argue that in his First Amended Complaint (the "FAC"), Plaintiff has failed to sufficiently allege their management or control over the Website at the time of Plaintiff's September 2024 visit. Therefore, they contend, the conduct giving rise to Plaintiff's claim, and any resulting injury from it – the installation of the TikTok Software on the Website, and its continued deployment – is not "fairly traceable" to them for purposes of Article III standing. Further, they argue, the lack of detailed allegations of their involvement in the Website, renders it impossible for the Court to find that they purposefully directed their conduct at California for purposes of exercising specific personal jurisdiction over them.

Plaintiff refutes this assessment. The allegations of the FAC support the conclusion that during the relevant timeframe regarding Plaintiff's claims, (a) individuals Mark Geragos and Lyndon Lea, individually or through entities affiliated with them, acted in concert, as agents of one another, and/or as part of a common enterprise with respect to the ownership, control, and operation of the Website, and (b) the ownership and operational control of the Website shifted among the New Defendants and A&A. Documents supporting Plaintiff's allegations in the FAC were submitted to the Court in connection with his Motion for Leave to Amend the Complaint (ECF Nos. 53-53-16), and the Court granted that Motion. (ECF No. 54).

In the event that the Court now deems the allegations tying the New Defendants to the Website and its use of the TikTok Software insufficient, Plaintiff respectfully requests leave to amend the FAC to include additional allegations based on discovery it has recently served on the New Defendants. *See* Decl. of J. Evan Shapiro in Support of Plaintiff's Oppo. to the Motion filed concurrently herewith ("Shapiro Declaration" or "Shapiro Decl."), ¶ 14. Plaintiff served business records subpoenas on the New Defendants in late February 2026, and only one of them, LC A&A Holdings Inc., attempted to comply with them. *See id.*, ¶¶ 10-12, Exs. 9-10. None of the New Defendants produced any documents responsive to the subpoenas. (And, as the Court may recall, A&A has responded to Plaintiff's discovery requests stating that it has no information and no documents concerning the Website and its use of the TikTok Software, because of a UCC Article 9 foreclosure.)

In the context of a series of commercial transactions that appear, based on court filings, to possibly represent an effort to use different corporate forms to evade contractual liabilities of A&A, Plaintiff should be provided an opportunity to conduct discovery to expand his allegations concerning the New Defendants. It would be unfair to dismiss the claims against the New Defendants when it appears that the New Defendants, with the *possible* exception of LC A&A Holdings Inc., are engaged in a shell game aimed at thwarting Plaintiff from obtaining relief.

Indeed, in his Motion for Leave to Amend to add the New Defendants to a First Amended Complaint, Plaintiff specifically sought a modification of the Scheduling Order in this case to permit discovery concerning the New Defendants. *See* ECF No. 53, at 18:16-19:5. Plaintiff argued that, "[t]argeted discovery is now necessary concerning the Proposed Defendants' involvement in Website ownership, operational control, asset transfers, data systems, and the deployment of tracking technology. That discovery bears directly on class certification and merits issues and is necessary to develop a complete factual record." *Id.*, at 18:24-19:2.

For these reasons, and as discussed in further detail below, the Court should deny the instant Motion in its entirety, or, alternatively, grant it with leave to amend after Plaintiff is able to obtain jurisdictional discovery, which he has recently served.

## II. ALLEGATIONS OF THE FIRST AMENDED COMPLAINT

Defendant Alex and Ani, LLC installed and uses sophisticated commercial surveillance TikTok Software on its retail jewelry website ("Website'") FAC, ¶¶ 16-22. The TikTok Software uses a "fingerprinting process" to unmask the identity of anonymous visitors to the Website to misappropriate their private information for Defendant's marketing purposes. *Id.* It works by transmitting the following regarding a visit to the Website: (1) the webpages viewed by a visitor, (2) technical data about a visitor's device and browser, and (3) geographic information about a visitor's device. *Id*, ¶¶ 18, 21-22. As the Website uses TikTok's "Auto Advanced Feature" of the TikTok Software, it also transmits personal information a visitor actively provides to the Website, such as their name, date of birth and address. *Id.*, ¶ 20.

The FAC alleges that the TikTok Software is designed solely to identify the source of a visit (i.e., the visitor, her device and her browser) to a website that deploys it. *Id.*, ¶¶ 24-25. It alleges that because TikTok has access to a database containing the data of hundreds of millions of Americans, it is easily able to identify visitors to websites. *Id.* ¶ 20. The identities obtained are used for targeted marketing. *Id.*

The FAC further alleges that Plaintiff and the members of the putative class identified in the FAC did not know the Software was operating upon them, and never gave their express or implied consent to the Software's deployment. *Id.*, ¶¶ 27, 42. No court order was obtained to permit use of the TikTok Software, which acts as a "trap and trace device" as defined in § 638.50(c).

As Plaintiff informed the Court, A&A refused to provide any detailed information concerning operation and control over the Website through discovery requests and an *attempted* Rule 30(b)(6) deposition, notwithstanding the fact that it asserts that it did not operate or control the Website in September 2024. *See* (ECF No. 53, at 12:6-14 (citing

ECF Nos. 42-3 at 3, 4304, 43-5). A Rule 30(b)(6) deposition of A&A provided some information about a July 2024 UCC foreclosure on A&A, and A&A's subsequent ownership. *See* Shapiro Decl. Ex. 3 (Portions of Feb. 24, 2026 Depo. Transcript of Lawrence Meyer, Rule 30(b)(6) designated witness for A&A), at 13:4-10, 14:1-4; 34:4-7.

In this context, the FAC alleges the following:

- "During the relevant period, one or more Defendants owned, operated, maintained, administered, marketed, or controlled the Website and its associated digital infrastructure." FAC, ¶ 15.
- Defendants installed the TikTok Software on the Website. *Id.*, ¶ 16.
- "At various times during the Relevant Period, Defendants either directly deployed the TikTok Software or had the authority and ability to control, enable, disable, or configure such software on the Website." *Id.*, ¶ 28.
- When one of the Defendants was not operating the Website at a particular time, it "directed, controlled, authorized, ratified, or benefited from the use of the TikTok Software and the data transmissions at issue." *Id.*, ¶ 29.
- New Defendant The Bathing Club LLC, upon information and belief, at various times from January 1, 2022 through the present, "owned, controlled, foreclosed upon, and/or acquired assets relating to the Website and the Alex and Ani business." *Id.*, ¶ 6.
- New Defendant LMGL LLC, upon information and belief, at various times from January 1, 2022 through the present, received, controlled, operated, licensed, and/or administered assets relating to the Website, including e-commerce and digital assets. *Id.*, ¶ 7.
- New Defendant MLLG LLC, upon information and belief, "holds intellectual property, including trademark and related rights associated with the Alex and Ani brand and Website, and at various times exercised control over brand, digital, and Website-related assets." *Id.*, ¶ 8.

- New Defendant LC A&A Holdings Inc., upon information and belief, "previously held secured interests in the assets of Alex and Ani and, [from January 1, 2022 through the present], exercised control over Website-related assets, either directly or through assignment, transfer, or coordinated action with other Defendants." *Id.*, ¶ 9.
- From January 1, 2022 through the present, "ownership and operational control of the Website shifted among one or more of the Defendants. The precise timing and structure of those shifts are within Defendants' exclusive knowledge." *Id.*, ¶ 10.

Perhaps most critically, Plaintiff has alleged, on information and belief, that ***along with A&A, the New Defendants "are commonly owned or controlled, directly or indirectly, by Mark Geragos and/or Lyndon Lea (or their affiliated entities),*** and that the corporate entities named herein acted in concert, as agents of one another, and/or as part of a common enterprise with respect to the ownership, control, marketing, and operation of the Website." *Id.*, ¶ 11 (emphasis added). Thus, the FAC alleges that:

> At all relevant times, each Defendant acted as the agent, alter ego, joint venturer, and/or co-conspirator of the other Defendants, and each Defendant ratified, authorized, or knowingly benefited from the conduct alleged herein.

## III. THE NEW DEFENDANTS HAVE REBUFFED EFFORTS TO OBTAIN DISCOVERY

According to the docket, A&A is represented by:

Alexandra S Kazarian
Geragos and Geragos APC
644 South Figueroa Street
Los Angeles, CA 90017-3411
213-625-3900

213-232-3255 (fax)
ak@geragos.com

Mark J. Geragos is " the Principal with the internationally renowned trial lawyer firm of Geragos & Geragos." *See* https://geragos.com/attorneys/mark-j-geragos/ (last viewed 8/19/2026). Although papers filed by A&A bear the caption of the Law Offices of Alexandria Kazarian, Ms. Kazarian is listed as being associated with the law firm Geragos and Geragos LLP, *see* https://geragos.com/attorneys/alexandra-kazarian/ (last viewed 8/19/2026).

Until the Court ordered that it produce a Rule 30(b)(6) witness for deposition in response to Plaintiff's deposition notices, A&A insisted in discovery responses that it had no information about A&A's management or control, and was completely in the dark about anything occurring after a UCC Article 9 foreclosure. Mot. for Leave to Amend Compl., ECF No. 53), at 12:3-13:5, 14:2-21; *see also*, Shapiro Decl. Exs. 1-2 (A&A's Resp. & Objs. to Plaintiff's Discovery Requests).

Moreover, Plaintiff as explained above, only 1 of the New Defendants responded to or complied with his subpoenas, served on them prior to the filing of the FAC in February 2026. And the one who responded, LC A&A Holdings Inc., objected and shifted attention to another New Defendant, LMGL LLC. Both are represented on this Motion by the same counsel.

In the Motion at bar, the New Defendants contend that Plaintiff has insufficiently alleged that for purposes of standing, his injuries cannot be traced to them. They argue that Plaintiff has failed to provide the Court with specifics about their corporate relationship with A&A, and their involvement with the Website. It would be unfair for this argument to prevail as the New Defendants refused to fully comply with subpoenas Plaintiff served upon them as third parties to obtain more detailed information about their relationship with A&A. A&A and the New Defendants should not be permitted to profit from their shell game.

As Plaintiff demonstrated to the Court court filings and deposition testimony in other cases tie individuals Lyndon Lea and Mark Geragos to each of the New Defendants, as well as to A&A. These documents are appended to the Shapiro Declaration filed concurrently herewith.[1] *See* Shapiro Decl. Ex. 4 (Supplemental and Amended Complaint filed on April 3, 2025, in *Pamela Love Consulting LLC v. The Bathing Club LLC, et al.*, Index No. 651264/2025 (N.Y. Sup. Ct., N.Y. County) ("*Love Consulting v. TBC*") ¶¶ 8, 10-12 (supporting Messrs. Lea and Geragos' roles in A&A, Defendant The Bathing Club LLC, Defendant LC A&A Holdings Inc., and Defendant LMGL LLC); Ex. 5 (Answer and Counterclaims of Defendants The Bathing Club LLC and LMGL LLC in *Love Consulting v. TBC*, filed on January 19, 2026) ¶¶ 8, 10, 12 (admitting that The Bathing Club LLC is controlled by Mr. Geragos, that Mr. Lea signed LMGL LLC's certificate of formation as an "Authorized Person" and that the letters L, M, G and L in LMGL LLC represent the initials of Messrs. Lea and Geragos); Ex. 6 (Affidavit of Carolyn Rafaelian filed on September 29, 2020 in *LC A&A Holdings, Inc. v. Carolyn Rafaelian, et al.*, Index No. 652546/2020 (N.Y. Sup. Ct., N.Y. County)) ¶¶ 5-6 (demonstrating that LMGL currently controls certain assets which were previously those of Alex and Ani LLC, and Messrs. Lea and Geragos' roles in A&A); Ex. 7 (excerpts from the April 8, 2025 Depo. Trans. of Prita Kumar, filed in *Love Consulting v. TBC* on June 4, 2025), at 28:20-29:2 (stating that Messrs. Lea and Geragos are indirect owners of interests in LMGL LLC); Ex. 8 (Confirmatory Assignment of Intellectual Property from The Bathing Club LLC to MLLG LLC, recorded on August 6, 2024), at 2 (demonstrating that Mr. Lea signed as an "Authorized Signatory" of Defendant MLLG LLC).

These exhibits to the Shapiro Declaration support Plaintiff's allegation in the FAC that " each Defendant acted as the agent, alter ego, joint venturer, and/or co-conspirator of the other Defendants." FAC (ECF No. 57, ¶ 12). Further, they support Plaintiff's request

[1] These appended documents contain highlights supplied by the undersigned for the Court's convenience.

that he be permitted to pursue discovery into the ownership and control exercised by each of the New Defendants before any dismissal of the claims against them.

## IV. LEGAL STANDARDS

### A. Legal Standard for A Motion to Dismiss Under Rule 12(b)(1)

"On a motion to dismiss for lack of personal jurisdiction, the court 'take[s] as true all uncontroverted allegations in the complaint.'" *First Capitol Consulting, Inc. v. NetTax, LLC*, No. 2:23-cv-07837-MRA-AGR, 2025 U.S. Dist. LEXIS 27438, at *2 n.1 (C.D. Cal. Feb. 14, 2025) (quoting *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F. 4th 852, 858 (9th Cir. 1977)). Where a defendant's Rule 12(b)(2) motion to dismiss "is based on written materials rather than an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023) (citation and internal quotation marks omitted). This showing may include reasonable inferences made from a complaint's material factual allegations in the plaintiff's favor. *See, e.g., Fiore v. Walden*, 688 F.3d 558, 575 (9th Cir. 2012) ("We will draw reasonable inferences from the complaint in favor of the plaintiff where personal jurisdiction is at stake, and will assume credibility.").

### B. Legal Standard for A Motion to Dismiss Under Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) is proper only when a complaint exhibits either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). The Court "must accept" all facts alleged by Plaintiff "as true." *Caltex Plastics, Inc. v. Lockheed Martin Corp*, 824 F.3d 1156, 1159 (9th Cir. 2016). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "It is axiomatic that the motion to dismiss . . . is viewed with disfavor and is rarely granted." *Ernst & Haas Mgmt. Co., Inc. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022) (citation omitted).

## V. ARGUMENT

### A. Plaintiff Has Established Article III Standing for His Claims Against the New Defendants.

To establish standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). Here, contrary to DDI's assertion, Plaintiff has shown, through his allegations, that he has suffered an injury in fact meeting the requirements of *TransUnion*.

The FAC alleges that the New Defendants' subjection of Plaintiff to the TikTok Software both violated his privacy and caused him a particularized, concrete injuries. The injuries include loss of control of his identifying information, and the record of the webpages he visited, including this data's use to create behavioral profiles of him.

Violations of individuals' rights to privacy fall into the category of traditionally recognized harms that constitute an Article III injury in fact. *See Patel v. Facebook, Inc.*, 932 F.3d 1264, 1272 (9th Cir. 2019) (recognizing the "common law roots of the right to privacy"). "A right to privacy 'encompass[es] the individuals' control of information concerning his or his person.'" *In re Facebook, Inc. Internet Tracking Litig.,* 956 F.3d 589, 598-599 (9th Cir. 2020) (*"In re Facebook"*); *accord Gabrielli v. Haleon US Inc*., 815 F. Supp. 3d 852, 864 (N.D. Cal. 2025) (holding that "the Ninth Circuit has not disavowed *[In re] Facebook* in the wake of *TransUnion*"). Binding Ninth Circuit precedent explains that various rights codified in CIPA ***are substantive and not procedural rights*** that are sufficient for Article III standing. *Brown v. Google LLC*, 685 F. Supp. 3d 909, 924 (N.D. Cal. 2023) ("The Ninth Circuit has found that each of the statutory claims brought here

codify substantive rights to privacy.") (citations omitted).

As indicated by this Court's January 2026 decision denying A&A's motion to dismiss the Complaint in this action (*see* ECF No. 49), *Alex and Ani*, 816 F. Supp. 3d 1196, 1201-02 (CD Cal. 2026), a body of Ninth Circuit caselaw finding Article III standing in cases based on the privacy harms engendered by the use of tracking software on websites is growing. *See, e.g., Garcia v. Anschutz Ent. Grp., Inc.*, No. 5:25-cv-02282-SSS-DTBx, 2026 U.S. Dist. LEXIS 101782, at *8-10 (C.D. Cal. May 5, 2026); *Dellasala v. Samba TV, Inc.*, No. 3:25-cv-03470-JSC, 2026 U.S. Dist. LEXIS 88089, at *4 (N.D. Cal. Apr. 21, 2026); *Anderson v. NCAA*, No. 2:25-cv-11576-MWC-MBK, 2026 U.S. Dist. LEXIS 75991, at *16-21 (C.D. Cal. Mar. 25, 2026); *Jones v. Skullcandy, Inc.*, No. 25-CV-1759 JLS (BLM), 2026 U.S. Dist. LEXIS 51569, at *14-16 (S.D. Cal. Mar. 12, 2026); *Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 U.S. Dist. LEXIS 23256, at *2-4 (N.D. Cal. Jan. 29, 2026); *Shah v. MyFitnessPal, Inc.*, 25-CV-4430-PCP, 824 F.Supp. 3d 906, 913-14 (N.D. Cal. 2026) (finding standing where third parties "surreptitiously obtained" a wide range of information about the plaintiffs, including their "browsing history, visit history, [and] website interactions")*; Krzyzek v. Openx Techs., Inc.*, No. 25-CV-5588-SI, 817 F.Supp. 3d 857, 862-64 (N.D. Cal. 2026) (finding standing where the defendant allegedly "compiled detailed user profiles" by collecting cookies, IP addresses, email addresses, and "information regarding the users' activity on the websites and communications with the websites"); *Pemberton v. Rest. Brands Int'l, Inc.*, No. 25-cv-03647-JSC, 2025 U.S. Dist. LEXIS 230964, at *2, *22 (N.D. Cal. Nov. 24, 2025) ("Plaintiff's allegations [t]hat Defendants deprived him of control over his personal information constitute a sufficiently concrete injury for Article III standing,…", as did Plaintiff's assertion that such loss of control "diminished [the] value [of such information]"); *Camplisson v. Adidas Am., Inc.*, 809 F. Supp. 3d 1095, 1106 (S.D. Cal. 2025) (finding injury-in-fact where trackers on defendant's website "collected a broad set of their personal identifying and addressing information without their consent and in violation of CIPA"); *Six Flags Ent. Corp*., 812 F. Supp. 3d 1016, 1033; *Haleon US Inc.*,

815 F. Supp. 3d at 865-67; *Gabrielli v. Motorola*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *14 (N.D. Cal. Jul. 14, 2025); *Frasco v. Flo Health, Inc.*, No. 21-CV-00757-JD, 2024 WL 4280933, at *1 (N.D. Cal. Sept. 23, 2024).

In *In re Facebook*, the Ninth Circuit found that Facebook "continued to collect [plaintiffs'] data after they had logged off the social media platform, to receive and compile their personally identifiable browsing history." *Id.* at 599. The Ninth Circuit concluded that such surreptitious "unauthorized exploration" of someone's private life and information constituted a cognizable and concrete Article III injury: "Here, Plaintiffs have adequately alleged that Facebook's tracking and collection practices would cause harm ***or a material risk of harm*** to their interest in controlling their personal information. As alleged, Facebook's tracking practices allow it to amass a great degree of personalized information." *Id.* (emphasis added). These holdings are applicable here.

The New Defendants' arguments that the FAC's allegations are too "attenuated" to establish a harm to Plaintiff "fairly traceable" to them (*see* Mot. (ECF No. 82), at 17:4-18:21 are unavailing. The FAC alleges that Defendants installed and deployed the TikTok Software on the Website, and that the TikTok Software identified Plaintiff to TikTok, transmitting his activities on the Website to TikTok. Thus, the New Defendants are in essence arguing only that Plaintiff has not obtained sufficient evidence of their ownership and control over the affairs of A&A. As Plaintiff has demonstrated above, the problem with a dismissal on such grounds is that it appears there has been a concerted effort to engage in a shell game between related entities, as well as an effort to thwart Plaintiff's discovery into their relationship.

Thus this case is quite different from *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011), cited in the Motion (ECF No. 82, at 17:14-25). There the issue was "a chain of causation 'involv[ing] numerous third parties' whose 'independent decisions' collectively have a 'significant effect' on plaintiffs' injuries." *Centex Corp.*, 658 F.3d at 1070 (citation omitted). Plaintiff does not allege numerous third parties making "independent decisions." Instead, he alleges a handful of individuals, controlling a series

of related corporate entities, and a series of transactions between them – transactions that have been alleged elsewhere to represent an attempt to make A&A "judgment proof." *See* Shapiro Decl. Ex. 4, at 1 (¶ 3).

For these reasons, the Court should deny the New Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of standing.

**B. <u>The Court Has Specific Personal Jurisdiction Over the New Defendants.</u>**

The Ninth Circuit applies a 3-part ***"minimum contacts" test*** for specific personal jurisdiction over a non-resident Defendant. That requires "(1) the non-resident defendant must purposefully direct [its] activities or consummate some transaction with the forum or resident thereof; or perform some act by which [it] purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *See, e.g., Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023). "For claims sounding in tort, like the privacy and data use violations [ ], we most often employ a purposeful direction analysis." *Briskin*, 135 F.4th at 751 (footnote omitted). "[T]he ***purposeful direction test*** requires that the defendant (1) commit an intentional act, that is (2) expressly aimed at the forum state, and (3) which causes harm that the defendant knows will be suffered in the forum state." *Id.* (citation omitted) (emphasis supplied). This test, also known as the effects test, is drawn from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984).

**1. <u>The FAC Establishes Purposeful Direction of the New Defendants.</u>**

The FAC alleges intentional acts by Defendants, vis-à-vis Plaintiff and his device located in California in connection with Plaintiff's September 2024 visit to the Website. Further, the FAC alleges that the operation of the TikTok Software upon Website visitors and devices in California causes harm to the visitors that is sustained in California, where they are located. Moreover, the type of harm alleged in the FAC is of the kind that the

New Defendants would know would be suffered in California.

Two principles espoused in *Briskin*, and its progeny, should be central to the Court's analysis of the question. First, the depositing of "tracking software" on devices in a forum state, an "entry into the state of California by electronic means," causing the transmission of data relating to the device and its owner to support the depositing party's business practices, can establish express aiming at the state, as long as such action is not "random, fortuitous, or attenuated." 135 F.4th at 756-57. Second, a defendant's operation of an interactive website that is disseminated to a nationwide audience may entail express aiming at a particular forum state even where it does not target consumers in that state in a manner different from how it targets consumers elsewhere. *See id.*, at 757 ("Express aiming does not require differential targeting").

In *Briskin*, the defendant was found to have purposely directed its conduct toward California because the defendant was "alleged to target California consumers to extract, collect, maintain, distribute, and exploit for its own profit," where the defendant's "business model [was] to . . . obtain valuable personal data about California consumers for its own commercial gain." *Id.* at 755-56. The defendant "[knew] about its California consumer base, conduct[ed] its regular business in California, contact[ed] California residents, interact[ed] with them as an intermediary for its merchants, install[ed] its software onto their devices in California, and continue[d] to track their activities." *Id.* at 759. The Ninth Circuit rejected the defendant's argument that the defendant's conduct was "mere happenstance arising from the California consumers' choice to do business with [the defendant]," because the defendant's "intentional activities constitute[d] express aiming toward California and its consumers to obtain and use their personal data for its own commercial gain." *Id.* at 756.

Ninth Circuit appellate and district court decisions handed down in *Briskin's* aftermath make clear that operators running retail operations on nationally available interactive websites may be subject to personal jurisdiction in California under *Briskin's* key holdings. *See, e.g., Thomas v. Papa John's Int'l, Inc.,* Nos. 24-3557, 24-3834, 2025

LX 192037, at *2-3 (9th Cir. June 18, 2025) ("Because Thomas also alleges that Papa John's uses its website to intentionally collect information that invades the privacy of users, knowing that any alleged harm will be suffered in California, the allegations satisfy the purposeful direction test."); *Mikulsky v. Bloomingdale's, LLC*, Nos. 24-3564, 24-3837, 2025 LX 193021, at *2-3 (9th Cir. June 20, 2025) ("Defendants' website 'appeals to, and profits from, an audience in' California [(citing *Briskin*, 135 F. 4th, at 754 (quoting *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1231 (9th Cir. 2011)),] and is used to collect information intentionally from users, knowing that privacy harms will be suffered in California" (citing *Briskin*, 135 F. 4th, at 756)); *Lewis v. Magnite, Inc.,* No. 2:25-cv-03448-MWC-SSCx, 2025 U.S. Dist. LEXIS 263675, at *21-22 (C.D. Cal. Dec. 4, 2025); *Casillas v. Six Flags Ent. Corp*., 812 F. Supp. 3d 1016, 1024-26 (C.D. Cal. 2025)*; Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *18-23 (N.D. Cal. July 14, 2025); *Martinez v. Choose Your Horizon, Inc.,* No. 24-cv-02798-LB, 2025 U.S. Dist. LEXIS 169726, at *11-14 (N.D. Cal. Aug. 31, 2025).

**2. <u>The FAC Establishes That Plaintiff's Claims Arise Out of the New Defendants' California-Related Conduct.</u>**

The FAC alleges that Plaintiff's claim arises out of harm that the New Defendants would expect would be suffered by individual visitors to the Website, such as Plaintiff; the Website accepted individuals visiting the Website from locations in California, and then, through deployment of the TikTok Software, transmitted their information to TikTok for identification and commercial exploitation. Further, as the Court held in its January 2026 decision, "Plaintiff would not have suffered an invasion of privacy had defendant not contracted with TikTok to install TikTok Software on its Website to collect and send plaintiff's private information to TikTok in California." *Alex and Ani,* 816 F. Supp. 3d at 1204. This holding applies with equal force to the New Defendants.

**3. Exercising Personal Jurisdiction over the New Defendants Would Comport with Substantial Justice and Fair Play**

Exercising personal jurisdiction would also be reasonable in this case, and the New Defendants fails to satisfy ***their burden*** to show that it would be unreasonable. The factors used by the Ninth Circuit for Defendant to meet its burden of showing unreasonableness are:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Herbal Brands*, 72 F.4th at 1096 (quoting *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 607 (9th Cir. 2018)). As the Court held in its January 2026 decision, the fact that the TikTok Software alleged to have been used by the New Defendants targets individuals in California and transmits their information to TikTok for commercial exploitation provides ample basis for the reasonable exercise of personal jurisdiction over them.

**C. The Complaint States a Claim for A Violation Of CIPA, Cal. Penal Code, Section 638.51**

**1. Plaintiff Has Statutory Standing Under CIPA**

"A violation of one's privacy rights is an injury in itself [under CIPA], and the statute does not require more." *Camplisson*, 809 F. Supp. 3d at 1104; *accord Deivaprakash v. Condé Nast Digit.*, 798 F. Supp. 3d 1100, 1106 (N.D. Cal. 2025) (finding statutory standing under CIPA based on plaintiff's allegation of "a privacy invasion based on the creation of a detailed profile and his reduced capacity to remain anonymous"); *Harris v. iHeartMedia*,

Inc., No. 25-cv-06038-EKL, 2026 U.S. Dist. LEXIS 23256, 2026 WL 247875, at *2 n.4 (N.D. Cal. Jan. 29, 2026). Here, Plaintiff has plainly alleges a violation of his privacy rights because he alleges that the TikTok Software identified him to TikTok and transmitted his online activity to the Chinese-Government-affiliated company.

**2. Section 638.51 Is Broad and Applies to Internet Communications and Websites.**

Software or code running on websites that "captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication" constitutes a trap and trace device for purposes of §§ 638.50-51. *See, e.g., Biglang-Awa-Castro v. SBE Restaurant Group, LLC*, 25VECV03590, 2026 Cal. Super. LEXIS 29752, at *3-4 (L.A. Co. Super. Ct. Apr. 16, 2026); *Schallert v. RocketGenius*, 25STCV35081, 2026 Cal. Super. LEXIS 25177, at *3-4 (L.A. Co. Super. Ct. March 24, 2026); *Hassid v. Alex & Ani, LLC*, 2026 U.S. Dist. LEXIS 11238, at *4-7 (C.D. Cal. Jan. 20, 2026); *Casillas v. Lucky Opco LLC,* 25STCV03961, 2026 Cal. Super. LEXIS 24132, at *5-6 (L.A. Co. Super. Ct. Jan. 5, 2026); *Casillas v. Six Flags Ent. Corp.*, 812 F. Supp. 3d 1016, 1030-32 (C.D. Cal. 2025); *Lewis v. Magnite, Inc.*, 2025 U.S. Dist. LEXIS 263675, at *39-42 (C.D. Cal. Dec. 4, 2025); *Santoro v. Lulu & Georgia, Inc.*, 25STCV11722, 2025 Cal. Super. LEXIS 84529, at *8-9 (L.A. Co. Super. Ct. Nov. 21, 2025); *Zhizhi Xu v. Reuters News & Media, Inc.*, 25CV459918, 2025 Cal. Super. LEXIS 76169, at *8-10 (Santa Clara Co. Super Ct. Oct. 24, 2025); *Scarlett v. Future US, LLC*, CGC-25-621912, 2025 Cal. Super. LEXIS 56166, at *11-14 (S.F. Co. Super. Ct. Sept. 5, 2025).

**3. The New Defendants' Reliance on the Legislative History of §§ 638.50-51, and the Language of Cal. Penal Code § 638.52 Is Misplaced.**

Statutory interpretation is guided by the "plain meaning rule". "Under the plain meaning rule, where the language of a statute is plain and admits of no more than one meaning the duty of interpretation does not arise, and the rules which are to aid doubtful

meanings need no discussion." *Campbell v. Allied Van Lines, Inc.*, 410 F. 3d 61 (9th Cir. 2005); *accord Shah v. MyFitnessPal, Inc.*, 824 F. Supp. 3d 906, 920-21 (N.D. Cal. 2026); *Walsh v. Dollar Tree Stores, Inc.,* No. 25-cv-01601-SVK, 2025 LX 466484, at *49-50 (N.D. Cal. Oct. 16, 2025). Under such circumstances there is no need to review a statute's legislative history.

Numerous district courts have rejected the argument advanced by the New Defendants, that §§ 638.50-51, broadly worded provisions, should be read in light of the far narrower Cal. Penal Code § 638.52 – the provision that sets forth what law enforcement (only) must establish to obtain a court order to use a "trap and trace device." Just because CIPA provides that law enforcement can only obtain court orders to use telephone technology-based "trap and trace device[s]" does not mean that the Legislature intended to narrow the protections afforded by § 638.51.

**D. <u>The FAC Complies With Fed. R. Civ. P. 8(a)(2)</u>**

The FAC complies with the Fed. R. Civ. P. 8(a)(2). It provides fair notice to the New Defendants of the basis upon which he alleges their involvement in the ownership and control over A&A and the Website. Given the efforts of A&A and the New Defendants to thwart Plaintiff's discovery into the relationship between the Geragos-Lea owned entities, it seems apparent that the New Defendants have certainly been apprised of the claims against them. Indeed, at this point, the New Defendants plainly have more information than Plaintiff – information they have withheld up to this point – about their involvement in the use of TikTok Software on the Website.

**VI. IN THE EVENT THE COURT INTENDS TO DISMISS THE FAC, IT SHOULD GRANT PLAINTIFF LEAVE TO AMEND.**

A court should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2).

In the event that the Court is inclined to dismiss the FAC for failure to sufficiently allege Article III standing or specific personal jurisdiction with respect to the New Defendants, Plaintiff requests the opportunity to amend his pleading. The Court should do

so based on Plaintiff's demonstration in his Motion for Leave to Amend the Complaint (ECF No. 53) – a demonstration that the New Defendants are inextricably intertwined with A&A and the July 2024 UCC Art. 9 foreclosure. A&A and the New Defendants' apparent efforts to thwart Plaintiff's discovery efforts support Plaintiff's request to have an opportunity to file a Second Amended Complaint once he has obtained the discovery he has been seeking – discovery that the Court approved in its order of June 24, 2026. *See* ECF No. 73.

## VII. CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests the Court deny the Motion to Dismiss, or in the alternative, permit Plaintiff leave to amend to add more facts should the Court find the Complaint deficient.

DATED: August 20, 2026

**TAULER SMITH LLP**

By: */s/ J. Evan Shapiro*
J. Evan Shapiro, Esq.

Attorneys for Plaintiff
Milan Hassid

## LOCAL RULE 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Milan Hassid, certifies that this brief contains 6,321 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 20, 2026

**TAULER SMITH LLP**

By: */s/ J. Evan Shapiro*
J. Evan Shapiro, Esq.

Attorneys for Plaintiff
Milan Hassid