JENNIFER E. NEWCOMB (SBN 287314)
TIMOTHY J. LEPORE (SBN 294247)
ROPERS MAJESKI PC
801 South Figueroa St, Suite 2100
Los Angeles, CA 90017
Telephone: 213.312.2000
Facsimile: 213.312.2001
Email: jennifer.newcomb@ropers.com
timothy.lepore@ropers.com

Attorneys for Defendants
THE BATHING CLUB LLC, LMGL LLC,
MLLG LLC, AND LC A&A HOLDINGS INC.

ROPERS MAJESKI
A Professional Corporation
Los Angeles

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MILAN HASSID, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALEX AND ANI, LLC, a Rhode Island limited liability company; THE BATHING CLUB LLC, a New York limited liability company; LMGL LLC, a Delaware limited liability company; MLLG LLC, a Delaware limited liability company; LC A&A HOLDINGS INC., a Delaware corporation; and DOES 5 through 25, inclusive,<br><br>Defendants. | Case No. 2:25-cv-00679-FMO-AYP<br><br>**DEFENDANTS BATHING CLUB LLC, LMGL LLC, MLLG LLC, AND LC A&A HOLDINGS INC.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Fernando M. Olguin<br>Date: September 10, 2026<br>Time: 10:00 a.m. PST<br>Location: Courtroom 6D<br>350 W. 1st Street, Suite 4311<br>Los Angeles, CA 90012 |

ROPERS MAJESKI
A Professional Corporation
Los Angeles

## TABLE OF CONTENTS


Page

MEMORANDUM OF POINTS AND AUTHORITIES .......... 3

I. INTRODUCTION .......... 6

II. ARGUMENT .......... 7

- A. PLAINTIFF LACKS ARTICLE III STANDING .......... 7
  - 1. The FAC Fails to Allege Concrete Harm .......... 7
  - 2. The Alleged Injury Has No Common-Law Analog, Especially Because Plaintiff Sought Out the Injury .......... 9
  - 3. The FAC Does Not Adequately Trace the Alleged Harm to Defendants .......... 12
- B. Plaintiff's Conclusory Allegations Do Not Satisfy Specific Jurisdiction. .......... 12
- C. The CIPA Claim Fails as a Matter of Law .......... 16
- D. Plaintiff Cannot Shirk His Rule 8 Obligations .......... 17
- E. The Motion Should be Granted Without Leave to Amend .......... 18

III. CONCLUSION .......... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) ........ 16

*Brayton Purcell LLP v. Recordon & Recordon*,
606 F.3d 1124 (9th Cir. 2010) ........ 13

*Briskin v. Shopify, Inc.*,
135 F.4th 739 (9th Cir. 2025) ........ 14, 15

*Byars v. Sterling Jewelers, Inc.*,
2023 U.S. Dist. LEXIS 61276 (C.D. Cal.) ........ 11

*Carolus v. Nexstar Media Inc.*,
2025 U.S. Dist. LEXIS 92707 (N.D. Cal. Apr. 9, 2025) ........ 10

*Cybersell, Inc. v. Cybersell, Inc.*,
130 F.3d 414 (9th Cir. 1997) ........ 13

*Dangoor v. Peterson's Stampede Dodge Chrysler Jeep*,
LLC, No. 2:19-cv-01793-SVW-JC, 2019 U.S. Dist. LEXIS 209404 (C.D. Cal. Aug. 8, 2019) ........ 16

*Daniel v. Nat'l Park Serv.*,
891 F.3d 762 (9th Cir. 2018) ........ 12

*In re Facebook, Inc. Internet Tracking Litig.*
(9th Cir. 2020) ........ 9

*In re Facebook, Inc. Internet Tracking Litig.*
(9th Cir. 2020) (hereinafter "*In re Facebook*") ........ 10

*Flores v. EMC Mortg., Co.*,
997 F.Supp.2d 1088 (E.D. Cal. 2014) ........ 17

*Heiting v. Marriot Int'l, Inc.*,
743 F. Supp. 3d 1163, 2024 WL 3751276 (C.D. Cal. Aug. 5, 2024) ........ 16

*Hughes v. Vivint, Inc.*,
2024 U.S. Dist. LEXIS 232423 (C.D. Cal. Jul. 12, 2024) ........ 8, 10



ROPERS MAJESKI
A Professional Corporation
Los Angeles

*Kellytoy Worldwide, Inc. v. Jay at Play Int'l H.K. Ltd.*, No. CV 19-cv-07831-AB (MRW), 2019 U.S. Dist. LEXIS 228117 (C.D. Cal. Dec. 5, 2019) ..... 15

*Kishnani v. Royal Caribbean Cruises Ltd.*, 2025 U.S. Dist. LEXIS 120002 (N.D. Cal. Jun. 24, 2025) ..... 17

*Lightoller v. JetBlue Airways Corp.*, No. 3:23-cv-00361-H-KSC, 2023 U.S. Dist. LEXIS 102158, 2023 WL 3963823 (S.D. Cal. June 12, 2023) ..... 11

*Mavrix Photo, Inc. v. Brand Techs.*, 647 F.3d 1218 (9th Cir. 2011) ..... 13

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ..... 12

*Mitchener v. Curiositystream, Inc.*, 815 F.Supp.3d 845 (N.D. Cal. 2025) ..... 8, 10

*Moody v. Textron Inc.*, No. 2:25-cv-01032-MWC-E, 2025 U.S. Dist. LEXIS 199239 (C.D. Cal. Sep. 24, 2025) ..... 15

*Phillips v. United States Customs & Border Prot.*, 74 F.4th 986 (9th Cir. 2023) ..... 11

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) ..... 7

*Price v. Converse, Inc.*, 805 F. Supp. 3d 1102 (C.D. Cal 2025) ..... 8

*Rodriguez v. Autotrader.com, Inc.*, 2025 U.S. Dist. LEXIS 47308 (C.D. Cal.) ..... 11

*Rodriguez v. Brushfire Recs.*, 2025 U.S. Dist LEXIS 264091 (C.D. Cal. Dec. 15, 2025) ..... 8

*Rounds v. Case-Mate Inc.*, No. 2:24-cv-08531-WLH-RAO, 2025 U.S. Dist. LEXIS 126431 (C.D. Cal. July 2, 2025) ..... 15, 16

ROPERS MAJESKI
A Professional Corporation
Los Angeles

*Schallert v. Laird Superfood, Inc.*,
2026 U.S. Dist. LEXIS 126589 (C.D. Cal. Jun., 2026) ........................................ 8

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) ........................................................................ 13

*Simon v. E. Kentucky Welfare Rights Org.*,
426 U.S. 26 (1976) .................................................................................... 12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .................................................................................... 7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) .................................................................................... 7

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008) .......................................................................... 9

*In re USA Today Co., Internet Tracking Litig.*,
2026 U.S. Dist. LEXIS 75000 (N.D. Cal. Apr. 6, 2026) ...................................... 8

*Wooten v. BioLife Plasma Servs. L.P.*,
807 F.Supp.3d 1139 (E.D. Cal. 2025) ........................................................ 8, 10

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................................ 9

**Statutes**

Cal. Penal Code § 639.50(c) ........................................................................ 17

Cal. Penal Code § 638.51 ............................................................................ 17

ROPERS MAJESKI
A Professional Corporation
Los Angeles

Defendants The Bathing Club LLC ("TBC"), LMGL LLC ("LMGL"), MLLG LLC ("MLLG"), and LC A&A Holdings Inc. ("LC A&A") (collectively "Defendants") submit the following Reply in support of their Motion to Dismiss Plaintiff Milan Hassid's ("Plaintiff") First Amended Complaint ("FAC") (the "Motion").

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff's Opposition confirms what Defendants' Motion established: the FAC is yet another cookie-cutter complaint that Plaintiff and his counsel have mass-produced against over at least one hundred companies. The Opposition does nothing to cure the fatal deficiencies raised in the Motion. Rather than offer specific factual allegations demonstrating that Plaintiff suffered a concrete injury, that this Court has personal jurisdiction over the moving Defendants, or that any moving Defendant independently installed or used an illegal trap and trace device, Plaintiff recycles the same conclusory rhetoric and ignores decisions from this District that have repeatedly rejected his arguments.

The Opposition's strategy is transparent: lump all Defendants together, invoke *Briskin v. Shopify, Inc.* as though it were a universal jurisdictional passport, and hope this Court overlooks that the FAC contains no particularized allegations about what information was actually captured from Plaintiff, which Defendant operated the Website on September 16, 2024, or how holding companies, lenders, and asset acquirers committed intentional acts expressly aimed at California. This Court should not indulge that strategy. Each independently dispositive ground for dismissal stands, and the Opposition fails to overcome any of them.

Thus, the Motion should be granted in its entirety, and the FAC dismissed without leave to amend.



ROPERS MAJESKI
A Professional Corporation
Los Angeles

## II. ARGUMENT

### A. PLAINTIFF LACKS ARTICLE III STANDING

#### 1. The FAC Fails to Allege Concrete Harm

The authority is clear. A bare statutory violation does not automatically satisfy Article III's injury-in-fact requirement. *TransUnion LLC v. Ramirez,* 594 U.S. 413, 427 (2021) ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."). Thus, Plaintiff must show that: "(1) [he] suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016). For intangible harms, Plaintiff must demonstrate a "close relationship" to a harm "traditionally" recognized as providing a basis for a lawsuit in American courts." *Transunion, supra,* 594 U.S. at 424. This requires courts to "assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system" – specifically, "whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Popa v. Microsoft Corp.,* 153 F.4th 784, 791 (9th Cir. 2025).

The FAC fails to meet these standards, and the Opposition fares no better. In the FAC, Plaintiff's allegations are from a 30,000-foot level. He generically alleges that the TikTok software collects "device[,] browser[,] and geographic information[,]" and "referral tracking [] and URL tracking." (FAC ¶¶ 16, 18, 24.) He further alleges that TikTok's "Auto Advanced Matching" feature *generally* scans websites for "name, date of birth, and address" information. (*Id.* at ¶ 20.) Crucially, however, Plaintiff does not allege what information was actually captured *from him.* There are simply no allegations about what, if any, personal information of his was obtained from the Website or whether he has received any targeted advertising, or other undesirable contact, as a direct result of his visit to the Website. And, there is absolutely no allegation that any data was actually

ROPERS MAJESKI
A Professional Corporation
Los Angeles

transmitted to TikTok as a result of Plaintiff's visit to the Website on September 16, 2024.

These omissions are fatal. In fact, other federal courts in the Ninth Circuit have dismissed identical complaints from Plaintiff's counsel for this exact reason. *See e.g. Price v. Converse, Inc.*, 805 F. Supp. 3d 1102 (C.D. Cal 2025) (holding that bare allegations that website collected device, geographic, and tracking information through TikTok software failed to establish concrete injury because plaintiff did not demonstrate how collection caused harm analogous to traditionally recognized privacy torts).[1]

Plaintiff fails to address any of the foregoing issues in his Opposition. Instead, his focus is on a string cite of cases Plaintiff contends support an argument that "privacy harms engendered by the use of tracking software on websites are growing." (Opp. p. 16:18-19:3.) This is putting the cart before the horse. While Defendants dispute that the privacy interest at issue in the FAC is a protectable interest, before the Court can even engage in that analysis, it must first find that Plaintiff sufficiently alleges that his purported privacy interest was injured. As set forth above, and in the Motion, he has not. Plaintiff does not even attempt to make this analysis, and therefore, the Motion should be granted.

[1] *See also Schallert v. Laird Superfood, Inc.,* No. 2:25-cv-12407-SPG-PVC, 2026 U.S. Dist. LEXIS 126589 at *14-16 (C.D. Cal. Jun. , 2026) [holding that allegation that website took "routing, addressing, and signaling information" is "conclusory, parroting the language of the statutory definition"]; *In re USA Today Co., Internet Tracking Litig.,* No. 24-cv-05150-MMC, 2026 U.S. Dist. LEXIS 75000 at *4-6 (N.D. Cal. Apr. 6, 2026) [holding that allegations that a collection of IP addresses, device type, and browser type data by third-party trackers was insufficient to establish concrete injury]; *Rodriguez v. Brushfire Recs.,* No. 2:25-cv-09797-CAS-PDx, 2025 U.S. Dist LEXIS 264091, at 13-22 (C.D. Cal. Dec. 15, 2025) [holding that a plaintiff alleging only that website collected IP address and device identifiers through tracking pixel lacked standing even assuming statutory violations]; *Wooten v. BioLife Plasma Servs. L.P.,* 807 F.Supp.3d 1139, 1143-44 (E.D. Cal. 2025) [holding that one-time collection of email and IP addresses without allegations of subsequent targeted advertising or other concrete harm is insufficient]; *Mitchener v. Curiositystream, Inc.,* 815 F.Supp.3d 845, 850 (N.D. Cal. 2025) [holding that four general allegations regarding how operation of defendant's software can collect certain data was insufficient to establish Article III standing]; *Hughes v. Vivint, Inc.,* No. CV 24-3081-GW-KSx, 2024 U.S. Dist. LEXIS 232423 at 8-16 (C.D. Cal. Jul. 12, 2024) ["Plaintiff offers only conclusory allegations regarding Defendant's use of the TikTok Software, and such bald allegations of statutory violations are insufficient to confer standing."].



ROPERS MAJESKI A Professional Corporation Los Angeles

ROPERS MAJESKI
A Professional Corporation
Los Angeles

### 2. The Alleged Injury Has No Common-Law Analog, Especially Because Plaintiff Sought Out the Injury

Even assuming Plaintiff's generic allegations of harm were particularized as to him, Plaintiff's Opposition fails to establish the alleged invasion of a legally protected privacy right based on the information he claims TikTok's software captures. Plaintiff's Opposition makes a general claim that "individual rights to privacy fall into the category of traditionally recognized harms that constitute an Article III injury in fact." (ECF No. 89 at 16:18-21.) Plaintiff then argues that "various rights codified in CIPA are substantive and not procedural rights that are sufficient for Article III standing." (ECF No. 89 at 16:25-26.)

But this argument misses the mark. The question is whether, as alleged, TikTok's software captures data that Plaintiff has (1) "a legally protected privacy interest" in, (2) which Plaintiff has "a reasonable expectation of privacy" in under the circumstances," and Defendant's conduct constituted "a serious invasion" of that privacy. *In re Yahoo Mail Litig*., 7 F. Supp. 3d 1016, 1037 (N.D. Cal. 2014). Plaintiff's Opposition does little to establish that he had a legally protected privacy interest in device, browser, geographic, referral tracking, and URL tracking information, or that he had a reasonable expectation of privacy in this data when he visited the Website. Rather, Plaintiff cites to *In re Facebook, Inc. Internet Tracking Litig.* (9th Cir. 2020) and claims that "Ninth Circuit caselaw [has found] Article III standing in cases based on the privacy harms . . . of tracking software on websites." (ECF No. 89 at 17 [Pl.'s Opp. at 17:4-625:-26.)

This omission is crucial because Plaintiff overlooks that the Ninth Circuit and other federal courts have explicitly held that individuals lack an expectation of privacy in the same data that Plaintiff alleges TikTok's software captures. As the Ninth Circuit has explained, "[i]nternet users have no expectation of privacy in the IP addresses of the websites they visit." *United States v. Forrester,* 512 F.3d 500, 510 (9th Cir. 2008). And, the mere "collection of basic contact information by . . .

software[,] or where the plaintiffs merely visited the website[,] are not concrete harms"—i.e. legally protected privacy interests. *See e.g. Mitchener, supra,* 815 F.Supp.3d at 850-851 (alterations original) (quotations and citations omitted); *Wooten, supra,* at 1144 ("there is no legally protected privacy interest in an IP address or, in many contexts, in such relatively quotidian private information as an email address"); *Carolus v. Nexstar Media Inc.,* No. 24-cv-07790-VC, 2025 U.S. Dist. LEXIS 92707 at *2 (N.D. Cal. Apr. 9, 2025) (a defendant's acquisition of data that "a given device visited its website and the general location of that device, including what zip code it's in…does not cause the kind of harm that can be vindicated in federal court"); *see also Hughes, supra,* 2024 U.S. Dist. LEXIS 232423 at *13-14.

Plaintiff's reliance on *In re Facebook, Inc. Internet Tracking Litig.* (9th Cir. 2020) (hereinafter "*In re Facebook*") is also misplaced. Plaintiff argues his claims regarding TikTok's software are akin to the same alleged tracking and collection practices Facebook had engaged in, which the Ninth Circuit had found was "a material risk of harm to [the plaintiffs'] interest in controlling their personal information." (ECF No. 89 at 18 [Pl.'s Opp. at 18:4-12] [citing *In re Facebook, Inc., supra,* 956 F.3d 589 (9th Cir. 2020)].) But as other courts have explained, Plaintiff's allegations are materially different.

"[T]he Ninth Circuit found the plaintiffs had 'adequately alleged that Facebook's tracking and collection practices would cause harm or a material risk of harm to their interest in controlling their personal information' because 'Facebook's tracking practices allow it to amass a great degree of personalized information,' such as '*an individual's likes, dislikes, interests, and habits over a significant amount of time*.'" *Hughes*, 2024 U.S. Dist. LEXIS 232423, at *13. Courts, however, have found that less personalized information—such as "basic contact information"—does not implicate the same privacy concerns identified in *In Re Facebook*. *Id*. (citing *I.C. v. Zynga, Inc.,* 600 F.Supp.3d 1034, 1049 (N.D. Cal.





ROPERS MAJESKI
A Professional Corporation
Los Angeles

2022) [holding the collection of "basic contact information . . . [is] an insufficient fit between the loss of information alleged here and the common law privacy torts of private disclosure of private facts and intrusion upon seclusion"); *see also Lightoller v. JetBlue Airways Corp.,* No. 3:23-cv-00361-H-KSC, 2023 U.S. Dist. LEXIS 102158, at *8-10 (S.D. Cal. June 12, 2023) (finding the plaintiff's allegation that she visited the "[d]efendant's website" where "her communications were monitored, recorded, and collected," including the URLs of webpages visited, did not constitute any recognized concrete harm); *Phillips v. United States Customs & Border Prot.,* 74 F.4th 986, 996 (9th Cir. 2023) [holding that data surrounding a person's name, birthday, and address is not "so sensitive that another's access to that information 'would be highly offensive to a reasonable person.'"]. Hence, *In re Facebook* does not help Plaintiff's Article III standing problem.

Further undermining Plaintiff's argument is that Plaintiff specifically sought out the claimed injuries. A person who deliberately visits a website searching for the very tracking technology he intends to sue over cannot claim a reasonable expectation of privacy. *Byars v. Sterling Jewelers, Inc.,* 2023 U.S. Dist. LEXIS 61276 at 8, n. 4 (C.D. Cal.) [holding that the undisputed fact that plaintiff and her counsel filed numerous similar lawsuits before visiting the defendant's website casts doubt on any suggestion she was surprised by the alleged privacy invasion]; *see also Rodriguez v. Autotrader.com, Inc.,* No. 2:24-cv-08735-RGK-JC, 2025 U.S. Dist. LEXIS 47308 at 6 (C.D. Cal.) [holding that a plaintiff who "expected an invasion of privacy" cannot claim a reasonable expectation of privacy]. Here, it is undisputed that both Plaintiff and his counsel are serial litigants who seek out websites for purported CIPA violations in order to sue and collect on the available statutory damages. (*See* ECF Nos. 83-1, 83-2, and 83-3.) Plaintiff thus cannot credibly claim he had a reasonable expectation of privacy in any of the data that he willingly turned over when he accessed the Website prior to bringing this lawsuit. Such actions are the antithesis of one's expectation of privacy.



ROPERS MAJESKI A Professional Corporation Los Angeles

Accordingly, Plaintiff's alleged "harm" is neither particularized nor actual to meet Article III's injury-in-fact requirement.

### 3. The FAC Does Not Adequately Trace the Alleged Harm to Defendants

Finally, with respect to Article III, the FAC does not adequately trace Plaintiff's alleged harm to each Defendant. Article III standing requires that Plaintiff's alleged injury be fairly traceable to the moving Defendants. *See Simon v. E. Kentucky Welfare Rights Org.,* 426 U.S. 26, 41-42 (1976); see also, *Maya v. Centex Corp.,* 658 F.3d 1060, 1070 (9th Cir. 2011); *Daniel v. Nat'l Park Serv.,* 891 F.3d 762, 767 (9th Cir. 2018). In his Opposition, Plaintiff argues that there is a shell game being played by Defendants which somehow excuses Plaintiff's obligations under Article III. It does not.[2] As the FAC stands, there are no allegations that any of the moving Defendants installed TikTok's Software, operated the Website, or controlled data collection on the date Plaintiff accessed the Website – September 16, 2024. The vague allegations surrounding the foreclosure and control of assets "relating to the Website" at unspecified times are not sufficient to trace Plaintiff's alleged harm back to Defendants' actions.

### B. Plaintiff's Conclusory Allegations Do Not Satisfy Specific Jurisdiction.

The Court should also dismiss Plaintiff's FAC because Defendants' Motion established that Plaintiff's conclusory allegations against Defendants did not invoke specific jurisdiction over them. In their Motion, Defendants explained that because Plaintiff asserted a statutory violation under CIPA that "sounds in tort," Plaintiff must show that Defendants purposefully directed their activities at California. (ECF No. at 20 [Mot. to Dismiss at 20:20-26].) This requires showing that Defendants

[2] Defendants are not going to spend much time arguing over Plaintiff's contentions that Defendants failed to respond to subpoenas issued in February 2026. Plaintiff has had around five months to move to compel enforcement of those subpoenas under applicable authority and he has failed to do so. Additionally, Plaintiff clearly has access to public records discussing ownership and control of the Website as reflected by the exhibits filed in support of the Opposition.



ROPERS MAJESKI
A Professional Corporation
Los Angeles

"(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the [D]efendant[s] knows is likely to be suffered in the forum state," which is commonly known as the effects test. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,* 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (internal quotation marks omitted)).

Applying the "effects test" to the FAC's allegations, Defendants demonstrated that Plaintiff's conclusory statements that Defendants "purposefully directed activities toward the Central District of California through the ownership, operation, administration, marketing, and/or control of www.alexandani.com (the "Website") . . . " were insufficient to establish that Defendants committed intentional acts expressly aimed at California. (ECF No. 82 at 21-22 [Mot. to Dismiss at 21:6-22:21]); *Cybersell, Inc. v. Cybersell, Inc*., 130 F.3d 414, 418 (9th Cir. 1997) (holding operating a website alone is insufficient to establish specific jurisdiction over a defendant). "Something more" is required on each Defendant's part before Plaintiff's could invoke this Court's jurisdiction over them. *Mavrix Photo, Inc. v. Brand Techs*., Inc., 647 F.3d 1218, 1229 (9th Cir. 2011).

Recognizing this, Plaintiff argues the "something more" is "the operation of the TikTok Software upon [the] Website." (ECF No. 89 at 19 [Mot. to Dismiss at 19:26-28].) But as Defendants pointed out in their Motion, this allegation did not salvage their claim. First, the allegation is missing the "intentional act" that each Defendant committed with respect to TikTok's software. Plaintiff had to plead sufficient allegations that each Defendant had the "intent to perform an actual, physical act in the real world" with respect to TikTok's software. *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 806 (9th Cir. 2004). Plaintiff, however, merely asserted that TBC "foreclosed upon" Alex & Ani LLC's assets at an unknown time; that LMGL and MLLG "controlled" these assets at "various times"; and that LC A&A held a "security interest" in these assets. But these allegations do





ROPERS MAJESKI
A Professional Corporation
Los Angeles

ROPERS MAJESKI
A Professional Corporation
Los Angeles

not demonstrate any intentional act on Defendants' part with respect to TikTok's software. (ECF No. 57 at 3 [First Amend. Compl. ¶¶ 6–9].) They are passive, asset-level transactions that do not demonstrate any intentional act in developing, contacting, or even installing TikTok's software on the Website. Plaintiff, therefore, has not alleged that each Defendant engaged in an intentional act that would satisfy the "something more" requirement.

Perhaps recognizing this, Plaintiff relies heavily on *Briskin* to skip to the second prong of the test to argue Defendants' purported intentional acts were aimed at California. Plaintiff broadly asserts "that operators running retail operations on nationally available interactive websites may be subject to personal jurisdiction in California under *Briskin's* key holdings." (ECF No. 89 at 20 [Pl.'s Opp. at 20:25-28].) While this may be true in the abstract, personal jurisdiction requires more than a generic statement. It requires Plaintiff to demonstrate why the *allegations in his FAC* open the doors to this Court's jurisdiction over each Defendant.

In any event, *Briskin* has no comparison here. *Briskin* involved Shopify, a global e-commerce platform that affirmatively targeted all 50 states, which processed transactions for California merchants, and through such connections, knowingly collected California consumers' payment and personal data for its own commercial gain. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 755-56 (9th Cir. 2025). The Ninth Circuit found purposeful direction because Shopify's "business model is to perform the payment processing services it contracts to provide for its merchants and, in the course of doing so, to obtain valuable personal data about California consumers for its own commercial gain." *Id.* at 755. It was these allegations that caused the Ninth Circuit to conclude "Shopify's intentional activities constitute express aiming toward California and its consumers to obtain and use their personal data for its own commercial gain." *Id.* at 756. Its contacts with California were its "own choice and not 'random, isolated, or fortuitous.'" *Id.* at 758 (quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)).

That is not the case here. "Plaintiff's choice to utilize the [W]ebsite" to hunt for specious CIPA violations is a "random, isolated, a fortuitous act," which is not nearly akin to the type of California-forum related activities that Shopify engaged in on its interactive payment platform. *Moody v. Textron Inc.,* No. 2:25-cv-01032-MWC-E, 2025 U.S. Dist. LEXIS 199239, at *11 (C.D. Cal. Sep. 24, 2025) (applying *Briskin* and holding the complaint's allegation that the plaintiff utilized the website that allegedly transmitted data to third-party sources lacked the necessary "allegation that it was [the] [d]efendant's own choice that caused its contacts with California"). Unlike *Briskin*, the FAC contains no allegations that each Defendant specifically intended to exploit a customer base located in California for their own commercial gain through TikTok's software, that each Defendant knew Plaintiff was a California resident, or that each Defendant was aware Plaintiff or his device was in California at the time he visited the Website. *C.f. Briskin, supra,* 135 F.4th 739, 756, fn. 13 (9th Cir. 2025) (finding relevant that Shopify knew that the "consumer [was] in California before it actually transact[ed] the payment").

Simply put, Plaintiff cannot drag every foreign company into California because he visited a company's website made available to the general public while in California. *Rounds v. Case-Mate Inc.,* No. 2:24-cv-08531-WLH-RAO, 2025 U.S. Dist. LEXIS 126431, at *19 (C.D. Cal. July 2, 2025) (finding no personal jurisdiction because there was "nothing in the [complaint] that demonstrates the [d]efendant's contacts with California did not merely arise from California consumers' choice to purchase goods from the [d]efendant"); *Kellytoy Worldwide, Inc. v. Jay at Play Int'l H.K. Ltd.*, No. CV 19-cv-07831-AB (MRW), 2019 U.S. Dist. LEXIS 228117, at *16 (C.D. Cal. Dec. 5, 2019) (holding "jurisdiction must arise out of the contacts that 'defendant himself' creates with the forum State'") (quoting *Walden v. Fiore*, 571 U.S. 277, 289 (2014)). Plaintiff's choice to utilize the Website—which Plaintiff does not allege is interactive in any way—from



ROPERS MAJESKI
A Professional Corporation
Los Angeles

California is the same type of "random, isolated, or fortuitous" contact that *Briskin* disclaims is enough to establish jurisdiction over Defendants. *Dangoor v. Peterson's Stampede Dodge Chrysler Jeep*, LLC, No. 2:19-cv-01793-SVW-JC, 2019 U.S. Dist. LEXIS 209404, at *9 (C.D. Cal. Aug. 8, 2019) (holding the fact that "[p]laintiff happened to be a resident of California and happened to be located in California when [the] [d]efendants called him [was] insufficient to establish specific jurisdiction" for the plaintiff's claim that the defendants unlawfully recorded his call.).

Finally, as Defendants' explained in their Motion, Plaintiff cannot bootstrap jurisdiction over Defendants through TikTok's activities in California. As this federal district has acknowledged, whether a "[d]efendant has a contractual relationship with TikTok - and whether it obtains benefits from this relationship . . . is irrelevant to the jurisdictional inquiry." *Rounds*, 2025 U.S. Dist. LEXIS 126431, at *19; *Boschetto v. Hansing,* 539 F.3d 1011, 1017 (9th Cir. 2008) ("[A] contract alone does not create minimum contacts with the plaintiff's forum."). This is because a third party's connections to a forum are immaterial to the inquiry of a defendant's relations with the subject forum. *Heiting v. Marriot Int'l, Inc*., 743 F. Supp. 3d 1163, 2024 WL 3751276, at *4 (C.D. Cal. Aug. 5, 2024). As Plaintiff has not alleged his claims arise out of any forum-related activity by the moving Defendants, he cannot show specific jurisdiction.

Respectfully, Plaintiff's FAC fails to allege facts sufficient to invoke this Court's specific jurisdiction over the Defendants, and they should be dismissed from this action.

**C. <u>The CIPA Claim Fails as a Matter of Law</u>**

As set forth above, the FAC fails to allege an actionable injury. Not only is this fatal to Article III standing, but it is also independently fatal to Plaintiff's CIPA claim. The arguments in the Opposition do not cure this failure.

Further, Plaintiff's generic argument that TikTok's software constitutes a



ROPERS MAJESKI
A Professional Corporation
Los Angeles

"trap and trace" device for purposes of Penal Code section 638.51 is not supported with any argument or analysis. Plaintiff's Opposition argues, again in the abstract, that "[s]oftware or code running websites" qualify as "trap and trace devices" if they capture incoming electronic or other impulses that identify routing or signaling information reasonably likely to identify the source of an electronic communication. (ECF NO. 89 at 23 [Pl.'s Opp. at 23:7-10].)

But even if this statement is accurate, the issue is whether the TikTok software at issue qualifies as a "trap and trace device" under Section 638.51 based on the information it allegedly captures. Cal. Penal Code § 639.50(c). This is problematic for Plaintiff because the information he claims TikTok's software captures to "fingerprint" people, such as date of birth, name, and address, is content information from a communication and thus falls outside the definition of a trap and trace device. *See Kishnani v. Royal Caribbean Cruises Ltd.,* No. 25-cv-01473-NW, 2025 U.S. Dist. LEXIS 120002, at *9-11 (N.D. Cal. Jun. 24, 2025) [holding that any TikTok "fingerprint" revealing biographical information is "content" of the communication and thus falls outside the definition of a trap and trace device]. Accordingly, even if Plaintiff could satisfy Article III standing, the biographical data TikTok's software allegedly captures does not qualify the software as a trap and trace device.

**D. <u>Plaintiff Cannot Shirk His Rule 8 Obligations</u>**

Plaintiff's Rule 8 violation is found in the collective pleading against "Defendants." (FAC ¶¶ 12, 16, 20, 26, 27, 37-43.) When suing multiple defendants, Plaintiff is required to allege the basis of his claim against each. *Flores v. EMC Mortg., Co.,* 997 F.Supp.2d 1088, 1103 (E.D. Cal. 2014). In an attempt to excuse his violation, Plaintiff argues that Defendants have withheld information regarding their involvement with the TikTok software or the Website. Notably, Plaintiff cites to no authority which allows him to disregard Rule 8's pleading requirement because of an alleged discovery dispute. The excuse is also not well taken.





ROPERS MAJESKI
A Professional Corporation
Los Angeles

The subpoenas that Plaintiff puts at issue in the Opposition were served on February 27, 2026, with a compliance date of March 12, 2026. (*See* ECF No. 89-10, 89-11 [Pl.'s Ex. 10 and Ex. 11].) The FAC was filed on April 3, 2026. (ECF No. 862.) Plaintiff has provided no evidence of any attempt to compel compliance before April 3, 2026, or even after this date in federal court in Delaware. Nor does Plaintiff provide any evidence of a request to the Court to continue the deadline to file the FAC due to the alleged discovery issue. Plaintiff's simply decided to move forward with filing the FAC, knowing full well that his allegations against Defendants were conclusory and based on "information and belief." Plaintiff cannot shift his dilatory efforts in discovery to excuse compliance with Rule 8.

### E. The Motion Should be Granted Without Leave to Amend

Leave to amend is not warranted under the circumstances before the Court. Again, Plaintiff is attempting to leverage a stale discovery dispute as a basis for another bite at the apple. The crux of the issue, however, is that no matter what discovery is conducted, Plaintiff's claims against Defendants fail as a matter of law. There is no Article III standing, there is no personal jurisdiction, and there is no actionable claim under CIPA. Not one of these issues can be cured. Therefore, Defendants respectfully request that the Motion be granted without leave to amend.

## III. CONCLUSION

Considering the foregoing, Defendants respectfully request that the Court grant their Motion in its entirety and without leave to amend.

Dated: August 27, 2026

ROPERS MAJESKI PC

By: ______________________________
JENNIFER E. NEWCOMB
TIMOTHY J. LEPORE
Attorneys for Defendants
The Bathing Club LLC, LMGL LLC, MLLG LLC, LC A&A HOLDINGS INC.

ROPERS MAJESKI
A Professional Corporation
Los Angeles

ROPERS MAJESKI
A Professional Corporation
Los Angeles

## L.R. 11-6 CERTIFICATION

The undersigned, counsel of record for Defendants, certifies that this brief contains 4,566 words, which complies with the word limit of L.R. 11-6.1.

Dated: August 27, 2026

ROPERS MAJESKI PC

By: ______________________________
JENNIFER E. NEWCOMB
TIMOTHY J. LEPORE
Attorneys for Defendants
The Bathing Club LLC, LMGL LLC, MLLG LLC, LC A&A HOLDINGS INC.